**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | |
| JUST ENERGY GROUP INC., *et al.*, | Chapter 15 |
| Debtors in a Foreign Proceeding.[1] | Case No. 21-30823 (MI) |
| JUST ENERGY TEXAS LP, FULCRUM RETAIL ENERGY LLC, HUDSON SERVICES LLC, and JUST ENERGY GROUP, INC., | |
| Plaintiffs, | |
| v. | |
| ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC. and the PUBLIC UTILITY COMMISSION OF TEXAS, INC., | Adv. Proc. No. 21-4399 |
| Defendants. | |

**DEFENDANT THE PUBLIC UTILITY COMMISSION OF TEXAS'S MOTION TO
DISMISS COMPLAINT, OR ALTERNATIVELY, FOR ABSTENTION
AND MEMORANDUM IN SUPPORT THEREOF**
*(Applies to Docket No. 1)*

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY

---

[1] The identifying four digits of Just Energy Group Inc.'s local Canada tax identification number are 0469. A complete list of debtor entities in these chapter 15 cases may be obtained at www.omniagentsolutions.com/justenergy.

**TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:**

The Public Utility Commission of Texas,[2] a defendant in the above-referenced adversary proceeding, files this *Defendant Public Utility Commission of Texas's Motion to Dismiss Complaint, or Alternatively, for Abstention and Memorandum in Support Thereof* (the "<u>Motion</u>"), subject to the assertion of sovereign immunity made herein, and respectfully states as follows:

---

[2] The PUCT has been improperly named in this adversary proceeding as the "Public Utility Commission of Texas, Inc." The PUCT is a commission of the State of Texas, not a corporation.

## <u>TABLE OF CONTENTS</u>

I.   **MOTION TO DISMISS OR, ALTERNATIVELY, TO ABSTAIN** .................................. 1

II.  **PRELIMINARY STATEMENT** ...................................................................... 1

III. **FACT ALLEGED IN THE COMPLAINT AND  MATTERS OF PUBLIC RECORD** ......................................................................................... 6

   A.   The PUCT, ERCOT, and the Texas Electric Utilities Market .................................... 6

   B.   Winter Storm Uri ...................................................................................... 9

   C.   The ERCOT Invoices, Chapter 15 Cases, and the Transfers ............................. 11

   D.   The Adversary Proceeding and Complaint .................................................. 14

   E.   Procedures for Challenging ERCOT Invoices .............................................. 14

   F.   Procedures for Challenging the Orders ...................................................... 16

IV.  **MOTION TO DISMISS STANDARDS** ............................................................ 16

   A.   Federal Rule of Civil Procedure 12(b)(1) .................................................. 16

   B.   Federal Rule of Civil Procedure 12(b)(6) .................................................. 17

V.   **ARGUMENTS AND AUTHORITIES** ............................................................ 18

   A.   The Complaint Must Be Dismissed Under Federal Rule 12(b)(1) Because Sovereign Immunity Bars the Plaintiffs' Claims Against the PUCT .............................. 18

      i.   *The Supreme Court holdings in* Hood *and* Katz *are consistent with the PUCT's assertion of sovereign immunity in this Adversary Proceeding* ............................ 19

      ii.  *Bankruptcy Code § 106 does not abrogate the PUCT's sovereign immunity in this Adversary Proceeding.* ................................................................ 23

      iii. *The PUCT has not waived sovereign immunity for suit in federal bankruptcy court under APA § 2001.038.* ............................................................. 25

   B.   The Complaint Must be Dismissed Under Federal Rule 12(b)(1) Because the Plaintiffs Have Failed to Exhaust Their Administrative Remedies. .............................. 26

      i.   *The PUCT has exclusive jurisdiction over the Plaintiffs' challenges to the Orders and the ERCOT Invoices* ....................................................... 27

      ii.  *The Plaintiffs' claims must be dismissed because they have failed to exhaust administrative remedies.* ................................................................ 28

      iii. *Alternatively, the PUCT has primary jurisdiction over the Plaintiffs' challenges to the Orders and the ERCOT Invoices.* ..................................... 32

   C.   Count 1 of the Complaint Fails to State a Claim Against the PUCT For Avoidance of a Post-Petition Transfer Under Bankruptcy Code § 549. ..................................... 34

      i.   *The PUCT did not receive any of the Transfers.* ....................................... 34

      ii.  *The Transfers were authorized by the Bankruptcy Court.* ............................ 35

iii.  *Judicial estoppel bars the Plaintiffs from avoiding the Transfers.* ............................ 36

iv.  *Recovery of the value of the Transfers under Bankruptcy Code § 550 is unavailable under Chapter 15.* ..................................................................................... 37

D.  Count 2 of the Complaint Fails to State a Claim Against the PUCT For Disallowance Under Bankruptcy Code §§ 502(b) and 502(d). .............................................. 38

E.  Count 3 of the Complaint Fails to State a Claim Against the PUCT For Turnover Under Bankruptcy Code §542(a). ................................................................................ 39

i.  *The PUCT did not receive any of the Transfers.* ........................................ 39

ii.  *The Transfers are disputed and cannot be the subject of a stand-alone turnover action* .................................................................................................. 39

F.  Count 4 of the Complaint Fails to State a Claim Against the PUCT for Setoff Under Bankruptcy Code § 558. ..................................................................................... 41

G.  Alternatively, this Court Should Abstain from Hearing the Claims Set Forth in the Complaint under the Burford Doctrine and 11 U.S.C. § 1334(c)(1). ....................... 42

i.  *The basis for the relief requested in the Complaint arises under state law* ............... 45

ii.  *Resolution of the issues raised in the complaint will require inquiry into unsettled state law.* ........................................................................................... 46

iii.  *Texas's regulation of its electricity market is an important and compelling state interest* ............................................................................................ 46

iv.  *Texas's need for a coherent policy regulating utility rates is evident in PURA* ......... 47

v.  *Texas has designated special bodies for judicial review of the ERCOT Invoices and the Orders.* ................................................................................... 47

VI. **RELIEF REQUESTED** ..................................................................................... 49

# **TABLE OF AUTHORITIES**

## **Cases**

*Ala. Pub. Serv. Comm'n v. S. Ry. Co.*, 341 U.S. 341 (1951) .................................................. 42, 43

*Alden v. Maine*, 527 U.S. 706 (1999) ...................................................................................... 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................... 17

*Baldwin v. Office of Injured Empl. Counsel*, 843 Fed. Appx. 656 (5th Cir. 2021) ..................... 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................................... 17

*Blackburn v. City of Marshall*, 42 F.3d 925 (5th Cir. 1995)....................................................... 17

*BP Chems., Inc. v. AEP Tex. Cent. Co.*, 198 S.W.3d 449
    (Tex. App.—Corpus Christi 2006, no pet.) ........................................................................... 8

*Brown v. Fox Broad. Co. (In re Cox)*, 433 B.R. 911 (Bankr. N.D. Ga. 2010) ...................... 21, 22

*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)........................................................................ 42, 48

*Capital Concepts Properties 85–1 v. Mutual First, Inc.*, 35 F.3d 170 (5th Cir.1994) ................ 42

*Cent. Va. Comm. College v. Katz*, 546 U.S. 356 (2006)............................................................ 20

*Charter Crude Oil Co. v. Exxon Co., U.S.A. (In re Charter Co.)*,
    913 F.2d 1575 (11th Cir. 1990)........................................................................................... 40

*Clint Ind. School Dist. v. Marquez*, 487 S.W.3d 538 (Tex. 2016)............................................... 29

*Dep't of Transp. & Dev. of La. v. PNL Asset Mgmt. Co. (In re Fernandez)*,
    123 F.3d 241 (5th Cir. 1997)............................................................................................... 23

*Doe v. U.S.*, 853 F.3d 792 (5th Cir. 2017) ................................................................................ 16

*Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333 (5th Cir. 2008) ............................................... 18

*Elec. Reliability Council of Tex., Inc. v. CPS Energy*, 2021 WL 5879183
    (Tex. App.—San Antonio Dec. 13, 2021)............................................................................ 28

*Ferrer v. Chevron Corp.*, 484 F.3d 776 (5th Cir. 2007) ............................................................ 18

*Florida v. Diaz (In re Diaz)*, 647 F.3d 1073 (11th Cir. 2011)..................................................... 21

*Ford v. Loftin (In re Ford)*, 296 B.R. 537 (Bankr. N.D. Ga. 2003)............................................ 35

*Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 518 S.W.3d 422 (Tex. 2017) ........................ 26

*Gines v. D.R. Horton, Inc.*, 699 F.3d 812 (5th Cir. 2012) ......................................................... 18

*Goodman v. H.I.G. Capital, LLC (In re Gulf Fleet Holdings Inc.)*,
    491 B.R. 747 (Bankr. W.D. La. 2013) ................................................................................. 35

*Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391 (5th Cir. 2003) ............................................... 36

*Hans v. Louisiana*, 134 U.S. 1 (1890)................................................................................... 18, 19

*HBK Main St. Invs., L.P. v. Sankaty ATP, LLC (In re ATP Oil & Gas Corp.)*,
    2015 WL 1093568 (Bankr. S.D. Tex. Mar. 10, 2015) ......................................................... 40

*Highland Capital Mgmt. L.P. v. Highland Capital Mgmt. Fund Advisors L.P (In re*
    *Highland Capital Mgmt. L.P.)*, 2021 WL 2881410 (Bankr. N.D. Tex. July 8, 2021) ............. 40

*Hoffman v. Conn. Dept. of Income Maint.*, 492 U.S. 96 (1989) .................................................. 24

*In re Discount Family Boats of Tex., Inc.*, 233 B.R. 365 (Bankr. E.D. Tex. 1999)..................... 35

*In re Entergy Corp.*, 142 S.W. 3d 316 (Tex. 2004) .............................................................. passim

*In re Garden Ridge Corp.*, 338 B.R. 627 (Bankr. D. Del. 2006)................................................. 42

*In re N.Y.C. Off-Track Betting Corp.*, 434 B.R. 131 (Bankr. S.D.N.Y. 2010) ............................ 43

*In re PSA, Inc.*, 277 B.R. 51 (Bankr. D. Del. 2002) .................................................................. 41

*Keller Indus. Inc. v. U.S.*, 449 F.2d 163 (5th Cir. 1971)...............................................................34

*Kelley v. Nodine (In re Salem Mortgage Co.)*, 783 F.2d 626 (6th Cir.1986) ...............................44

*Koerner v. Garden Dist. Ass'n*, 78 F. App'x 960 (5th Cir. 2003) ...................................................45

*Koken v. Reliance Grp. Holdings Inc. (In re Reliance Grp. Holdings Inc.)*,
   273 B.R. 374 (Bankr. E.D. Pa. 2002)...........................................................................................44

*Kurtzman v. Mutual Benefit Life (In re Philips Offset Co.)*, 152 B.R. 836
   (Bankr. S.D.N.Y. 1992)................................................................................................................44

*Lane v. Halliburton*, 529 F.3d 548 (5th Cir. 2008)........................................................................17

*Las Vegas Casino Lines v. Abbott (In re Las Vegas Casino Lines, LLC)*,
   454 B.R. 223 (Bankr. M.D. Fla. 2011).........................................................................................40

*Leal v. Azar*, 2020 WL 7672177 (N.D. Tex. Dec. 23, 2020)..........................................................17

*Moser v. Mullican (In re Mullican)*, 417 B.R. 389 (Bankr. E.D. Tex. 2008) .........................34, 37

*Moser v. Najafi (In re Goushey)*, 2011 WL 2470029 (Bankr. E.D. Tex. June 17, 2011).......34, 38

*N.C. Tech. Dev. Auth., Inc. v. North Carolina (In re N.C. Tech. Dev. Auth., Inc.)*,
   2005 WL 1331254 (Bankr. M.D.N.C. March 30, 2005)..............................................................22

*New Orleans Pub. Serv., Inc. v. City of New Orleans*, 798 F.2d 858 (5th Cir. 1986) .................43

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989).............43

*Nikloloutsos v. Nikloloutsos (In re Nikloloutsos)*, 199 F.3d 233 (5th Cir. 2000) .......................38

*Norris v. Hearst Trust*, 500 F.3d 454 (5th Cir. 2007).....................................................................18

*Northwinds Abatement, Inc. v. Emp'rs Ins. Of Wausau*, 69 F.3d 1304 (5th Cir. 1995) ..............32

*O'Connell v. Arthur Andersen LLP (In re AlphaStar Ins. Grp. Ltd.)*,
   383 B.R. 231 (Bankr. S.D.N.Y. 2008) .........................................................................................35

*O'Sullivan v. Loy (In re Loy)*, 432 B.R. 551 (E.D. Va. 2010) ......................................................38

*Oncor Elec. Delivery Co. LLC v. Giovanni Homes Corp.*, 438 S.W.3d 644
   (Tex. App.—Fort Worth 2014, no pet.) ..................................................................................16, 28

*Oncor Elec. Delivery Co. v. Chaparral Energy, LLC*, 546 S.W.3d 133 (Tex. 2018)........... passim

*Penn. v. Union Gas*, 491 U.S. 1 (1989) ..........................................................................................24

*Penny v. Southwestern Bell Telephone Co.*, 906 F.2d 183 (5th Cir. 1990) .....................30, 32, 33

*Pry v. Maxim Global, Inc. (In re Maxim Truck Co., Inc.)*, 415 B.R. 346
   (Bankr. S.D. Ind. 2009)................................................................................................................40

*Pub. Util. Comm'n of Tex. v. Sw. Bell Tel. Co.*, 960 S.W.2d 116
   (Tex. App.-Austin 1997, no writ) ................................................................................................28

*Pub. Util. Comm'n v. Constellation Energy Commodities Grp., LLC.*, 351 S.W.3d 588
   (Tex. App.—Austin 2011, pet. denied) .........................................................................................8

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996) .........................................................43, 45

*Ramming v. U.S.*, 281 F.3d 158 (5th Cir. 2001) .............................................................................17

*Republic Reader's Serv., Inc. v, Magazine Serv. Bureau, Inc. (In re Republic
   Reader's Serv., Inc.)*, 81 B.R. 422 (Bankr. S.D. Tex. 1986)..................................................44, 45

*Rogers v. Columbia/HCA of Cent. La., Inc.*, 961 F. Supp. 960 (W.D. La. 1997)...................29, 32

*Ross v. Biehn Constr., Inc. (In re William Ross, Inc.)*, 199 B.R. 551
   (Bankr W.D. Pa. 1996).................................................................................................................24

*Sarfani, Inc. v. Miss. Dep't of Rev. (In re Sarfani, Inc.)*, 527 B.R. 241
   (Bankr. N.D. Miss. 2015)..............................................................................................................24

*Scarver v. Ellis (In re McKeever)*, 567 B.R. 652 (Bankr. N.D. Ga. 2017) ................................... 39

*Scherling v. Hellman Elec. Corp. (In re Westchester Structures, Inc.)*, 181 B.R. 730
(Bankr. S.D.N.Y. 1995) ........................................................................................................ 41

*Schlossberg v. Abell (In re Abell)*, 549 B.R. 631 (Bankr. D. Md. 2016) ............................... 39, 40

*Second Pa. Real Estate Corp. v. Papercraft Corp. (In re Papercraft Corp.)*,
127 B.R. 346 (Bankr. W.D. Pa. 1991) .................................................................................. 41

*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996) ........................................................ 18, 24

*Sierra Club v. City of San Antonio*, 112 F.3d 789 (5th Cir. 1997) .......................................... 45

*Sommers v. Katy Steel Co. (In re Contractor Tech., Ltd.)*, 343 B.R. 573
(Bankr. S.D. Tex. 2006) ....................................................................................................... 34

*Stanziale v. CopperCom, Inc. (In re Conex Holdings, LLC)*, 518 B.R. 792
(Bankr. D. Del. 2014)........................................................................................................... 40

*Sullivan v. Texas A&M Univ. Sys.*, 986 F.3d 593 (5th Cir. 2021) ............................................ 19

*Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440 (2004) .......................................... 19, 20

*Tex. Gen. Indem. Co. v. Tex. Workers' Comp. Comm'n*, 36 S.W.3d 635
(Tex. App. – Austin 2000, rehearing overruled) ................................................................. 25

*Texas Logos, L.P. v. Texas Department of Transportation*, 241 S.W.3d 105
(Tex. App—Austin 2007, no pet.)....................................................................................... 25

*Texas v. Soileau (In re Soileau)*, 488 F.3d 302 (5th Cir. 2007) ...................................... 19, 20, 21

*Trauner v. Thadikamalla (In re Thadikamalla)*, 481 B.R. 232 (Bankr. N.D. Ga. 2012).............. 40

*U.S. v. Inslaw, Inc.*, 932 F.2d 1467 (D.C. Cir. 1991)............................................................... 40

*Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183 (5th Cir. 1986) ........................................ 16

*Walter's Disposal Serv., Inc. v. Atterbury (In re Walter's Disposal Serv., Inc.)*,
73 B.R. 6 (Bankr. W.D. Mo. 1986) ...................................................................................... 37

*Warnock v. Pecos County*, 88 F.3d 341 (5th Cir. 1996) ........................................................... 16

*West v. Hsu (In re Adv. Modular Power Sys. Inc.)*, 413 B.R. 643 (Bankr. S.D. Tex. 2009).. 35, 37

*Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311 (5th Cir. 1993)................................. 45, 46

*Wolcott v. Sebelius*, 635 F.3d 757 (5th Cir. 2011) ............................................................. 17, 18

*Wood v. Wood*, 825 F.2d 90 (5th Cir. 1987) ........................................................................... 44

## Statutes

11 U.S.C. § 542............................................................................................................................. 39

11 U.S.C. § 549............................................................................................................................. 34

11 U.S.C. § 550............................................................................................................................. 37

11 U.S.C. § 558............................................................................................................................. 41

11 U.S.C. § 1521........................................................................................................................... 38

16 Tex. Admin. Code § 22.251 ............................................................................................... 15, 48

16 Tex. Admin. Code § 25.501 ...................................................................................................... 7

28 U.S.C. § 1342........................................................................................................................... 47

Fed. R. Civ. P. 12(h) ..................................................................................................................... 16

Fed. R. Evid. 201(b) ..................................................................................................................... 18

Tex. Gov't Code § 2001.038 .............................................................................................. 16, 25, 48

Tex. Gov't Code § 2001.176 .......................................................................................... 15, 16, 46, 48

TEX. UTIL. CODE § 11.002 ............................................................................................ 27
TEX. UTIL. CODE § 11.007 ....................................................................... 15, 16, 46, 48
TEX. UTIL. CODE § 15.001 ....................................................................... 15, 16, 46, 48
TEX. UTIL. CODE § 15.002 ...................................................................................... 16, 48
TEX. UTIL. CODE § 31.001 .................................................................................. 6, 27, 47
TEX. UTIL. CODE § 32.001 .............................................................................. 15, 27, 48
TEX. UTIL. CODE § 39.001 ........................................................................................ 6, 16
TEX. UTIL. CODE § 39.151 .................................................................................... passim
TEX. UTIL. CODE § 39.356 ............................................................................................. 9
TEX. UTIL. CODE § 39.357 ........................................................................................ 9, 11

## <u>Other Authorities</u>

36 Tex. Reg. 1817 ........................................................................................................ 7
E. Plank, *State Sovereignty In Bankruptcy After Katz*, 15 AM. BANKR. INST. L. REV. 59, 92
    (2007) ................................................................................................................ 21
ERCOT Protocols § 1.2 ............................................................................................... 7
ERCOT Protocols § 20.1 ........................................................................................... 15
ERCOT Protocols § 20.10.1 ...................................................................................... 15
ERCOT Protocols § 22A .............................................................................................. 8
ERCOT Protocols § 6.3 ............................................................................................. 15
ERCOT Protocols § 9.14.2 ........................................................................................ 15
ERCOT Protocols § 9.14.4 ........................................................................................ 15
ERCOT Protocols § 9.19 ............................................................................................. 9
ERCOT Protocols § 9.2.5 .......................................................................................... 15
ERCOT Protocols § 9.2.6 .......................................................................................... 15
ERCOT Protocols § 9.5.5 .......................................................................................... 15
Internal Revenue Service, Opinion Letter (May 11, 2012) ......................................... 7
Ralph Brubaker, *Explaining Katz's New Bankruptcy Exception to State Sovereign Immunity:*
    *The Bankruptcy Power as a Federal Forum Power*, 15 AM. BANKR. INST. L. REV. 95
    (2007) ................................................................................................................ 21

## I.  **MOTION TO DISMISS OR, ALTERNATIVELY, TO ABSTAIN**

1.  This Motion is made pursuant to Rules 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure (the "<u>Federal Rules</u>"), made applicable hereto by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"). The Public Utility Commission of Texas (the "<u>PUCT</u>") requests that this Court enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, dismissing all causes of action asserted by and through the foreign representative of Just Energy Texas LP, Fulcrum Retail Energy LLC, Hudson Energy Services LLC and Just Energy Group, Inc. (the "<u>Plaintiffs</u>") against the PUCT in the Complaint filed on November 12, 2021 [Docket No. 1] (the "<u>Complaint</u>") in the above referenced cases (the "<u>Chapter 15 Cases</u>") under Chapter 15 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

2.  Alternatively, the PUCT requests that this Court enter an order abstaining from exercising its jurisdiction in this matter to allow the PUCT or the appropriate state court to determine state law issues impacting the comprehensive regulatory scheme for the Texas electricity market under the Public Utility Regulatory Act ("<u>PURA</u>").

3.  Pursuant to Bankruptcy Rule 7008, the PUCT does not consent to the entry of final orders or judgment by this Court.

## II.  **PRELIMINARY STATEMENT**

4.  At the heart of the Complaint is an attack on two orders issued by the PUCT during the most unprecedented winter weather event in recent Texas history, Winter Storm Uri, and the implementation of those orders by the Electric Reliability Council of Texas ("<u>ERCOT</u>"). During the winter storm, the PUCT entered the two orders (the "<u>Orders</u>") requiring that ERCOT to take into account load that was being shed, *i.e.*, power supply was switched off due to scarcity during the winter storm, in calculating electricity prices for the market and expressing the PUCT's belief that when electricity is scarce, the design of the market requires electricity prices to be at their

highest. ERCOT complied with those Orders, reflecting the scarcity of electricity by calculating the price for electricity at the highest amount statutorily allowed ($9,000 per megawatt hour). Notwithstanding the Plaintiffs' failure to include a cause of action specifically addressing the Orders, the gravamen of each of the claims in the Complaint is the Plaintiffs' allegations that the Orders are somehow invalid or illegal and that ERCOT improperly enforced or implemented the Orders by applying the highest market prices statutorily allowed.

5.     While pursuing their purported claims in this Court, the Plaintiffs concurrently seek relief through the statutory invoice dispute process detailed in protocols created pursuant to PURA, which may ultimately require the PUCT and, if necessary, the Travis County state district court or the Texas Third Court of Appeals, to review the Plaintiffs' challenges to amounts they paid to ERCOT in satisfaction of invoices for the period of the winter storm. Further, PURA establishes the exclusive state judicial mechanisms by which the Plaintiffs can challenge the Orders regarding electricity pricing – filing suit in either the Travis County state district court or the Texas Third Court of Appeals, depending on the nature of the challenge.

6.     Despite the availability of judicial review in Texas, and the Plaintiffs' initiation of the statutory process that may result in that judicial review, the Plaintiffs seek federal court intervention into the regulation of the Texas electricity market. Adjudicating the claims in the Complaint would require this Court to make determinations the Texas Legislature exclusively intended to be made by the PUCT and the appropriate Texas state courts. Understanding the issues raised in the Complaint requires a deep understanding of the Texas Administrative Procedures Act (the "APA"), PURA, and other protocols and regulations promulgated under PURA, which the PUCT, the Travis County district court, and the Texas Third Court of Appeals already have.

7.     Possibly in anticipation of the issues raised above, the Plaintiffs only chose to plead causes of action contained in the Bankruptcy Code. That choice results in deficiencies that doom the Plaintiffs' claims to dismissal under Federal Rule 12(b)(6) for failure to state a claim against the PUCT, which will be discussed in turn. Moreover, that choice does not alter the fact that to award any of the Plaintiffs' requested relief, the Bankruptcy Court would have to make determinations that are inconsistent with Texas's sovereignty over its own electricity market and invade the exclusive jurisdiction of the PUCT.

8.     The Complaint must be dismissed for lack of subject matter jurisdiction under Federal Rule 12(b)(1) for two reasons. First, the PUCT is a state agency entitled to assert sovereign immunity under the United States Constitution and the Eleventh Amendment. U.S. Supreme Court authority regarding sovereign immunity in bankruptcy cases does not allow the exercise of bankruptcy court jurisdiction in cases like this – where the exercise of *in rem* jurisdiction would be an "affront" to state sovereignty.[1] The Plaintiffs' claims seek to compel ERCOT and the PUCT to reprice the Texas electricity market, despite the existence of a comprehensive regulatory scheme established by the Texas Legislature to deal with these same issues. Awarding the relief requested by the Plaintiffs would impact the amounts owed by all other participants in the ERCOT market ("Market Participants") and have a significant ripple effect on the financial markets. While it will be a rare case where the exercise of bankruptcy jurisdiction is deemed an affront to state sovereignty, this is that rare case.

9.     The answer, however, cannot then be dismissal of the PUCT and continuation of this Adversary Proceeding. The Court also lacks subject matter jurisdiction over this case because

---

[1] Further, Bankruptcy Code § 106 does not abrogate state sovereign immunity in this case where the exercise of bankruptcy jurisdiction would be an affront to state sovereignty.

the PUCT has exclusive jurisdiction over claims related to rates charged for electricity, and the Plaintiffs have not yet exhausted their administrative remedies under state law. The Texas Legislature intended for disputes regarding utility rates, operations, and services to begin exclusively at the PUCT,[2] and, as such the Legislature crafted PURA to provide exclusive original jurisdiction to the PUCT. This is especially critical in cases where a claimant challenges the actions of ERCOT, because ERCOT operates under the complete oversight of the PUCT and has been delegated power from the PUCT to create rules and calculate rates. Further, in this case, the possibility of inconsistent judgments and overlapping remedies in the administrative and judicial review process under Texas law and this proceeding makes it clear that the PUCT must exercise its exclusive jurisdiction over the underlying issues in the Complaint before this Court decides the impact the PUCT's determinations have on the availability of relief under the Bankruptcy Code.

10.     In addition to the lack of subject matter jurisdiction, each of the Plaintiffs' causes of action against the PUCT must be dismissed under Federal Rule 12(b)(6). While there are several fatal deficiencies discussed in this Motion, two stand out. First, the Plaintiffs cannot maintain any of the causes of action asserted in the Complaint, because each of them requires the existence of a transfer to the PUCT, a claim held by the PUCT, or a debt owed to the PUCT. The Complaint is devoid of allegations that the Plaintiffs paid any amounts to the PUCT, that the PUCT has ever asserted a claim against the Plaintiffs, or that the PUCT owes a debt to, or is owed a debt from, the Plaintiffs, because no such transfer, debt, or claim exists.

---

[2] Even if the Court were to decide that it holds concurrent jurisdiction with the PUCT over the claims in the Complaint, the Court should allow the PUCT to exercise primary jurisdiction to make determinations within its area of expertise prior to exercising bankruptcy jurisdiction over the Plaintiffs' claims. The PUCT is entitled to provide its determination on the challenges to the Orders and ERCOT's actions under PURA, and that determination is entitled to review under a substantial evidence standard.

11.     Second, the Plaintiffs' payment of the ERCOT Invoices for the period during the winter storm were authorized by both the Canadian Court overseeing the Plaintiffs' restructuring and this Court at the request of, and based on representations by, the Plaintiffs (and other related debtors). The Plaintiffs should be judicially estopped from asking for approval of a transfer and arguing that it is in the best interest of their estates and then seeking to avoid the transfer as unauthorized and arguing that there is no basis upon which the transfer could be approved. For the reasons set forth in this Motion, Plaintiffs have failed to plead any causes of action that can survive challenge under Federal Rule 12(b)(6), and the Court should dismiss the Complaint in its entirety.

12.     If the Court does not dismiss the Complaint, the Court should abstain from hearing the issues raised in the Complaint under the *Burford* doctrine and 28 U.S.C. § 1334(c)(1). The issues at the heart of the Complaint implicate the comprehensive regulatory scheme established by the Texas Legislature under PURA, and the resolution of the Plaintiffs' claims will require this Court to address issues that are not yet settled under Texas law and could significantly impact Texas's ability to regulate its electricity market. The relief sought by the Plaintiffs would be an extraordinary and unprecedented intervention into the free market, with potentially devastating effects on other Market Participants and the financial markets in general. Decisions that have a potential to affect Texas so significantly should be made by the bodies designated to make such decisions by the Texas Legislature – specifically, the PUCT, the Travis County district court, and the Texas Third Court of Appeals. Accordingly, to the extent the Court determines that it has subject matter jurisdiction over the causes of action asserted in the Complaint, it should abstain from exercising that jurisdiction.

### III.   FACT ALLEGED IN THE COMPLAINT AND MATTERS OF PUBLIC RECORD

**A.  The PUCT, ERCOT, and the Texas Electric Utilities Market**

13.     Following the Texas Legislature's enactment of PURA, the PUCT was created in 1975 to protect the public interest inherent in the rates and services of public utilities, and to regulate Texas's electric, telecommunication, and water and sewer utilities. PURA "establish[ed] a comprehensive and adequate regulatory system for electric utilities." TEX. UTIL. CODE § 31.001(a). The Legislature "intended PURA to be the exclusive means of regulating electric utilities in Texas." *In re Entergy Corp.*, 142 S.W. 3d 316, 232 (Tex. 2004). In 1999, the Texas Legislature enacted a new body of law "to protect the public interest during the transition to and in the establishment of a fully competitive electric power industry." TEX. UTIL. CODE § 39.001(a). Despite its decision to transition to a more competitive market, the Texas Legislature continued to believe that "the public interest requires that rules, policies, and principles be formulated and applied to protect the public interest." *Id*. § 31.001(c).

14.     As part of the competitive electric wholesale market created by the Texas Legislature, the PUCT is required to certify an "independent organization" defined as an "independent system operator . . . that is sufficiently independent of any producer or seller of electricity that its decisions will not be unduly influenced by any producer or seller." *Id*. §§ 39.151(b), (c). This independent organization is required to: "(1) ensure access to the transmission and distribution systems for all buyers and sellers of electricity on nondiscriminatory terms; (2) ensure the reliability and adequacy of the regional electrical network; (3) ensure that information relating to a customer's choice of retail electric provider is conveyed in a timely manner to the persons who need that information; and (4) ensure that electricity production and delivery are accurately accounted for among the generators and wholesale buyers and sellers in

6

the region." *Id*. § 39.151(a). The PUCT certified ERCOT as this independent organization. *See id*. § 39.151(c); Complaint ¶¶ 22, 29.

15.     In carrying out those requirements, ERCOT "is directly responsible and accountable to" the PUCT, and the PUCT has "complete authority to oversee and investigate [ERCOT's] finances, budget, and operations as necessary to ensure [ERCOT's] accountability and to ensure that [ERCOT] adequately performs [its] functions and duties." TEX. UTIL. CODE § 39.151(d); *see* Complaint ¶¶ 22, 31. The PUCT's authority includes the power to approve, disprove, or modify any item in ERCOT's proposed budget. TEX. UTIL. CODE § 39.151(d-1).[3]

16.     In addition to its complete oversight of ERCOT's operations, accountability, and budget, the PUCT has the power to decertify ERCOT or assess administrative penalties against ERCOT for failure to adequately perform its functions or duties or comply with the provisions of PURA. *Id*. § 39.151(d). Additionally, the PUCT is authorized to assess administrative penalties against ERCOT for violations of, or failure to comply with, PUCT rules or orders or to seek a court order requiring ERCOT's compliance with PUCT rules and orders. *Id*. § 39.151(d-4)(4).

17.     Subject to its authority to direct otherwise and pursuant to its power to issue rules regulating ERCOT's market, the PUCT has directed ERCOT to "determine the market clearing prices of energy and other ancillary services." 16 TEX. ADMIN. CODE § 25.501(a). ERCOT is the "central counterparty for all transactions" and "is deemed to be the sole buyer to each seller, and the sole seller to each buyer, of all energy." ERCOT Protocols § 1.2(4).[4] ERCOT essentially functions as a clearing house for willing buyers and sellers of electricity—creating a market

---

[3] ERCOT acts exclusively for the promotion of the social welfare, does not perform commercial functions, and generates no profits. *See* 36 Tex. Reg. 1817, 1818 ("ERCOT does not perform commercial functions."); Internal Revenue Service, Opinion Letter at 1–2, 4–5 (May 11, 2012), *available at* https://www.irs.gov/pub/irs-wd/1219031.pdf.

[4] *See* discussion below for the definition of the ERCOT Protocols.

conducted within the vital context of the reliable operation of the transmission system in the power region. ERCOT "manages the flow of electric power" for approximately 90 percent of the State of Texas, and "also performs financial settlement for the competitive wholesale bulk-power market." TEX. UTIL. CODE § 39.151; *see* Complaint ¶ 28.

18.     Under PURA, the PUCT has the authority to, and has chosen to, delegate the power to "adopt and enforce rules relating to the reliability of the regional electrical network and accounting for the production and delivery of electricity among generators and all other market participants" to ERCOT. TEX. UTIL. CODE § 39.151(d). Pursuant to this delegation of authority, ERCOT maintains and publishes a compilation of the rules, known as ERCOT's nodal protocols (the "ERCOT Protocols").[5] *See* Complaint ¶ 5. The ERCOT Protocols are subject to the PUCT's oversight, review, and approval. *See* TEX. UTIL. CODE § 39.151(d); *Pub. Util. Comm'n v. Constellation Energy Commodities Grp., LLC.*, 351 S.W.3d 588, 594–95 (Tex. App.—Austin 2011, pet. denied).

19.     The ERCOT Protocols provide the framework for the administration of the Texas electricity market, by which participants in the ERCOT market are required to abide. *See* Complaint ¶¶ 5, 54; *BP Chems., Inc. v. AEP Tex. Cent. Co.*, 198 S.W.3d 449, 452 (Tex. App.—Corpus Christi 2006, no pet.); *Constellation Energy Commodities Grp.*, 351 S.W.3d at 594-95.

20.     The ERCOT Protocols provide that an entity must become a party to a Standard Form Market Participant Agreement ("SFA") to participate in the energy market. *See* ERCOT Protocols § 22A; Complaint ¶¶ 5, 32. The SFA incorporates the ERCOT Protocols. *See* ERCOT Protocols § 22A; Complaint ¶¶ 60, 61. If a holder of a retail electric provider certificate violates PURA or fails to observe the ERCOT Protocols adopted under PURA, the PUCT may suspend,

---

[5] *Available at* http://www.ercot.com/mktrules/nprotocols/current.

revoke, or amend that provider's certificate or registration or impose other administrative penalties. Tex. Util. Code §§ 39.151(j), 39.356, 39.357; *see* Complaint ¶ 33.

21.     The ERCOT Protocols have procedures in place to ensure the liquidity and function of the electricity market if a Market Participant does not pay its invoices in full (called a short-pay). *See* ERCOT Protocols § 9.19(1). In the event of a short-pay, and if drawing down on any financial security and applying any rights of offset or recoupment prove insufficient, ERCOT is required to initially reduce payments to Market Participants that are owed money to account for that short-pay, resulting in certain Market Participants receiving less generation revenue than they are otherwise owed. *See id.* § 9.19(1)(d). ERCOT then takes efforts to attempt to recover those short-pay amounts from the defaulting Market Participant, but if it still cannot replenish the amount of the reduced payments to make whole the parties subject to revenue reductions, ERCOT initiates a "default uplift" process to pay amounts due to parties owed revenue for generation. *See id.* §§ 9.19(1)(e) and 9.19.1. Through this process, ERCOT allocates the short-pay amounts that it does not anticipate recovering from the defaulting Market Participant to other market participants using an allocation formula based on financial settlement data for the month prior to the default. *See id.* §§ 9.19(1)(e) and 9.19.1(2).

### B.  Winter Storm Uri

22.     Winter Storm Uri arrived in early February, bringing record-setting, sub-freezing temperatures to Texas. *See* Complaint ¶¶ 1, 34. This severe and historic winter event resulted in an increased demand for electricity, as well as causing equipment and pipelines to freeze and power plants to go offline, forcing more than 30,000 megawatts of power generation off the grid. *See id.* ¶¶ 1, 35. Early on February 15th, ERCOT declared its highest state of emergency, Energy Emergency Alert Level 3 ("EEA3"), due to exceptionally high electric demand that exceeded available electric supply. *See id*. ¶ 35. Within minutes of declaring EEA3, ERCOT began ordering

load-shed, which is an industry reference to cutting off electricity, to ensure that the power grid did not suffer catastrophic damage due to the extreme demand and lack of sufficient supply of power. *See id.* ¶¶ 1, 35.

23.     As a result of the unprecedented circumstances, *see id.* ¶¶ 1, 34, the PUCT issued two Orders during the winter storm that impacted ERCOT energy market pricing on February 15th[6] and February 16th, 2021.[7] *See id.* ¶¶ 2, 36. The Orders indicated that energy prices across the ERCOT system were clearing for less than $9,000 per megawatt hour (MWh), which was the system-wide cap pursuant to Texas Administrative Code § 25.505(g)(6)(B) at that time. *See* February 16 Order, at p.1. The PUCT indicated its belief that clearing energy prices for less than the high system-wide offer cap ("HCAP") during a time of sustained load shed was "inconsistent with the fundamental design of the ERCOT market." *See id* at p.1. The PUCT reasoned that "[i]f customer load is being shed, scarcity is at its maximum, and the market price for the energy needed to serve that load should also be at its highest." *See id* at p.1. Accordingly, the PUCT determined that pricing adjustments were needed to reflect the scarcity conditions in the market and directed ERCOT to "ensure that firm load that is being shed in EEA3 is accounted for in ERCOT's scarcity pricing signals." *See id* at p.2.

24.     As directed in the Orders, ERCOT accounted for existing load shed in its scarcity pricing signals and calculated scarcity prices for electricity at the HCAP of $9,000/MWh. *See*

---

[6] *See Order Directing ERCOT to Take Action and Granting Exception to Commission Rules*, February 15, 2021, *available at* https://interchange.puc.texas.gov/Documents/51617_3_1111656.PDF (the "February 15 Order").

[7] *See Second Order Directing ERCOT to Take Action and Granting Exception to Commission Rules*, February 16, 2021, *available at* https://interchange.puc.texas.gov/Documents/51617_4_1111709.PDF (the "February 16 Order"). The February 16 Order was virtually identical to the February 15 Order but removed a provision that retroactively raised prices in the market if they had been below that value between the start of the load shed event and entry of the order. *See* February 16 Order, at p.2 (directing ERCOT not to correct any past pricing practices).

ERCOT, *Market Notice M-C021521-02* (Feb. 16, 2021);[8] Complaint ¶¶ 36, 38. Had ERCOT failed to comply with the Orders, the PUCT could have taken appropriate action for that failure to perform, including assessing administrative penalties on ERCOT or decertifying ERCOT as the essential organization. *See* Tex. Util. Code § 39.151(d).

25.    ERCOT maintained pricing at the HCAP from approximately 10:15 p.m. on February 15, 2021, until 9:00 a.m. on February 19, 2021, the end of EEA3. *See* ERCOT, *Market Notice M-C021521-04* (February 18, 2021);[9] ERCOT, *Market Notice M-C021521-05* (February 19, 2021).[10] ERCOT explained that it maintained the pricing at the HCAP beyond the end of residential load shed on February 18, 2021, because many customers remained without electricity. *See* ERCOT, *Market Notice M-C021521-04*. The Emergency Energy Alert Level eventually reached normal operations mid-morning on February 19. *See* Complaint ¶¶ 7, 43, 44.

**C.  The ERCOT Invoices, Chapter 15 Cases, and the Transfers**

26.    Each of the Plaintiffs (excluding the foreign representative) has a "Retail Electric Provider" certificate in Texas, is registered as a Market Participant in the ERCOT Market and is a party to a SFA with ERCOT. *See* Complaint ¶ 32. If a Retail Electric Provider, like the Plaintiffs, fails to pay ERCOT for its invoices when due, its Retail Electric Provider's status may be amended, suspended, or revoked. *See* Tex. Util. Code §§ 39.151(j), 39.356, 39.357. Failure to maintain certification as Retail Electric Provider would result in transfer of customers to a Provider of Last Resort. *See* Complaint ¶¶ 33, 54.

---

[8] *Available at* https://www.ercot.com/services/comm/mkt_notices/detail?id=d0249671-372b-3690-b45e-f1783f47d642.

[9] *Available at* https://www.ercot.com/services/comm/mkt_notices/detail?id=464272ec-0e2f-3d9d-be6c-87f012f0df73.

[10] *Available at* https://www.ercot.com/services/comm/mkt_notices/detail?id=dba778b5-e00b-30c6-ba2e-16784af65c2d.

27.     For the period between February 13 and February 20, the Plaintiffs allege that ERCOT invoiced them for approximately $335 million (the "ERCOT Invoices"), representing amounts ERCOT asserts were due from Plaintiffs as Market Participants. *See* Complaint ¶¶ 9, 11, 25, 56.

28.     On March 9, 2021, the Plaintiffs (and other related debtors) commenced proceedings under the Companies' Creditors Arrangement Act (the "CCAA") in the Ontario Superior Court of Justice, Commercial List (the "Canadian Court"). *See id.* ¶¶ 10,21, 57. That same day, the Plaintiffs (and other related debtors) commenced the Chapter 15 Cases in this Court. *See id.* ¶¶ 21, 57.

29.     On March 9, 2021, this Court entered its *Order Granting Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code*, Case No. 21-30823 [Docket No. 23] (the "Provisional Relief Order"). The Provisional Relief Order provides that "the Court finds that any payments made to ERCOT are made subject to all of the Debtors' rights to contest those payments, and all rights to receive a refund or credit as allowed by applicable law. Although **the Court recognizes the authority to make payments to ERCOT** as granted by the Canadian Order, this Court neither adds nor subtracts from any such authorization." *Provisional Relief Order*, at p. 11 (emphasis added).[11]

30.     In the *Debtors' Emergency Motion for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code*, Case No. 21-30823 [Docket No 16] (the "Provisional Relief Motion") [Docket No 16], the Plaintiffs (and other related debtors) represented that failure to pay the ERCOT

---

[11] On April 2, this Court entered its *Order Granting Petition for (i) Recognition as Foreign Main Proceedings, (ii) Recognition of Foreign Representative, and (iii) Related Relief Under Chapter 15 of the Bankruptcy Code*, Case No. 21-30823 [Docket No. 82] (the "Recognition Order"). The Recognition Order contains substantially the same language as the Provisional Relief Order except that it references the Final CCAA Order. *Recognition Order* at ¶ 30. The Recognition Order also authorized the Debtors "to comply with the terms of the Final CCAA Order without further order of this Court." *Id*. at ¶ 23(b).

Invoices "would be catastrophic for the Company and its creditors, lenders, employees, sureties, public shareholders, and customers," *Provisional Relief Motion* ¶ 1, and that the DIP Financing approved in the CCAA was necessary for the continuation of the Plaintiffs' businesses and intended to allow the Plaintiffs to make all payments to ERCOT and other critical parties. *Id.* ¶¶ 9(b), 10(b), 25.

31.     The Plaintiffs (and other related debtors) made substantially the same representations in paragraphs 1, 10(b), 11(b), and 32 of the *Verified Petition for (i) Recognition as Foreign Main Proceedings, (ii) Recognition of Foreign Representative, and (iii) Related Relief Under Chapter 15 of the Bankruptcy Code* Case No. 21-30823 [Docket No. 17] (the "Verified Petition").

32.     In the *Declaration of Michael Carter in Support of Verified Petition for (i) Recognition as Foreign Main Proceedings, (ii) Recognition of Foreign Representative, and (iii) Related Relief Under Chapter 15 of the Bankruptcy Code*, Case No. 21-30823 [Docket No. 3] ("Carter Declaration"), Mr. Carter, as the Plaintiffs' (and other related debtors) CFO, explains that DIP Financing approved in the CCAA was intended to pay the ERCOT Invoices, *Carter Declaration* ¶ 14(b), and that the DIP Facility approved in the CCAA that morning included "approval of DIP Financing . . . sufficient for Just Energy to continue making all payments to ERCOT and other critical parties as required to protect the overall value of Just Energy." *Id.* at ¶ 15(b). The Carter Declaration further provided that "despite challenging the quantum of such payments as appropriate, Just Energy will continue to satisfy ERCOT obligations as they come due." *Id.* ¶ 31.

33.     The Plaintiffs acknowledge in the Complaint that they made the Transfers to preserve their certification as Retail Electric Providers, preserve their customers, and avoid

potential damage to their businesses. *See* Complaint ¶¶ 9, 10, 33. 54. The Plaintiffs also acknowledge the effect of the orders entered by the Canadian Court (the "CCAA Orders"), stating that on March 9, 2021, "the Canadian Court approved a $125 million financing facility and ***authorized*** the payment of the disputed invoices to ERCOT." *See id.* ¶ 57 (emphasis added).

34.     The Plaintiffs paid the ERCOT Invoices pursuant to the authorizations from the Canadian Court and this Court. *See id.* ¶¶ 10, 15, 59. Just Energy disputes approximately $274 million of the payments made to ERCOT (the "Transfers"). *See id.* ¶¶ 11, 56. The Plaintiffs represent that approximately $193 million of the Transfers were made post-petition, after March 9, 2021. *See id.* ¶ 88.

**D.  The Adversary Proceeding and Complaint**

35.     On November 12, 2021, the Plaintiffs, through their foreign representative, filed the Complaint against the Defendants in the above-referenced adversary proceeding (the "Adversary Proceeding").

36.     The Complaint asserts five causes of action against the Defendants: four against the PUCT and ERCOT, *see* Complaint ¶¶ 83-107, and one against ERCOT alone, *see id.* ¶¶ 108-114.

37.     The Plaintiffs assert causes of action against the PUCT for: (1) avoidance of unauthorized post-petition transfers under Bankruptcy Code § 549; (2) disallowance of informal proofs of claim under Bankruptcy Code §§ 502(b) and 502(d); (3) turnover under Bankruptcy Code § 542(a); and (4) setoff under Bankruptcy Code § 558. *See id.* ¶¶ 83-107.

38.     The Complaint seeks recovery of the challenged Transfers in an amount not less than $274 million. *See id.* at p. 35.

**E.  Procedures for Challenging ERCOT Invoices**

39.     Under PURA and the ERCOT Protocols established thereunder, a market participant can dispute any invoice that it believes to be incorrect, and ERCOT can, if appropriate,

resettle those invoices. *See* ERCOT Protocols §§ 6.3(7), 9.2.5(1), 9.5.6(1), 9.14.2, 9.14.4, 9.5.5. If a market participant is dissatisfied with the outcome of that dispute, it may invoke alternative dispute resolution procedures under the ERCOT Protocols. *See id.* §§ 20.1(1), 20.10.1. If the market participant is still dissatisfied with the result of ADR, it can appeal to the PUCT. *See* TEX. UTIL. CODE § 39.151(d-4)(6); 16 TEX. ADMIN. CODE § 22.251. The PUCT has exclusive original jurisdiction over such disputes. *See* TEX. UTIL. CODE § 32.001(a); *see also* 16 TEX. ADMIN. CODE § 22.251(c) (requiring exhaustion of ADR remedy). The appealing party may complain about "any conduct that is in violation or claimed violation of . . . any order or rule of the [PUCT] or of any protocol or procedure adopted by ERCOT pursuant to any law that the [PUCT] has jurisdiction to administer." 16 TEX. ADMIN. CODE § 22.251(b). A ruling by the PUCT under PURA can be appealed exclusively to the Texas state district court located in Travis County. TEX. GOV'T CODE § 2001.176(b)(1); TEX. UTIL. CODE §§ 11.007(a), 15.001.

40.    The Plaintiffs are aware of the administrative procedure required to dispute the ERCOT invoices. In fact, certain of the Plaintiffs filed a formal dispute of the ERCOT Invoices, which was denied, and have initiated alternative dispute resolution procedures for the ERCOT Invoices. *See Joint Discovery/Case Management Plan Under Rule 26(f) of the Federal Rules of Civil Procedure* [Docket No. 19] at p.7 n.10.

### F.  Procedures for Challenging the Orders

41.    The Plaintiffs allege that the Orders are "Rules" subject to APA.[12] *See* Complaint ¶ 63. Under the APA, a declaratory judgment action regarding "the validity or applicability of a rule" may be brought "only in a Travis County district court" with the PUCT as a party. *See* TEX. GOV'T CODE § 2001.176(b)(1), § 2001.038; TEX. UTIL. CODE §§ 11.007(a), 15.001-.002. Under PURA, judicial review of "competition rules" adopted by the PUCT, must be commenced in the Texas Third Court of Appeals. *See* TEX. UTIL. CODE § 39.001(e).

### IV.    <u>MOTION TO DISMISS STANDARDS</u>

### A.    Federal Rule of Civil Procedure 12(b)(1)

42.    An action should be dismissed for lack of subject matter jurisdiction under Federal Rule 12(b)(1) where the action is barred by sovereign immunity. *See Warnock v. Pecos County*, 88 F.3d 341, 343 (5th Cir. 1996); FED. R. CIV. P. 12(h)(3); *see also, e.g.*, *Doe v. U.S.*, 853 F.3d 792, 796 (5th Cir. 2017); *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 188-89 (5th Cir. 1986); *Baldwin v. Office of Injured Empl. Counsel*, 843 Fed. Appx. 656, 656 (5th Cir. 2021).

43.    Additionally, until a party has exhausted all administrative remedies, a trial court lacks subject matter jurisdiction and must dismiss any claim within a state agency's exclusive jurisdiction. *See In re Entergy Corp.*, 142 S.W.3d 316, 321–22 (Tex. 2004); *Oncor Elec. Delivery Co. LLC v. Giovanni Homes Corp.*, 438 S.W.3d 644, 657-60 (Tex. App.—Fort Worth 2014, no pet.).

---

[12] The Complaint also contains allegations that the Orders are unlawful and voidable "rules" under various sections of the APA and PURA. *See* Complaint ¶¶ 60, 69, 71-72, 74-45, 91. The PUCT disputes the Plaintiffs' characterization of the Orders as "Rules" subject to the APA, *see Tex. Mut. Ins. Co. v. Vista Cmty. Med. Ctr., LLP*, 275 S.W.3d 538, 556 (Tex. App.—Austin 2008, pet. denied) (explaining that internally-directed statements that are "designed to correct [the] inconsistent application" of a preexisting rule or "allow[] the agency to function effectively and produce[] clarity of direction in a highly technical area," do not constitute rules under the APA). The PUCT also disputes the allegations that it has violated either the APA or PURA in adopting the Orders. It is not necessary to address those issues in this Motion, however, because the Complaint does not contain a cause of action for violation of the APA or PURA or for a declaratory judgment that the Orders are invalid or void. *See* Complaint ¶¶ 83-114; Complaint p. 35.

44.     A court can find that subject matter jurisdiction is lacking based on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001); *see Wolcott v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011); *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

45.     "The burden of proof for a Federal Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Leal v. Azar*, Case No. 2:20-CV-185-Z, 2020 WL 7672177, at * 17 (N.D. Tex. Dec. 23, 2020) (citing *Ramming*, 281 F.3d at 161). A court should consider a Federal Rule 12(b)(1) motion before addressing any issue related to the merits of a case. *Ramming*, 281 F.3d at 161.

46.     The Court should dismiss Counts 1, 2, 3, and 4 of the Complaint against the PUCT under Federal Rule 12(b)(1) for lack of subject matter jurisdiction.

## B.     Federal Rule of Civil Procedure 12(b)(6)

47.     A motion to dismiss under Federal Rule 12(b)(6) tests the formal sufficiency of pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming*, 281 F.3d at 161; *see Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible under Federal Rule 12(b)(6) only when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

48.     A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). However, a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

49.     "Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Wolcott*, 635 F.3d at 763 (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)); *see also* FED. R. EVID. 201(b)(2); *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").

50.     The Court should dismiss Counts 1, 2, 3, and 4 of the Complaint under Federal Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## V.     ARGUMENTS AND AUTHORITIES

### A.     The Complaint Must Be Dismissed Under Federal Rule 12(b)(1) Because Sovereign Immunity Bars the Plaintiffs' Claims Against the PUCT.

51.     Although the United States Constitution establishes a strong federal government with broad power, it specifically recognizes that states are sovereign entities entitled to immunity from suit absent consent or valid congressional abrogation. *See, e.g.*, *Alden v. Maine*, 527 U.S. 706, 713 (1999); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54-55 (1996); *Hans v. Louisiana*, 134 U.S. 1, 13-15 (1890). Sovereign immunity derives not only from the Eleventh Amendment, but from the structure of the Constitution itself. *See Alden*, 527 U.S. at 728. The PUCT is a state agency entitled to assert sovereign immunity under the United States Constitution and the Eleventh

Amendment.[13] *See Sullivan v. Texas A&M Univ. Sys.*, 986 F.3d 593, 595 (5th Cir. 2021); Complaint ¶¶ 23, 31, 63. Admittedly, the issue of sovereign immunity becomes more difficult in the context of a bankruptcy proceeding; however, in the circumstances presented in this Adversary Proceeding, the PUCT is entitled to assert its sovereign immunity.

      i.     *The Supreme Court holdings in* Hood *and* Katz *are consistent with the PUCT's assertion of sovereign immunity in this Adversary Proceeding.*

52.     The Supreme Court's guidance on the scope of sovereign immunity in bankruptcy cases is set forth in two cases: *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440 (2004) and *Central Virginia Community College v. Katz*, 546 U.S. 356 (2006).

53.     In *Hood*, a Chapter 7 debtor filed an adversary proceeding seeking to discharge student loan debt guaranteed by a state entity. The Court concluded that the proceeding was an *in rem* proceeding that did not constitute "a suit against the State for the purposes of the Eleventh Amendment." *Hood*, 541 U.S. at 443. The Court defined a bankruptcy court's *in rem* jurisdiction as permitting the court to determine "all claims that anyone, whether named in the action or not, has to the property or thing in question. The proceeding is one against the world." *Id*. at 448 (internal citations omitted). The Court determined that the action did not impermissibly tread on sovereign immunity because the debtor did "not seek monetary damages or any affirmative relief . . . nor [did the debtor] subject an unwilling State to a coercive judicial process." *Id*. at 450. At most, the action simply directed the state (like all other parties) to cease pursuing a debtor to whom the bankruptcy court had awarded the *in rem* relief of discharge. *Id*. at 450-51.

54.     In *Katz*, the Supreme Court held that, through the ratification of the Constitution, states had subordinated their sovereignty only with respect to matters that were fundamental to the

---

[13] It is also clear that the Eleventh Amendment applies to suits from a state's own citizens. *See generally Hans*, 134 U.S. 1; *see also Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 446 (2004); *Texas v. Soileau (In re Soileau)*, 488 F.3d 302, 305 (5th Cir. 2007).

administration of the bankruptcy process. 546 U.S. 356. *Katz* involved a Chapter 11 trustee who filed preference actions against state entities that would have resulted in an affirmative monetary order against the state. Analyzing the case law in existence prior to the adoption of the Constitution and legislation enacted immediately after, the Supreme Court concluded that "the Framers' primary goal was to prevent competing sovereigns' interference with the debtor's discharge." *Id.* at 366-69, 373. The Supreme Court held that state sovereignty is subordinated only within the "limited sphere" of "proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts." *Id.* at 377-78. The Court explained that *in rem* jurisdiction is "a narrow jurisdiction that does not implicate state sovereignty to nearly the same degree as other kinds of jurisdiction." *Id.*

55.     In interpreting *Hood* and *Katz*, the Fifth Circuit determined that there are "three crucial facets of the exercise of *in rem* jurisdiction that prevent it from interfering with state sovereign immunity: (1) [the] exercise of jurisdiction over the estate of the debtor; (2) [the] equitable distribution of the estate's property among creditors; and (3) discharge." *In re Soileau*, 488 F.3d at 307-08. Not every action a bankruptcy court might take under those facets could, and should, fall within a bankruptcy court's ability to override state sovereign immunity. The Supreme Court in *Hood* explained:

> This is not to say, a bankruptcy court's *in rem* jurisdiction overrides sovereign immunity, . . . but rather that the court's exercise of its *in rem* jurisdiction to discharge a student loan debt is not an affront to the sovereignty of the State. **Nor do we hold that every exercise of a bankruptcy court's *in rem* jurisdiction will not offend the sovereignty of the State**. No such concerns are present here, and we do not address them.

*Hood*, 541 U.S. at 451 n.5 (emphasis added and internal citations omitted); *see also In re Soileau*, 488 F.3d at 308 (recognizing that it is an open question whether some exercises of *in rem* jurisdiction may offend state sovereignty).

56.     For example, granting a debtor's divorce may well further the equitable distribution of estate assets; nevertheless, a bankruptcy court has no authority to wade into the adjudication of family law and other matters belonging exclusively to state courts and policy makers. *See Florida v. Diaz (In re Diaz)*, 647 F.3d 1073, 1084 (11th Cir. 2011) (interpreting *Katz* to mean that "some proceedings, although they may arise under the Bankruptcy Code, nevertheless lack a meaningful nexus to the bankruptcy courts' *in rem* jurisdiction and thus do not fall within the scope of the states' consent to suit [via ratification]."); E. Plank, *State Sovereignty In Bankruptcy After Katz*, 15 AM. BANKR. INST. L. REV. 59, 92 (2007) ("Congress could not enable a bankruptcy court to grant a divorce to a debtor from his or her spouse. Any attempt to do so would implicate a state's sovereignty over domestic relations.").

57.     The Supreme Court's holdings in *Hood* and *Katz* provide that, to the extent matters do fall within the broad scope of the bankruptcy court's *in rem* jurisdiction, the scope of that jurisdiction is restrained in cases where its exercise would be an "affront" to state sovereignty. *See Brown v. Fox Broad. Co. (In re Cox)*, 433 B.R. 911, 919 (Bankr. N.D. Ga. 2010) (recognizing the "affront" standard set forth by the Supreme Court in *Hood*, but finding no such affront in fraudulent transfer matter); *In re Soileau*, 488 F.3d at 315 (Jones, J., concurring) (disagreeing with prior precedent that bail bondsman debts were contractual, not criminal, and explaining that *Hood* and *Katz* do not address cases where a bankruptcy court's exercise of its *in rem* jurisdiction could "ride roughshod over [a] traditional bastion of state sovereignty.").[14]

---

[14] *See also* Ralph Brubaker, *Explaining Katz's New Bankruptcy Exception to State Sovereign Immunity: The Bankruptcy Power as a Federal Forum Power*, 15 AM. BANKR. INST. L. REV. 95, 112 (2007) ("It simply does not follow, however, that because the Framers may have contemplated that states would have no sovereign immunity in certain bankruptcy proceedings (such as *in rem* proceedings) that the Framers must have contemplated that states would have no sovereign immunity in any and all bankruptcy proceedings.").

58.     Whether the exercise of *in rem* jurisdiction will result in an affront to state sovereignty depends upon "the essential nature and effect of the proceeding as it appears from the entire record." *In re Cox*, 433 B.R. at 919 (citing *N.C. Tech. Dev. Auth., Inc. v. North Carolina (In re N.C. Tech. Dev. Auth., Inc.)*, No. 03-83278C-7D, 05-9004, 2005 WL 1331254, at \*3 (Bankr. M.D.N.C. March 30, 2005)). "A suit offends a [s]tate's sovereign immunity where either the judgment sought would expend itself on the public treasury, or the effect of the judgment would be to restrain the Government from acting, or compel it to act." *In re Cox*, 433 B.R. at 919 (citing *In re N.C. Tech. Dev. Auth., Inc.*, 2005 WL 1331254, at \*3).

59.     Here, it would be an affront to Texas's sovereignty for this Court to award any of the relief requested in the Complaint. The Texas Legislature has created a complex administrative scheme in PURA to regulate the Texas electricity market and has given the PUCT complete and exclusive authority to address and remedy issues arising in that market, and more specifically, issues between ERCOT and Market Participants. One of the purposes for that scheme is to ensure that electricity production and delivery are accurately accounted for among the generators and wholesale buyers and sellers in the region. Granting the relief requested in Complaint would create consequences for other Market Participants and for Texas citizens. As discussed above, to ensure the continued liquidity and function of the Texas electricity market, the ERCOT Protocols require that amounts not paid by one Market Participant be socialized across the ERCOT market through the short-pay and default uplift procedures set forth in the ERCOT Protocols and described in Paragraph 21 above. As a result, if the Plaintiffs receive relief in this Court that results in less than 100 percent satisfaction of the ERCOT Invoices, other Market Participants, and ultimately their customers, shoulder the weight of that shortfall.

60.     Further, although the Complaint does not contain a cause of action for declaratory judgment, to award any of the relief requested in the Complaint, the Court would have to determine that the Orders are somehow invalid, unenforceable, illegal, or inapplicable. That decision could result in other Market Participants seeking a similar decision in bankruptcy, which would further damage the ERCOT market – causing additional losses for all other Market Participants. Effectively, allowing individual Market Participants, like the Plaintiffs, to reprice their liability in the ERCOT market in Bankruptcy has repercussions for the entire Texas electricity market.

61.     Under the principals set forth in *Hood* and *Katz*, it will be a rare case where a bankruptcy court is unable to exercise *in rem* jurisdiction because of an affront to state sovereignty, but this is that rare case. Determinations about the validity of actions taken by the PUCT and ERCOT as part of a comprehensive regulatory scheme established by the Texas Legislature should be determined in accordance with that regulatory scheme (*i.e.*, by the PUCT or the appropriate Texas courts). Accordingly, this Court should dismiss all the causes of action set forth in the Complaint for lack of subject matter jurisdiction.

ii.     *Bankruptcy Code § 106 does not abrogate the PUCT's sovereign immunity in this Adversary Proceeding.*

62.     This Court should decline the Plaintiffs' invitation to find an abrogation of the PUCT's sovereign immunity under Bankruptcy Code § 106 for at least two reasons. First, the provisions of section 106 cannot circumvent the Eleventh Amendment restrictions on judicial power. Accordingly, because the PUCT is still entitled to assert sovereign immunity under the Eleventh Amendment, as set forth in Subsection (i) above, that power cannot be abrogated by statute. *Dep't of Transp. & Dev. of La. v. PNL Asset Mgmt. Co. (In re Fernandez)*, 123 F.3d 241, 243-44 (5th Cir. 1997); *see also Sarfani, Inc. v. Miss. Dep't of Rev. (In re Sarfani, Inc.)*, 527 B.R.

241, 249 (Bankr. N.D. Miss. 2015) (noting that the United States Supreme Court did not overrule *Fernandez* on this point).

63.     Second, the Plaintiffs do not hold a claim against the PUCT under any of the provisions set forth in section 106, which contains a very limited abrogation of sovereign immunity.[15] Importantly, section 106 does not contain an abrogation of sovereign immunity for causes of action belonging to the debtor that become property of the estate under Bankruptcy Code § 541. *Ross v. Biehn Constr., Inc. (In re William Ross, Inc.)*, 199 B.R. 551, 554 (Bankr W.D. Pa. 1996). The types of claims that fall under the abrogation in section 106 are bankruptcy created claims (*e.g.*, turnover, preferences, fraudulent transfers).

64.     Undoubtedly, the Plaintiffs will point to the fact that the causes of action asserted against the PUCT in the Complaint are each based on one of these sections – specifically Bankruptcy Code §§ 549, 502, 542, and 553. *See* Complaint at pp. 28-33. However, as discussed in more detail in Sections V(C)-(F) below, the Plaintiffs lack the ability to bring a claim against the PUCT under any of these sections of the Bankruptcy Code.

65.     Instead, the relief the Plaintiffs are really seeking against the PUCT – a disguised request for a declaratory judgment that the Orders are legally invalid, unenforceable, or inapplicable (or any other claim under the PURA regulatory scheme) – is a claim that existed prior to the Petition Date and became property of the estate only under Bankruptcy Code § 541.

---

[15] When Bankruptcy Code § 106 was enacted, it would have been reasonable to assume, based on Supreme Court precedent, that Congress had broad authority to abrogate state sovereign immunity in bankruptcy under its Article I power. *See, e.g., Hoffman v. Conn. Dept. of Income Maint.*, 492 U.S. 96 (1989) and *Penn. v. Union Gas*, 491 U.S. 1 (1989). That assumption would further be informed the Supreme Court's decisions in cases like *Seminole Tribe*, 517 U.S. 44. Congress had an opportunity to address state sovereign immunity in bankruptcy and *chose* a limited approach. Congress has declined to take further action to erode state sovereign immunity in bankruptcy cases, even in its extensive rewrite of the Bankruptcy Code in 2005.

Accordingly, those claims are not governed by the abrogation of sovereign immunity in Bankruptcy Code § 106.

    iii.    *The PUCT has not waived sovereign immunity for suit in federal bankruptcy court under APA § 2001.038.*

66.    Separately, the Plaintiffs incorrectly argue that APA § 2001.038 waives sovereign immunity as to the claims asserted in the Complaint. Plaintiffs ignore the fact that section 2001.038 (i) applies only to an action for declaratory judgment to determine the validity or applicability of a rule, and (ii) may only be brought against the PUCT in the Travis County district court. None of the Plaintiffs "asserted" causes of action seek a declaratory judgment to determine the validity or applicability of a rule. Further, if the Plaintiffs want that declaratory relief, the only place that the sovereign state of Texas has authorized that action under section 2001.038 is in the Travis County district court.

67.    The Plaintiffs' reliance on *Texas Logos, L.P. v. Texas Department of Transportation*, 241 S.W.3d 105, 123 (Tex. App—Austin 2007, no pet.), is misplaced. Unlike the Adversary Proceeding, the action in *Texas Logos* was brought in Travis County district court, as required by APA § 2001.038. In this case, Texas has not waived sovereign immunity for a declaratory judgment action in federal bankruptcy court.

68.    To the extent the Plaintiffs ultimately seek to bring a cause of action for declaratory judgment under section 2001.038, section 2001.038 requires mandatory venue for such an action in the Travis County district court. *Tex. Gen. Indem. Co. v. Tex. Workers' Comp. Comm'n*, 36 S.W.3d 635, 637-38 (Tex. App. – Austin 2000, rehearing overruled) ("[APA § 2001.038] creates mandatory jurisdiction in Travis County for challenging the validity of an agency rule.").

**B.      The Complaint Must be Dismissed Under Federal Rule 12(b)(1) Because the Plaintiffs Have Failed to Exhaust Their Administrative Remedies.**

69.      Under Texas law, "[a] state agency has exclusive jurisdiction when the Legislature has granted the agency the sole authority to make an initial determination in a dispute." *Oncor Elec. Delivery Co. v. Chaparral Energy, LLC*, 546 S.W.3d 133, 138 (Tex. 2018) (internal quotations omitted); *see In re Entergy Corp.*, 142 S.W.3d at 321. An agency has exclusive jurisdiction over a matter where either (1) statutory language clearly grants the agency exclusive jurisdiction over matters the statute governs, or (2) a pervasive regulatory scheme indicates that the legislature intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed. *See Chaparral Energy*, 546 S.W.3d at 138. An agency will have exclusive jurisdiction if the claim at issue falls within the jurisdictional scope granted by the Legislature. *See id. at* 139.

70.      "When an agency has exclusive jurisdiction, courts lack jurisdiction until the party has exhausted all administrative remedies before the agency." *Id*. at 138; *see In re Entergy Corp.*, 142 S.W.3d at 321 ("[I]f an agency has exclusive jurisdiction, a party must exhaust all administrative remedies before seeking review of the agency's action. Until the party has exhausted all administrative remedies, the trial court lacks subject matter jurisdiction and must dismiss any claim within the agency's exclusive jurisdiction."). Further, judicial review of that agency's action may only be sought "at the time and in the manner designated by statute." *Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 518 S.W.3d 422, 428 (Tex. 2017) (internal citations omitted). If a party that is required to exhaust administrative remedies fails to do so, a trial court "lacks subject-matter jurisdiction and must dismiss the claims within the agency's exclusive jurisdiction." *Id*. at 428.

      i.     *The PUCT has exclusive jurisdiction over the Plaintiffs' challenges to the Orders and the ERCOT Invoices.*

71.     PURA grants the PUCT exclusive jurisdiction over the Plaintiffs' claims that the Orders are invalid or otherwise unenforceable and that the ERCOT Invoices are improper, including challenges to ERCOT's application of the Orders. The Texas Legislature's stated purpose for PURA is "to grant the Public Utility Commission of Texas authority to make and enforce rules necessary to protect customers of telecommunications and electric services consistent with the public interest." TEX. UTIL. CODE § 11.002(c). Regarding electric utilities, PURA provides that its purpose "is to establish a comprehensive and adequate regulatory system for electric utilities to assure rates, operations, and services that are just and reasonable to the consumers and to the electric utilities." *Id*. § 31.001(a); *see Chaparral Energy*, 546 S.W.3d at 138. PURA § 32.001 grants the PUC "***exclusive original jurisdiction*** over the rates, operations, and services of an electric utility." TEX. UTIL. CODE § 32.001(a) (emphasis added); *see Chaparral Energy*, 546 S.W.3d at 141.

72.     The Texas Supreme Court held that PURA was intended to be the "exclusive means of regulating electric utilities in Texas." *See In re Entergy Corp.*, 142 S.W.3d at 323. The Texas Supreme Court reasoned that "the statutory description of PURA as 'comprehensive' demonstrates the Legislature's belief that PURA would comprehend all or virtually all pertinent considerations involving electric utilities operating in Texas. That is, PURA is intended to serve as a 'pervasive regulatory scheme'" for purposes of exclusive agency jurisdiction. *Id*. at 323. The Texas Supreme Court further determined PURA's specific grant of "exclusive original jurisdiction" to the PUCT makes it clear that the Texas Legislature intended for disputes regarding utility rates, operations, and services to begin the journey towards resolution at the PUCT. *Id*.

73.     The PUCT has the power to decide a dispute involving a private agreement that directly affects the public interest. *See Giovanni Homes Corp.*, 438 S.W.3d at 655; *Pub. Util. Comm'n of Tex. v. Sw. Bell Tel. Co.*, 960 S.W.2d 116, 122–23 (Tex. App.-Austin 1997, no writ). "This regulatory scheme extends to the relationship between the [PUCT], ERCOT, and the market participants who buy and sell electricity in the ERCOT region." *See Elec. Reliability Council of Tex., Inc. v. CPS Energy*, Case No. 04-21-00242-CV, 2021 WL 5879183, at *10 (Tex. App.—San Antonio Dec. 13, 2021) (slip op.).

74.     Accordingly, PURA grants the PUCT "exclusive jurisdiction over all matters involving an electric utility's rates, operations, and services," *Chaparral Energy*, 546 S.W.3d at 141, and all disputes that impact the public interest in an electric utility's rates, operations, and services fall within the scope of that exclusive jurisdiction, *see In re Entergy Corp.*, 142 S.W.3d at 324.

75.     Here, the Complaint clearly questions the PUCT's and ERCOT's actions in calculating rates for electricity during Winter Storm Uri. The Plaintiffs question the PUCT's decision to issue the Orders and ERCOT's decision to implement pricing changes resulting from the Orders, its decision to continue that pricing after residential load shed had ended, and its calculation of ancillary charges. *See* Complaint ¶¶ 36-47, 90-92. The claims asserted in the Complaint clearly fall within the exclusive jurisdiction of the PUCT.

    ii.     *The Plaintiffs' claims must be dismissed because they have failed to exhaust administrative remedies.*

76.     Because the claims in the Complaint fall within the exclusive jurisdiction of the PUCT, the Plaintiffs are required to exhaust the administrative remedies under PURA before seeking any review of the agency's action or seeking other related relief. *Chaparral Energy, LLC*, 546 S.W.3d at 141; *In re Entergy Corp.*, 142 S.W.3d at 323. The doctrine of administrative

exhaustion "applies where a claim is cognizable in the first instance by an administrative agency alone. In such a case, the court will not consider the factual and legal issues until completion of the administrative process." *Rogers v. Columbia/HCA of Cent. La., Inc.*, 961 F. Supp. 960, 965 (W.D. La. 1997) (internal quotations omitted). The Texas Supreme Court has explained:

> The requirement that parties exhaust administrative remedies does not deprive parties of their legal rights. Instead, it honors the Legislature's intent that the appropriate body adjudicates the dispute first and thereby ensure[s] an orderly procedure to enforce those rights. By requiring the agency to address the complaints first, the law permits the agency to apply its expertise and exercise its discretion to resolve the issue and to develop a complete factual record if the courts later get involved.

*Chaparral Energy*, 546 S.W.3d at 145 (citing *Clint Ind. School Dist. v. Marquez*, 487 S.W.3d 538, 544-45 (Tex. 2016)) (internal quotations omitted). In any dispute, even a simple contract dispute, that involves questions of rules and regulations squarely within the purview of the PUCT, "PURA requires that the parties first take their disputes to the administrative agency with the proficiency necessary to make the preliminary determinations." *Chaparral Energy*, 546 S.W.3d at 145.

77.     The Plaintiffs are aware of the administrative process required under Texas law, as evidenced by certain of the Plaintiffs filing a formal dispute of the ERCOT Invoices, which, after denial, was followed by the initiation of alternative dispute resolution procedures. *See Joint Discovery/Case Management Plan Under Rule 26(f) of the Federal Rules of Civil Procedure* [Docket No. 19] at p.5 n.10. In fact, the Plaintiffs have affirmatively reserved their rights to pursue "whatever remedies are available to [them] at the conclusion of the administrative process, including to bring claims in state court. Any such claims would be independent of the relief requested in the Complaint." *See Id*. The Plaintiffs' representations in this Adversary Proceeding demonstrate that the PUCT and Texas courts will be asked to determine the underlying issues related to the validity, enforceability, and applicability of the Orders. This Court should require that the Plaintiffs exhaust those avenues before asking this Court to make determinations that fall

29

in the exclusive purview of the PUCT. By doing so this Court will avoid the possibility of inconsistent determinations and overlapping remedies that may well result from the Plaintiffs' contemporaneous actions.

78.     The Plaintiffs may attempt to rely upon the Fifth Circuit's decision in *Penny v. Southwestern Bell Telephone Co.*, 906 F.2d 183 (5th Cir. 1990), to argue that because its claims arise under the Bankruptcy Code that they are not subject to the doctrine of administrative exhaustion. In *Penny*, two consumers brought actions under the Texas Deceptive Trade Practice Act ("DPTA") alleging that Southwestern Bell was discriminating in its application of certain rates and retaliated against the consumers for complaining to the PUCT about the allegedly discriminatory rates. 906 F.2d at 184. The Fifth Circuit determined that the doctrine of administrative exhaustion did not apply because the DTPA and retaliation claims fell outside the PUCT's exclusive jurisdiction. *Id*. at 185. The court explained that "[e]ven if the proper adjudicatory body were to find that Bell did not discriminate against the Pennys in the rates it charged them, the Pennys could still maintain their other causes of action." *Id*.

79.     *Penny* is inapplicable here. Each of the claims asserted in the Complaint relies upon allegations that the Orders are invalid, illegal, unenforceable, or inapplicable and that ERCOT improperly priced the electric market during Winter Storm Uri. While the DTPA and retaliation claims in *Penny* could survive even if the PUCT were to decide against the Pennys' on the issues that fell within the PUCT's exclusive jurisdiction, here, the Plaintiffs' claims cannot survive without a determination about the propriety of rate-calculating activities that fall within the exclusive jurisdiction of the PUCT.

80.     Further, the Plaintiffs may argue that the PUCT does not have exclusive jurisdiction because some or all the relief requested in this proceeding is unavailable through proceedings at

the PUCT. The PUCT disputes that appropriate relief cannot be granted through proceedings in front of the PUCT. And in any event, the Texas Supreme Court has held that unavailability of relief is not sufficient to overcome exclusive original jurisdiction. "When the [Texas] Legislature creates a pervasive regulatory scheme, it intends for the agency with the appropriate expertise to make important determinations before the parties take their claim to the judicial system." *Chaparral Energy, LLC*, 546 S.W.3d at 145. The Texas Supreme Court described a "hybrid claims-resolution process" in which an administrative agency with exclusive jurisdiction is entitled to make certain findings before a trial court can adjudicate a claim. *Id*. at 142. The Texas Supreme Court explained:

> Under this "hybrid claims-resolution process," the agency must first exercise its exclusive jurisdiction and apply its unique expertise to resolve the issues that fall within its exclusive jurisdiction. The claimant must first exhaust administrative remedies to obtain [the agency's] decision on those issues before filing suit to obtain relief the agency cannot provide. The agency's findings are subject to substantial evidence review in the courts, and the claimant may rely on those findings to establish its claim and obtain relief in the courts.

*Id*.

81.     Here, like the claims in *Chaparral Energy*, none of the Plaintiffs' claims can be resolved without addressing issues that clearly fall in the exclusive jurisdiction of the PUCT – specifically the legality, validity, enforceability, and of the Orders and ERCOT's application of the same. *See id*. The PUCT has the exclusive original jurisdiction to consider the challenges raised to the Orders, and any judicial review of the PUCT's exercise of that jurisdiction should be under the substantial evidence rule. TEX. UTIL. CODE § 15.001 ("Any party to a proceeding before the commission is entitled to judicial review under the substantial evidence rule.").

iii.     *Alternatively, the PUCT has primary jurisdiction over the Plaintiffs' challenges to the Orders and the ERCOT Invoices.*

82.     The issue of primary jurisdiction arises where a court has determined that it has original concurrent jurisdiction over a claim, rather than just appellate jurisdiction. *Penny*, 906 F.2d at 187. The doctrine applies where the determination of a claim that is originally cognizable in the courts requires the resolution of issues which, under a regulatory scheme, come within the special expertise or competence of an administrative body. *See id*. at 187; *see Rogers*, 961 F. Supp. at 965; *see also Northwinds Abatement, Inc. v. Emp'rs Ins. Of Wausau*, 69 F.3d 1304, 1311 (5th Cir. 1995) ("Because the Texas Legislature has vested these entities with the authority to make these findings, and because the special expertise of these entities makes them uniquely qualified to make such findings, it is more appropriate that the district court defer to this procedure rather than to make these necessary determinations in the first instance."). "Its purpose is to assure that the administrative agency is not bypassed in a matter that the legislature has specifically committed to it." *Penny*, 906 F.2d at 187.

83.     The Fifth Circuit identified three elements required for the primary jurisdiction doctrine to apply: "(1) the court has original jurisdiction over the claim before it; (2) the adjudication of that claim requires the resolution of predicate issues or the making of preliminary findings; and (3) the legislature has established a regulatory scheme whereby it has committed the resolution of those issues or the making of those findings to an administrative body." *Rogers*, 961 F. Supp. at 966 (citing *Northwinds Abatement*, 69 F.3d at 1311). Where the success of a plaintiff's claims depends upon the resolution of a predicate issue under the regulatory scheme of an administrative body, primary jurisdiction applies. *See id*. "The completion of the administrative process will also give the defendants a chance to discover and correct their own errors, if any exist." *See id*. at 966-67.

84.     The Fifth Circuit explained that in cases where the PUCT may have concurrent, non-exclusive, jurisdiction with another court, the PUCT still plays an important role in adjudication, because it "can provide more uniformity in the adjudication of that issue than can the number of different courts in which the claims may be brought." *Penny*, 906 F.2d at 186-87. "Under the doctrine of primary jurisdiction, a trial court can reach out and touch that expertise and uniformity and then use the [PUCT's] determination as a basis for determining whether and what types of damages are appropriate in a particular case." *Id*. at 187.

85.     In considering the exercise of its jurisdiction over a rate discrimination claim, the Fifth Circuit explained its reasoning for deferring to the PUCT's primary jurisdiction:

> Routing the case through the [PUCT] will permit the [PUCT] to apply its specialized knowledge of rates and their application. That knowledge should prove helpful in resolving this particular claim. It should also aid in creating more uniform standards to be followed when evaluating other claims for discrimination. Hence, by allowing the [PUCT] to determine this issue, concerns for uniformity and specialized knowledge are met.

*Id*. at 187-88. "The broad power of the [PUCT] to hold hearings and make findings coupled with its broad rate regulatory powers, indicate that the legislature intended the [PUCT] to make findings on whether rates were appropriately set as part of its mandate." *See id*. at 183, 188.

86.     Here, in the event the Court decides that it has original jurisdiction over the claims in the Complaint, the other elements for primary jurisdiction are clearly satisfied. The adjudication of the claims in the Complaint requires the resolution of predicate issues related to (i) the PUCT's rulemaking authority, specifically, the legality, validity, enforceability, and applicability of the Orders, and (ii) ERCOT's application of the Orders. Additionally, the Texas Legislature created a regulatory scheme that entrusts the determination of electricity rates and the regulation of the electricity market to the PUCT. At a minimum, the PUCT's determinations in its sphere of expertise should be entitled to deference through substantial evidence review afforded by primary

jurisdiction. *Keller Indus. Inc. v. U.S.*, 449 F.2d 163, 174 n.31 (5th Cir. 1971) ("When the Commission resolves a question within its primary jurisdiction, its resolution should not be set aside unless it exceeds the Commission's statutory authority or is unsupported by substantial evidence.")

### C.   Count 1 of the Complaint Fails to State a Claim Against the PUCT For Avoidance of a Post-Petition Transfer Under Bankruptcy Code § 549.

87.   To prevail under Bankruptcy Code § 549, a trustee (or debtor-in-possession) must establish that: (1) a transfer occurred, (2) without court authorization, (3) after the commencement of a bankruptcy case, and (4) the transfer was of estate property. 11 U.S.C. § 549; *see Sommers v. Katy Steel Co. (In re Contractor Tech., Ltd.)*, 343 B.R. 573, 576 (Bankr. S.D. Tex. 2006).[16]

88.   The Plaintiffs have failed to plead facts sufficient to support two of the elements required for a cause of action under section 549 against the PUCT. First, the PUCT did not receive any of the Transfers, and second, the Transfers were authorized by the Bankruptcy Court.

89.   Additionally, Count 1 should be dismissed because the Plaintiffs have failed to request any relief that would allow them to recover avoidable transfers under section 549. Specifically, relief under Bankruptcy Code § 550 is unavailable in Chapter 15.

i.   *The PUCT did not receive any of the Transfers.*

90.   While the Plaintiffs often use passive voice to discuss the Transfers and their recipient, Transfers were clearly made to ERCOT, not to the PUCT. *See* Complaint ¶¶ 10, 15, 59. There are no specific allegations supporting the PUCT's receipt of any of the Transfers or an allegation that the PUCT later received any part of the Transfers. Collective allegations are

---

[16] After a trustee or debtor-in-possession establishes these elements, the party asserting the validity of the transfer bears the burden of proof. *See Moser v. Mullican (In re Mullican)*, 417 B.R. 389, 405 (Bankr. E.D. Tex. 2008); *Moser v. Najafi (In re Goushey)*, Adv. No. 09-4208, 2011 WL 2470029, at *2 (Bankr. E.D. Tex. June 17, 2011) ("If the trustee establishes these elements, the party asserting the validity of the transfer bears the burden of proof.").

insufficient to support a cause of action. *See O'Connell v. Arthur Andersen LLP (In re AlphaStar Ins. Grp. Ltd.)*, 383 B.R. 231, 257-58 (Bankr. S.D.N.Y. 2008) ("[G]roup pleading is generally forbidden because each defendant is entitled to know what he is accused of doing."); *Goodman v. H.I.G. Capital, LLC (In re Gulf Fleet Holdings Inc.)*, 491 B.R. 747, 778-79 (Bankr. W.D. La. 2013) (dismissing breach of fiduciary duty claims where the complaint referred to defendants collectively). Accordingly, the Plaintiffs cannot assert a cause of action against the PUCT under section 549 and Count 1 must be dismissed.

      ii.     *The Transfers were authorized by the Bankruptcy Court.*

91.     "An unauthorized transfer, by definition, is not supposed to take place." *Ford v. Loftin (In re Ford)*, 296 B.R. 537, 552 (Bankr. N.D. Ga. 2003). To state a claim under Bankruptcy § 549, the Plaintiffs must show that neither the Court nor the Bankruptcy Code authorized the Transfers. *West v. Hsu (In re Adv. Modular Power Sys. Inc.)*, 413 B.R. 643, 682 (Bankr. S.D. Tex. 2009). A debtor cannot avoid payments under § 549 that were authorized by court order. *See In re Discount Family Boats of Tex., Inc.*, 233 B.R. 365, 370, 372 (Bankr. E.D. Tex. 1999).

92.     Both the Provisional Relief Order and the Recognition Order entered by this Court provide that "***the Court recognizes the authority to make payments to ERCOT*** as granted by the Canadian Order, this Court neither adds nor subtracts from any such authorization." *Provisional Relief Order*, at p. 11 (emphasis added); *Recognition Order* ¶ 23(b) (the Court recognized "the authority to make payments to ERCOT as granted by the Final CCAA Order.").

93.     The Plaintiffs also acknowledge that in the CCAA Orders, "the Canadian Court approved a $125 million financing facility and ***authorized*** the payment of the disputed invoices to ERCOT." Complaint ¶ 57 (emphasis added).

94.     The Provisional Relief Motion and the Carter Declaration make clear that the primary purpose in seeking approval of the DIP Financing by the Canadian Court and this Court

was so it could be used to pay the ERCOT Invoices and protect the Plaintiffs' ability to continue operating as a Market Participant under its Retail Electric Provider certificate. *See Verified Petition* ¶¶ 1, 10(b), 11(b), 32, *Provisional Relief Motion* ¶¶ 1, 9(b), 10(b), 25, *Carter Declaration* ¶¶ 14(b), 15(b), 31.

95.     There is no logical basis to argue that the Transfers were unauthorized where the Transfers were disclosed as one of the primary purposes for securing DIP Financing, where the DIP Financing and the Transfers were expressly "authorized" by the Canadian Court, and where this Court "recognized the authority" to make the Transfers and declined to subtract from that authority. The Transfers are clearly not subject to avoidance under Bankruptcy Code § 549. Count 2 of the Complaint should be dismissed under Federal Rule 12(b)(6).

iii.     *Judicial estoppel bars the Plaintiffs from avoiding the Transfers.*

96.     Judicial estoppel "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003). The purpose of the doctrine is to prevent litigants from "playing fast and loose" with the court. *Id*. The Fifth Circuit applies a two-prong test for judicial estoppel: (1) the position of the party to be estopped must be clearly inconsistent with a previous position, and (2) the party to be estopped must have convinced the court to accept the previous position." *Id*.

97.     Here, the Plaintiffs have put themselves in an untenable position. They argue that this Court and the Canadian Court could not have had any basis to approve the Transfers despite the fact the Plaintiffs themselves argued that the DIP Facility approved by the Canadian Court and the Transfers made thereunder were desperately necessary for the continuation of their businesses. *See Verified Petition* ¶¶1, 10(b), 11(b), 32, *Provisional Relief Motion* ¶¶ 1, 9(b), 10(b), 25, *Carter Declaration* ¶¶ 14(b), 15(b), 31. The Court adopted that position in the both the Provisional Relief

Order and the Recognition Order, when it recognized the authority to make payments to ERCOT as granted by the Canadian Court. *See Provisional Relief Order*, at p. 11; *Recognition Order* ¶ 23(b).

98.     The Plaintiffs should not be authorized to take inconsistent positions in front of this Court based solely on their desire for a different result. To that end, the Plaintiffs should be judicially estopped from seeking permission from the Bankruptcy Court and the Canadian Court to voluntarily make a payment and then seeking to argue that making that same payment could never have been validly unauthorized. *Walter's Disposal Serv., Inc. v. Atterbury (In re Walter's Disposal Serv., Inc.)*, 73 B.R. 6, 10 (Bankr. W.D. Mo. 1986) (explaining that a bankruptcy court should not permit a debtor to participate in "the making of postpetition contracts under the powers granted to it by the provisions of chapter 11, only to seek to abrogate them when adherence to them appears no longer to suit the fancy of the debtor.").

iv.     *Recovery of the value of the Transfers under Bankruptcy Code § 550 is unavailable under Chapter 15.*

99.     Ignoring that avoidance under Bankruptcy Code § 549 is not self-effectuating, the Plaintiffs fail to plead any mechanism by which they can recover any transfers avoided under section 549. To effectuate relief under Bankruptcy Code § 549, a separate provision, like Bankruptcy Code § 550, must be used to recover the property transferred. 11 U.S.C. § 550(a) ("[T]o the extent that a transfer is avoided under section . . . 549 . . . the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property . . . ."); *see e.g.*, *In re Adv. Modular Power Sys., Inc.*, 413 B.R. at 673 (discussing the use of section 550 to recover transfers avoided under section 549); *see In re Mullican*, 417 B.R. at 405 (citing section 550 and stating "[i]f the Chapter 7 trustee establishes these elements, the trustee can then recover the property transferred (or its value) from the transferee."); *In re Goushey*, 2011 WL

2470029, at *3 (discussing whether a transfer avoidable under section 549 can be recovered from a transferee under section 550).

100.     The ability to recover transfers under Bankruptcy Code § 550 is unavailable to Plaintiffs in this Chapter 15 case. *See* 11 U.S.C. § 1521(a)(7); *O'Sullivan v. Loy (In re Loy)*, 432 B.R. 551, 555 n.4 (E.D. Va. 2010) (recognizing that Bankruptcy Code § 1521(a)(7) forbids relief under Bankruptcy Code § 550). Because the Plaintiffs have failed to plead a remedy that would allow them to recover the Transfers under Bankruptcy Code § 549, Count 1 of the Complaint should be dismissed under Federal Rule 12(b)(6).

**D.     Count 2 of the Complaint Fails to State a Claim Against the PUCT For Disallowance Under Bankruptcy Code §§ 502(b) and 502(d).**

101.     An informal proof of claim must: (1) be in writing, (2) contain a demand by a creditor of the debtor's estate, (3) evidence an intent to hold the debtor liable for such debt, and (4) be filed with the bankruptcy court. *Nikloloutsos v. Nikloloutsos (In re Nikloloutsos)*, 199 F.3d 233, 236 (5th Cir. 2000).[17]

102.     In the Complaint, the Plaintiffs allege that: (i) ERCOT has appeared as a creditor in the Chapter 15 Cases, (ii) ERCOT sent demands in writing for amounts allegedly due, and (iii) ERCOT's actions constitute informal proofs of claim. While the allegations as to ERCOT do not appear to satisfy the pleading requirements for an informal proof of claim (*e.g.*, the failure to allege that ERCOT filed a written demand in the bankruptcy case), Count 2 of the Complaint completely ignores the PUCT. The Plaintiffs fail to make any allegations that the PUCT has taken any action, filed any writing, or made any demands that would constitute an informal proof of claim entitling

---

[17] Further, based upon the facts of the case, allowance of the claim must be equitable under the circumstances. *Id*.

the Plaintiffs to any relief under section 502(b) and 502(d). Accordingly, Count 2 of the Complaint

should be dismissed under Federal Rule 12(b)(6) for failure to state a claim.

**E.**   **Count 3 of the Complaint Fails to State a Claim Against the PUCT For Turnover Under Bankruptcy Code §542(a).**

    i.   *The PUCT did not receive any of the Transfers.*

103.   Bankruptcy Code § 542(a) provides in pertinent part that "an entity, other than a

custodian, in possession, custody, or control . . . of property that the trustee [or debtor-in-

possession] of property that the trustee may use, sell, or lease under section 363 of this title . . .

shall deliver to the trustee, and account for, such property or the value of such property . . . ."

11 U.S.C. § 542(a).

104.   As set forth in Section V(C)(i) above, the Complaint provides no basis to conclude

that the PUCT received any of the Transfers or is otherwise in possession of property of the estate.

Accordingly, Count 3 for turnover under Bankruptcy Code § 542(a) must be dismissed under

Federal Rule 12(b)(6) for failure to state a claim as to the PUCT.

    ii.   *The Transfers are disputed and cannot be the subject of a stand-alone turnover action.*

105.   Second, turnover proceedings under Bankruptcy Code § 542 are "strictly limited to

actions to recover property that is indisputably part of the estate; in other words, a turnover action

is not the appropriate tool for acquiring the right to use or possess property if the debtor's right to

use or possess the property is subject to dispute." *Scarver v. Ellis (In re McKeever)*, 567 B.R. 652,

663-64 (Bankr. N.D. Ga. 2017). Courts have consistently found that turnover is "not intended as a

remedy to determine disputed rights of parties," but instead "to obtain what is acknowledged to be

property of the estate." *Schlossberg v. Abell (In re Abell)*, 549 B.R. 631, 653 (Bankr. D. Md. 2016);

*see HBK Main St. Invs., L.P. v. Sankaty ATP, LLC (In re ATP Oil & Gas Corp.)*, Case No. 12-

36187, Adv. No. 14-03286 and 14-03287, 2015 WL 1093568, at *3 (Bankr. S.D. Tex. Mar. 10,

2015) (citing *U.S. v. Inslaw, Inc.*, 932 F.2d 1467, 1472 (D.C. Cir. 1991) ("It is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in dispute.").[18] "A properly pleaded complaint asserting a claim for turnover must allege an undisputed right to recover the claimed debt." *Stanziale v. CopperCom, Inc. (In re Conex Holdings., LLC)*, 518 B.R. 792, 801 (Bankr. D. Del. 2014).

106.     While a turnover claim may be ancillary to an action for a declaratory judgment that property is property of the estate, the Plaintiffs have failed to plead such cause of action. *In re Abell*, 549 B.R. at 654 (acknowledging that a turnover claim may be an ancillary claim to a declaratory judgment claim related to the estate's ownership of property); *see also Pry v. Maxim Global, Inc. (In re Maxim Truck Co., Inc.)*, 415 B.R. 346, 357 n.4 (Bankr. S.D. Ind. 2009) ("[T]he Trustee's remedy under § 542 for turnover ... only ripens upon a determination by the Court that the property in dispute is, in fact, property of the estate."); *c.f. Trauner v. Thadikamalla (In re Thadikamalla)*, 481 B.R. 232, 241 (Bankr. N.D. Ga. 2012) (finding that where there is a dispute over the debtor's right to possess property, turnover under section 542(a) "cannot be awarded without, first, recovering the transfers.")[19]

107.     None of the allegations in the Complaint suggest that the PUCT or ERCOT has consented to Plaintiffs' position that the Transfers can be recovered by the estate or are property

---

[18] *See also, e.g.*, *Charter Crude Oil Co. v. Exxon Co., U.S.A. (In re Charter Co.)*, 913 F.2d 1575, 1579 (11th Cir. 1990) ("Clearly, Congress envisioned the turnover provision of § 542 of the Code . . . to apply to tangible property and money due to the debtor without dispute which are fully matured and payable on demand."); *Las Vegas Casino Lines v. Abbott (In re Las Vegas Casino Lines, LLC)*, 454 B.R. 223, 227 (Bankr. M.D. Fla. 2011) ("[T]he purpose of the turnover provision is to provide debtors with the ability to recover property, not the ability to recover property which may be owed to debtors.").

[19] The PUCT also notes that this claim under Bankruptcy Code § 542 should not be viewed as a "core" claim, a turnover claim that is derivative of a claim under state law cannot confer constitutional authority on the bankruptcy court over a claim that would otherwise be non-core. *Highland Capital Mgmt. L.P. v. Highland Capital Mgmt. Fund Advisors L.P (In re Highland Capital Mgmt. L.P.)*, Case No. 19-34054, Adv. No. 21-03004; Civ Act. No. 3:21-CV-00881-X, 2021 WL 2881410 at *4-5 (Bankr. N.D. Tex. July 8, 2021).

of the estate. This motion to dismiss alone demonstrates the disputed nature of the Plaintiffs' claims. As Plaintiffs cannot plead an undisputed right to the value of the Transfers, Count 3 for turnover under Bankruptcy Code § 542(a) must be dismissed under Federal Rule 12(b)(6).

**F.      Count 4 of the Complaint Fails to State a Claim Against the PUCT for Setoff Under Bankruptcy Code § 558.**

108.    Bankruptcy Code § 558, as opposed to section 553, preserves any right of setoff the *debtors* may have under state law. *See In re PSA, Inc.*, 277 B.R. 51, 53 (Bankr. D. Del. 2002); *Second Pa. Real Estate Corp. v. Papercraft Corp. (In re Papercraft Corp.)*, 127 B.R. 346, 349-50 (Bankr. W.D. Pa. 1991). Plaintiffs fail to state a cause of action under section 558 for two reasons: (i) no independent cause of action for setoff exists under the Bankruptcy Code, and the Plaintiffs have failed to plead a right to setoff under any non-bankruptcy law, and (ii) the Plaintiffs have failed to plead the existence a debt from or to the PUCT.

109.    First, Bankruptcy Code § 558 does not create an independent federal right of setoff, but merely preserves any right that exists under applicable non-bankruptcy law. 11 U.S.C. § 558. Accordingly, a debtor must establish a right to setoff under state law to assert a right to setoff as a defense under section 558. *See In re PSA, Inc.*, 277 B.R. at 54; *Scherling v. Hellman Elec. Corp. (In re Westchester Structures, Inc.)*, 181 B.R. 730, 740 (Bankr. S.D.N.Y. 1995) (explaining that the parties' contract and applicable non-bankruptcy law determine rights of setoff under section 558).

110.    Because an independent cause of action does not exist under section 558, and the Plaintiffs have failed to plead any separate right to setoff under contract, common law, or statutory law, Count 4 must be dismissed.

111.    Second, even assuming the Plaintiffs intend to assert setoff under Texas common law, they have failed to plead the mutual debt required to sustain a cause of action against the PUCT.

112.    Under Texas law:

Setoff is a form of equitable counterclaim which brings together obligations of parties opposing each other and, by judicial action, makes each obligation extinguish the other. The object of equitable setoff is to adjust the demands between the parties and allow a recovery of only the balance that is due. In order for one demand to be set off against another, both demands must mutually exist between the same parties. Indeed, setoff is proper only where demands are mutual, between the same parties, and in the same capacity or right.

*Capital Concepts Properties 85–1 v. Mutual First, Inc.*, 35 F.3d 170, 175 (5th Cir.1994) (internal citations and quotations omitted); *see In re Garden Ridge Corp.*, 338 B.R. 627, 633 (Bankr. D. Del. 2006), *aff'd*, 399 B.R. 135 (D. Del. 2008), *aff'd*, 386 F. App'x 41 (3d Cir. 2010).

113.    The Plaintiffs have failed to plead that any debt is owed from the Plaintiffs to the PUCT or by the PUCT to the Plaintiffs. Accordingly, Count 4 for setoff under Bankruptcy Code § 558 must be dismissed under Federal Rule 12(b)(6) for failure to state a claim.

**G.    Alternatively, this Court Should Abstain from Hearing the Claims Set Forth in the Complaint Under the Burford Doctrine and 11 U.S.C. § 1334(c)(1).**

114.    In *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), the Supreme Court held that because federal court review of matters also under the jurisdiction of state commissions and state courts had repeatedly lead to "[d]elay misunderstanding of local law, and needless federal conflict with state policy," 319 U.S. at 327, and concluded that "a sound respect for the independent state action require[ed] the federal equity court to stay its hand." 319 U.S. at 334. The Supreme Court applied the same principle in *Alabama Public Service Commission v. Southern Railway Co.*, 341 U.S. 341 (1951), holding that a district court should abstain from exercising its jurisdiction where

a unified state regulatory process was involved, and an adequate state court review of administrative orders was available. 341 U.S. at 767-68.

115.    "From these cases, and others on which they relied, [the Supreme Court has] distilled the principle now commonly referred to as the '*Burford* doctrine.'" *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989). Under the *Burford* doctrine:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) where there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the results in the case then at bar; or (2) where the exercise of federal review of the questions in a case and in similar cases would be disruptive to state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*Id*. at 361 (internal quotations omitted).

116.    "The motivating force behind *Burford* abstention is . . . a reluctance to intrude into state proceedings where there exists a complex state regulatory system." *New Orleans Pub. Serv., Inc. v. City of New Orleans*, 798 F.2d 858, 862 (5th Cir. 1986). "[A] court abstaining under Burford relegates a federal issue to state court adjudication because the federal issue touches some overriding state interest." *Id*.

117.    The *Burford* doctrine applies in all federal cases where a court is asked to provide some form of discretionary relief. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996). Further, the *Burford* doctrine could even "support a federal court's decision to postpone adjudication of a damages action pending the resolution by the state courts of a disputed question of state law." *Id*. at 730-31. Bankruptcy courts have also applied the *Burford* doctrine in deciding pertinent abstention issues. *See e.g., In re N.Y.C. Off-Track Betting Corp.*, 434 B.R. 131, 154 (Bankr. S.D.N.Y. 2010); *Kurtzman v. Mutual Benefit Life (In re Philips Offset Co.)*, 152 B.R. 836,

838-39 (Bankr. S.D.N.Y. 1992); *Koken v. Reliance Grp. Holdings Inc. (In re Reliance Grp. Holdings Inc.*), 273 B.R. 374, 401-02 (Bankr. E.D. Pa. 2002).

118.     The Fifth Circuit has recognized that courts exercising bankruptcy court jurisdiction "have broad power to abstain whenever appropriate 'in the interest of justice, or in the interest of comity with State courts or respect for State law.'" *Wood v. Wood*, 825 F.2d 90, 93 (5th Cir. 1987) (quoting 1334(c)(1)). "The abstention provisions of [11 U.S.C. § 1334] demonstrate the intent of Congress that concerns of comity and judicial convenience should be met, not by rigid limitations on the jurisdiction of federal courts, but by the discretionary exercise of abstention when appropriate in a particular case." *Id.* (citing *Kelley v. Nodine (In re Salem Mortgage Co.)*, 783 F.2d 626, 635 (6th Cir.1986)).

119.     Permissive abstention under 28 U.S.C. § 1334 provides bankruptcy courts with greater latitude to abstain than is otherwise available to the district court. *Republic Reader's Serv., Inc. v, Magazine Serv. Bureau, Inc. (In re Republic Reader's Serv., Inc.)*, 81 B.R. 422, 425 (Bankr. S.D. Tex. 1986) (explaining that Congress intended abstention to "play a far more significant role in limiting those matters, which although properly brought within the reach of jurisdiction under Title 11, are nonetheless best left for resolution to a state or other nonbankruptcy forum"). In the common circumstances where a proceeding is "cast in the language of a core proceeding," but "merely shrouds state law actions under the guise of a bankruptcy issue," abstention is often appropriate. *Id.* at 427 (providing turnover actions under Bankruptcy Code § 542 as a typical example).

120.     The Fifth Circuit has recognized five factors that weigh in favor of abstention under the *Burford* doctrine: (1) "whether the cause of action arises under federal law or state law;" (2) "whether the case requires inquiry into unsettled issues of state law, or into local facts;" (3) "the

importance of the state interest involved;" (4) "the state's need for a coherent policy in that area;" and (5) "the presence of a special state forum for judicial review." *Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 314 (5th Cir. 1993). Each of these factors weighs in favor of abstention in this case. Accordingly, this Court, as a court of equity, should abstain under 11 U.S.C. § 1334(c)(1) and the *Burford* doctrine, as a federal district court acting in equity would be required to do.

          i.     *The basis for the relief requested in the Complaint arises under state law.*

121.    This factor does not turn on "whether the plaintiff's cause of action is alleged under federal or state law," but "on whether the plaintiff's claim may be 'in any way entangled in a skein of state law that must be untangled before the federal case can proceed.'" *Sierra Club v. City of San Antonio*, 112 F.3d 789, 795 (5th Cir. 1997) (quoting *Quackenbush*, 517 U.S. at 727). Thus, even if a plaintiff's claim is framed as arising under federal law, abstention may be appropriate if "the underlying issues presented are purely state law issues." *Koerner v. Garden Dist. Ass'n*, 78 F. App'x 960, 963 (5th Cir. 2003); *see In re Republic Reader's Serv., Inc.*, 81 B.R. at 427 ("Often a proceeding, cast in the language of a core proceeding, merely shrouds state law actions under the guise of a bankruptcy issue."). Here, abstention is appropriate because the each of the Plaintiffs' causes of action, while pled as bankruptcy claims, rely upon a theory under Texas State law that the Orders are illegal, unenforceable, or inapplicable. Each of the causes of action implicate the comprehensive regulatory scheme under PURA.

122.    The nature of the allegations underlying the causes of action in the Complaint strongly favors abstention under *Burford*.

      ii.    *Resolution of the issues raised in the complaint will require inquiry into unsettled state law.*

123.    Resolving the Plaintiffs' allegations related to rulemaking authority and requirements under both PURA and the APA, and the price calculating practices of ERCOT, would require the Court to analyze and reach conclusions about PURA, the ERCOT Protocols, and the Plaintiffs' SFAs. Given the unprecedented nature of Winter Storm Uri and the Orders, the Court would, no doubt, be addressing unsettled issues or even issues of first impression. This factor strongly favors abstention under *Burford*.

      iii.   *Texas's regulation of its electricity market is an important and compelling state interest.*

124.    In considering *Burford*, the Fifth Circuit has acknowledged that "utility regulation is one of the most important of the functions traditionally associated with the police power of the States," while "federal courts have little interest in hearing" such matters. *Wilson*, 8 F.3d at 315 (internal citations omitted). "Nor does the Bankruptcy Code represent a supervening federal interest." *Id*. at 314.

125.    The Plaintiffs' causes of action unquestionably implicate the authority granted to the PUCT (and derivatively to ERCOT) by the Texas Legislature in PURA. The Texas Legislature has placed the oversight and judgment of ERCOT's conduct in the hands of the PUCT and the oversight and judgment of the PUCT's conduct in the hands of the appropriate Texas state court. *See* Tex. Gov't Code § 2001.176(b)(1); Tex. Util. Code §§ 11.007(a), 15.001.

126.    The importance of the sovereignty of a state's rate setting power has consistently been recognized in federal courts. So much so that in cases where a federal court is acting under diversity jurisdiction, the court is barred by the federal Johnson Act from exercising jurisdiction over "any order affecting rates chargeable by a public utility and made by a State administrative

agency or rate-making body of a State political subdivision" in the circumstances that apply in this case. 28 U.S.C. § 1342.

127.    The effect of what essentially could be a re-pricing of the Texas electricity market by this Court in its adjudication of the Plaintiffs' causes of action would result in an extraordinary and unprecedented intervention into that market, with potentially devastating effects, including an effect on investments in the state energy market and in its market participants because of ERCOT's short-pay and uplift procedures.

128.    Texas's compelling interest in regulating its electricity market strongly favors abstention under *Burford*.

    iv.    *Texas's need for a coherent policy regulating utility rates is evident in PURA.*

129.    Texas operates a wholly intrastate electricity grid and market, which are overseen by ERCOT. *See* Complaint ¶ 28. As discussed above, PURA was enacted to protect the public interest inherent in the rates and services of public utilities, and to regulate the State of Texas's electric, telecommunication, and water and sewer utilities by establishing a "comprehensive and adequate regulatory system for electric utilities." TEX. UTIL. CODE § 31.001(a). The Legislature "intended PURA to be the exclusive means of regulating electric utilities in Texas." *In re Entergy Corp.*, 142 S.W. at 232. The State of Texas created an entirely legislative scheme to ensure a coherent regulatory system for electric utilities.

130.    Texas' strong need for coherent regulation of its electric utilities market strongly favors abstention under *Burford*.

    v.    *Texas has designated special bodies for judicial review of the ERCOT Invoices and the Orders.*

131.    In *Burford*, the Supreme Court focused on the fact that "[t]o prevent the confusion of multiple review of the same general issues," the Texas Legislature had "provided for

47

concentration of all direct review of the [Railroad] Commission's orders in the state district courts of Travis County." 319 U.S. at 326. In *Wilson*, the Fifth Circuit focused on a state constitutional provision "centraliz[ing] appeals in the state district court in the state capital." 8 F.3d at 316.

132.     As set forth in more detail in Section III(E) above, the Plaintiffs have the power to seek the PUCT's review of any determination made by ERCOT in connection with their dispute of the ERCOT Invoices. TEX. UTIL. CODE § 39.151(d-4)(6); 16 TEX. ADMIN. CODE § 22.251. PURA provides the PUCT with original jurisdiction over those disputes. *See* TEX. UTIL. CODE § 32.001(a); *see also* 16 TEX. ADMIN. CODE § 22.251(c) (requiring exhaustion of ADR remedy). Further, if the Plaintiffs are dissatisfied with the PUCT's ruling, that ruling can be appealed exclusively to the Travis County district court. *See* TEX. GOV'T CODE § 2001.176(b)(1); TEX. UTIL. CODE §§ 11.007(a), 15.001.

133.     As set forth in more detail in Section III(F) above, based on the Plaintiffs' disputed characterization of the Orders as "rules," the Plaintiffs can seek a declaratory judgment regarding the validity or applicability of the Orders only in Travis County District Court, *see* TEX. GOV'T CODE § 2001.176(b)(1), § 2001.038; TEX. UTIL. CODE §§ 11.007(a), 15.001-.002, or to challenge the Orders as "competition rules" only in the Texas Third Court of Appeals. *See* TEX. UTIL. CODE § 39.001(e); TEX. GOV'T CODE § 2001.176(b)(1), § 2001.038; TEX. UTIL. CODE §§ 11.007(a), 15.001-.002.

134.     Given the requirements under Texas law that either the PUCT, the Travis County district court or the Texas Third Court of Appeals (as applicable) hear challenges to the ERCOT Invoices and the Orders, this factor strongly favors abstention under *Burford*.

135.    Each of the *Burford* factors weights strongly in favor of abstention. Accordingly, if the Court denies the PUCT's request to dismiss the Complaint, the Court should abstain from adjudicating the causes of action in the Complaint.

## VI.    <u>RELIEF REQUESTED</u>

136.    WHEREFORE, the PUCT requests that this Court (i) dismiss the Complaint in its entirety with prejudice or, alternatively, abstain from consideration of the Complaint, and (ii) grant the PUCT such other and further relief, whether in law or in equity, to which the PUCT may be justly entitled.

Dated:  January 10, 2022              Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN E. COWLES
Deputy Attorney General for Civil Litigation

SEAN O'NEILL
Assistant Attorney General
Deputy Chief, Bankruptcy & Collections Division

*/s/ Autumn D. Highsmith*
JASON B. BINFORD
Texas State Bar No. 24045499
S. Dist. Bar No. 574720
LAYLA D. MILLIGAN
Texas State Bar No. 24026015
S. Dist. Bar No. 38000
AUTUMN D. HIGHSMITH
Texas State Bar No. 24048806
S. Dist. Bar No. 597383
Office of the Attorney General of Texas
Bankruptcy & Collections Division
P. O. Box 12548 MC008
Austin, Texas 78711-2548
Telephone: (512) 463-2173
Facsimile: (512) 936-1409
jason.binford@oag.texas.gov
layla.milligan@oag.texas.gov
autumn.highsmith@oag.texas.gov

**ATTORNEYS FOR THE PUBLIC UTILITY
COMMISSION OF TEXAS**

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing has been served via the Court's Electronic Filing System on all parties requesting notice in this proceeding on January 10, 2022.

*/s/ Autumn D. Highsmith*
AUTUMN D. HIGHSMITH
Assistant Attorney General
