**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>JUST ENERGY GROUP INC., *et al.*,<br><br>Debtors in a Foreign Proceeding.[1] | Chapter 15<br><br>Case No. 21-30823 (MI) |
| JUST ENERGY TEXAS LP, FULCRUM RETAIL ENERGY LLC, HUDSON ENERGY SERVICES LLC, and JUST ENERGY GROUP, INC.,<br><br>                Plaintiffs,<br><br>    v.<br><br>ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC. and the PUBLIC UTILITY COMMISSION OF TEXAS, INC.,<br><br>                Defendants. | Adv. Proc. No. 21-4399 |

**ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC.'S**
**<u>MOTION TO DISMISS AND FOR ABSTENTION</u>**

---

[1] The identifying four digits of Just Energy Group Inc.'s local Canada tax identification number are 0469. A complete list of debtor entities in these chapter 15 cases may be obtained at www.omniagentsolutions.com/justenergy.

# TABLE OF CONTENTS

I.      SUMMARY OF ARGUMENT ............................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................... 2

        A.   The State of Texas established a comprehensive regulatory scheme governing the
             electric industry. ............................................................................................ 2

        B.   ERCOT complied with PUCT Orders issued during Winter Storm Uri ...................... 4

        C.   Just Energy files for bankruptcy in Canada. ................................................ 6

III.    LEGAL STANDARDS ....................................................................................... 8

        A.   Federal Rule of Civil Procedure 12(b)(6) ................................................... 8

        B.   *Burford* Abstention ...................................................................................... 9

IV.     ARGUMENTS AND AUTHORITIES ............................................................... 10

        A.   Counts 1, 2, 3, 4, and 5 should be dismissed because they fail to state plausible
             claims. ........................................................................................................ 10

             1.   Count 1 should be dismissed because Just Energy's pleadings demonstrate the
                  claim fails as a matter of law. .............................................................. 10

             2.   Count 2 should be dismissed because § 502 is inapplicable in Chapter 15 cases
                  and because Just Energy has not pleaded sufficient facts demonstrating that
                  ERCOT has filed an informal proof of claim. ....................................... 12

             3.   Count 3 should be dismissed because Just Energy fails to state a claim for
                  turnover relief. ..................................................................................... 13

             4.   Count 4 should be dismissed because §§ 553 and 558 are inapplicable and Just
                  Energy fails to state a claim in any event. ............................................ 14

             5.   Count 5 should be dismissed because Just Energy has not pleaded sufficient facts
                  under Rule 8 to give ERCOT notice of what it is to defend. .................. 15

        B.   This Court should abstain from deciding Just Energy's state-law claims under
             *Burford v. Sun Oil Co*. .................................................................................. 16

             1.   Just Energy's pricing claims implicate Texas's comprehensive regulatory scheme
                  governing electric utilities. ................................................................... 16

             2.   This Court should abstain to avoid interfering with Texas's electric-regulatory
                  regime. .................................................................................................. 17

        C.   The Complaint should be dismissed because ERCOT is immune from suit. .............. 23

             1.   ERCOT is entitled to Eleventh Amendment immunity. ........................... 23

             2.   ERCOT's immunity has not been waived. ............................................. 27

V.      CONCLUSION ................................................................................................ 32

i

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................8

*In re ATP Oil & Gas Corp.*,
   2015 Bankr. LEXIS 781 (Bankr. S.D. Tex. Mar. 10, 2015)....................................14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................8, 15

*Bennett v. Schmidt*,
   153 F.3d 516 (7th Cir. 1998) ...........................................................................9, 11

*BP Chems., Inc. v. AEP Tex. Cent. Co.*,
   198 S.W.3d 449 (Tex. App.—Corpus Christi 2006, no pet.) ..................................3

*In re British Am. Ins. Co.*,
   488 B.R. 205 (Bankr. S.D. Fla. 2013)..............................................................12, 29

*Burford v. Sun Oil Co.*,
   319 U.S. 315 (1943)........................................................................................ *passim*

*Central Virginia Community College v. Katz*,
   546 U.S. 356 (2006)..........................................................................28, 29, 30, 31

*Chapa v. DOJ*,
   339 F.3d 388 (5th Cir. 2003) ...............................................................................23

*In re Cirillo*,
   Nos. 09-10324, 13-01002, 2014 Bankr. LEXIS 1353 (Bankr. S.D. Tex. Apr. 3,
   2014) .....................................................................................................................8

*City of Fort Worth v. Gulf Refin. Co.*,
   83 S.W.2d 610 (Tex. 1935).................................................................................25

*Collins v. Morgan Stanley Dean Witter*,
   224 F.3d 496 (5th Cir. 2000) ......................................................................4, 6, 9

*Colo. River Water Conservation Dist. v. United States*,
   424 U.S. 800 (1976).....................................................................................9, 10, 17

*In re Condor Ins. Ltd.*,
   601 F.3d 319 (5th Cir. 2010) .........................................................................12, 29

*Daniel v. Univ. of Tex. Sw. Med. Ctr.*,
   960 F.3d 253 (5th Cir. 2020) .....................................................................24, 26, 27

*Doyle v. Nationstar Mortg., LLC*,
No. H-20-3633, 2021 U.S. Dist. LEXIS 112681 (S.D. Tex. June 16, 2021)............................9

*In re Entergy Corp.*,
142 S.W.3d 316 (Tex. 2004)..................................................................................................20

*ERCOT v. CPS Energy*,
--- S.W.3d ---, No. 04-21-00242-CV, 2021 Tex. App. LEXIS 9842 (Tex.
App.—San Antonio Dec. 13, 2021, n.p.h.).......................................................................22, 24

*In re ERCOT*,
552 S.W.3d 297 (Tex. App.—Dallas 2018, orig. proceeding), *mand. denied*,
619 S.W.3d 628 (Tex. 2021)........................................................................................23, 24, 25

*Exelon Generation Co. v. PUC*,
No. D-1-GN-21-001772 (Tex. Dist. Ct., Travis Cnty. filed Apr. 19, 2021)...............19, 20, 22

*In re Expo Constr. Grp., LLC*,
630 B.R. 289 (Bankr. S.D. Tex. 2021) ..................................................................................13

*In re Fernandez*,
123 F.3d 241 (5th Cir. 1997) ................................................................................................31

*In re Fontainebleau Las Vegas Holdings, LLC*,
417 B.R. 651 (S.D. Fla. 2009), *aff'd sub nom.*, *Ave CLO Fund Ltd. v. Bank of
Am. N.A.*, 709 F.3d 1072 (11th Cir. 2013) ............................................................................13

*In re Galaz*,
480 F. App'x 790 (5th Cir. 2012) (per curiam) ....................................................................15

*Gardner v. New Jersey*,
329 U.S. 565 (1947).............................................................................................................30

*GE Cap. Corp. v. Posey*,
415 F.3d 391 (5th Cir. 2005) ............................................................................................9, 11

*H. Rouw Co. v. Texas Citrus Comm'n*,
247 S.W.2d 231 (Tex. 1952)................................................................................................25

*Harrison v. Sterry*,
9 U.S. 289 (1809).................................................................................................................29

*Heston v. Austin Indep. Sch. Dist.*,
816 F. App'x 977 (5th Cir. 2020) .........................................................................................16

*Highland Cap. Mgmt. v. Highland Cap. Fund Advisors, L.P.*,
2021 Bankr. LEXIS 1821 (Bankr. N.D. Tex. July 8, 2021) ..................................................18

*Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*,
    892 F.3d 719 (5th Cir. 2018) ....................................................................................16

*In re Internationale Resort & Beach Club*,
    36 B.R. 189 (Bankr. D.S.C. 1983) ............................................................................10

*In re Just Energy*,
    No. CV-21-00658423-00CL, 2021 O.N.S.C. (Can. Ont. Sup. Ct. J. 2021)...........................11

*In re Katrina Canal Breaches Lit.*,
    495 F.3d 191 (5th Cir. 2007) ......................................................................................9

*Kaye v. Lone Star Fund v. (U.S.), L.P.*,
    453 B.R. 645 (N.D. Tex. 2011) ....................................................................................9

*United States ex rel. King v. Univ. of Tex. Health Sci. Ctr.—Hous.*,
    544 F. App'x 490 (5th Cir. 2013) (per curiam) ......................................................27

*Koerner v. Garden Dist. Ass'n*,
    78 F. App'x 960 (5th Cir. 2003) ...............................................................................18

*Lormand v. U.S. Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009) ......................................................................................9

*Lovick v. Ritemoney Ltd.*,
    378 F.3d 433 (5th Cir. 2004) ..............................................................................15, 16

*Luminant Energy Co. v. PUC*,
    No. 03-21-00098-CV (Tex. App.—Austin filed March 2, 2021) ...............................19, 20, 22

*In re Mugica*,
    362 B.R. 782 (Bankr. S.D. Tex. 2007) (Isgur, J.) ..................................................16

*In re N.Y.C. Off-Track Betting Corp.*,
    434 B.R. 131 (Bankr. S.D.N.Y. 2010) ......................................................................10

*In re Nikoloutsos*,
    199 F.3d 233 (5th Cir. 2000) ....................................................................................13

*Norris v. Hearst Tr.*,
    500 F.3d 454 (5th Cir. 2007) ......................................................................................9

*Perez v. Region 20 Educ. Serv. Ctr.*,
    307 F.3d 318 (5th Cir. 2002) ....................................................................................32

*Port Auth. Trans-Hudson Corp. v. Feeney*,
    495 U.S. 299 (1990).................................................................................................32

*PUC v. Constellation Energy Commodities Grp., LLC.*,
    351 S.W.3d 588 (Tex. App.—Austin 2011, pet. denied) ......................................................... 3

*Quackenbush v. Allstate Ins. Co.*,
    517 U.S. 706 (1996) ................................................................................................ 10, 18

*In re Reliance Grp. Holdings, Inc.*,
    273 B.R. 374 (Bankr. E.D. Pa 2002) ................................................................................ 10

*In re Republic Reader's Serv., Inc.*,
    81 B.R. 422 (Bankr. S.D. Tex. 1986) ............................................................................... 10

*In re Shipley Garcia Enters. LLC*,
    Nos. 11-20016, 13-02012, 2014 Bankr. LEXIS 1296 (Bankr. S.D. Tex. Mar.
    28, 2014) ............................................................................................................... 8

*Sierra Club v. City of San Antonio*,
    112 F.3d 789 (5th Cir. 1997) ................................................................................... 18, 21

*Southwestern Bell Tel. Co. v. City of El Paso*,
    243 F.3d 936 (5th Cir. 2001) .......................................................................................... 24

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002) ................................................................................................... 15

*Tenn. Student Assistance Corp. v. Hood*,
    541 U.S. 440 (2004) ............................................................................................... 28, 30

*Tex. Logos. L.P. v. Tex. Dep't of Transp.*,
    241 S.W.3d 105 (Tex. App.—Austin 2007, no pet.) ............................................................. 31

*U.S. v. Inslaw, Inc.*,
    932 F.2d 1467 (D.C. Cir. 1991) ...................................................................................... 14

*Williams v. Dallas Area Rapid Transit*,
    242 F.3d 315 (5th Cir. 2001) ..................................................................................... 24, 27

*Wilson v. Valley Elec. Membership Corp.*,
    8 F.3d 311 (5th Cir. 1993) ................................................................................... *passim*

*In re Wood*,
    825 F.2d 90 (5th Cir. 1987) ........................................................................................... 16

**Statutes**

11 U.S.C. § 103(a) .................................................................................... 12, 14, 28, 31

11 U.S.C § 106 ....................................................................................... 27, 30, 31

11 U.S.C. § 304 ........................................................................................................30

11 U.S.C. § 502 .......................................................................................................1, 12

11 U.S.C. § 542 ................................................................................................13, 14, 18

11 U.S.C. § 549 ........................................................................................................10

11 U.S.C. § 727 ........................................................................................................28

11 U.S.C. § 1141(d)(1)(A) ............................................................................................28

11 U.S.C. § 1192 ......................................................................................................28

11 U.S.C. § 1328 ......................................................................................................28

11 U.S.C. § 1520(a)(2) ...............................................................................................10

TEX. GOV'T CODE §§ 418.301–.310 ..............................................................................25

TEX. GOV'T CODE § 2001.038(b) ..................................................................................32

TEX. GOV'T CODE § 2001.176(b)(1) ..............................................................................22

TEX. UTIL. CODE § 11.007(a) ......................................................................................22

TEX. UTIL. CODE § 15.001 ..........................................................................................22

TEX. UTIL. CODE § 31.001(a) ...............................................................................2, 18, 20

TEX. UTIL. CODE § 38.201 ..........................................................................................25

TEX. UTIL. CODE § 38.202(d) .......................................................................................26

TEX. UTIL. CODE § 38.203 ..........................................................................................25

TEX. UTIL. CODE § 39.001(e) .......................................................................................22

TEX. UTIL. CODE § 39.151 ..................................................................................... *passim*

TEX. UTIL. CODE § 39.917(g) .......................................................................................26

TEX. UTIL. CODE § 39.1511 .........................................................................................24

TEX. UTIL. CODE § 39.1512 .........................................................................................24

TEX. UTIL. CODE § 39.1513 .........................................................................................24

TEX. UTIL. CODE § 39.1515(c) ......................................................................................25

TEX. UTIL. CODE § 39.1516(c) ...................................................................................25

TEX. WATER CODE § 16.055 .......................................................................................25

**Other Authorities**

16 TEX. ADMIN. CODE § 25.364(g) .............................................................................27

16 TEX. ADMIN. CODE § 25.501(a) ..........................................................................3, 5

16 TEX. ADMIN. CODE § 25.505 ...............................................................................4, 5

36 Tex. Reg. 1817 ........................................................................................................3

36 Tex. Reg. 1818 ........................................................................................................3

FED. R. CIV. P. 8 ........................................................................................................15

FED. R. CIV. P. 12(b)(6) ...........................................................................................2, 8

Pursuant to Federal Rule of Civil Procedure 12, as applied by Federal Rule of Bankruptcy Procedure 7012, Defendant Electric Reliability Council of Texas, Inc. ("ERCOT") moves to dismiss Plaintiffs Just Energy Texas LP, Fulcrum Retail Energy LLC, Hudson Energy Services LLC, and Just Energy Group, Inc.'s (collectively, "Just Energy") Complaint [ECF No. 1] (the "Complaint") and for abstention.

## I.    SUMMARY OF ARGUMENT

1.    Each count of Just Energy's Complaint fails to state a plausible claim for relief. First, Just Energy fails to state a claim for avoidance—Count 1—because Just Energy's own pleadings demonstrate this count fails as a matter of law. Indeed, Just Energy alleges the transfers at issue should be avoided because the Court did not authorize them. That is not true. Just Energy cites in its Complaint the very order that authorizes the transfers, and reliance on the reservation of Just Energy's rights to be refunded later does not render the transfers unauthorized under the Bankruptcy Code.

2.    Second, Just Energy fails to state a claim for disallowance—Count 2—for two reasons. There is no claims process in Chapter 15 cases because there is no estate. Accordingly, 11 U.S.C. § 502 is not applicable in Chapter 15 cases. In any event, Just Energy has not adequately alleged that ERCOT filed an informal proof of claim.

3.    Third, Just Energy fails to state claims for turnover and setoff—Counts 3 and 4—because each of these are forms of relief to which Just Energy has not demonstrated it is entitled. As a matter of law, Just Energy cannot use the turnover provisions to liquidate contract disputes. These counts are therefore implausible. Furthermore, Count 4, like Count 2, requires there be a claims process and an estate, neither of which exist in a Chapter 15 case.

4.      Fourth, Just Energy's claim under the Canadian Creditors Arrangement Agreement ("CCAA")—Count 5—fails to give ERCOT fair notice of what it is to defend. Therefore, this Count does not show that Just Energy is entitled to relief under the CCAA.

5.      If the Court does not dismiss Just Energy's claims under Rule 12(b)(6), it should abstain from deciding Just Energy's pricing claims pursuant to the United States Supreme Court's decision in *Burford v. Sun Oil Co.* To decide Just Energy's claims, this Court would have to determine the validity and applicability of the PUCT Orders, the propriety of ERCOT's interpretation and implementation of the PUCT Orders, and a variety of other issues under Texas's comprehensive and complicated regulatory scheme for electric utilities. To ensure consistency, these issues are committed to decision by specific Texas courts or by the PUCT. Any decision by this Court would necessarily impact other market participants that are not parties to this adversary proceeding.

6.      In addition, Just Energy's claims should be dismissed as to ERCOT because ERCOT is immune from suit.

7.      Just Energy's Complaint should be dismissed in its entirety.

## II.      FACTUAL BACKGROUND

**A.      The State of Texas established a comprehensive regulatory scheme governing the electric industry.**

8.      Texas's Public Utility Regulatory Act ("PURA") "establish[ed] a comprehensive and adequate regulatory system for electric utilities."[2] Because Texas has a uniquely intrastate electricity grid, the Legislature decided that an "essential organization" was necessary to operate

---

[2] TEX. UTIL. CODE § 31.001(a).

the grid and regulate the wholesale energy market that serves it. The PUCT certified ERCOT to fill this role.[3]

9.     ERCOT's rules, known as "protocols" (the "Protocols"), "provide the framework for the administration of the Texas electricity market."[4] They have the force and effect of Texas statutes.[5] Market participants, including Just Energy, must obey ERCOT's Protocols or face administrative penalties.[6] ERCOT's Protocols also require market participants to execute a Standard Form Market Participant Agreement ("SFA"), the terms of which are defined by the Protocols.[7]

10.     The PUCT rules require ERCOT to "determine the market clearing prices of energy and other ancillary services"—"[e]xcept as otherwise directed by the [PUCT]."[8] ERCOT does this by acting as a market clearinghouse: "the central counterparty for all transactions settled by ERCOT," and "the sole buyer to each seller, and the sole seller to each buyer, of all energy."[9] ERCOT's role in this regard is non-commercial—it generates no profits.[10]

---

[3] *See id.* § 39.151(b).

[4] *BP Chems., Inc. v. AEP Tex. Cent. Co.*, 198 S.W.3d 449, 452 (Tex. App.—Corpus Christi 2006, no pet.).

[5] *See PUC v. Constellation Energy Commodities Grp., LLC.*, 351 S.W.3d 588, 594–95 (Tex. App.—Austin 2011, pet. denied).

[6] *See* TEX. UTIL. CODE § 39.151(j).

[7] ERCOT Protocols § 22A; Compl. ¶ 5 (noting that Just Energy is subject to the SFA).

[8] 16 TEX. ADMIN. CODE § 25.501(a) (emphasis added).

[9] ERCOT Protocols § 1.2(4).

[10] 36 Tex. Reg. 1817, 1818 ("ERCOT does not perform commercial functions."); Internal Revenue Service, Opinion Letter at 1–2, 4–5 (May 11, 2012), *available at* https://www.irs.gov/pub/irs-wd/1219031.pdf.

**B.       ERCOT complied with PUCT Orders issued during Winter Storm Uri.**

11.      Just Energy alleges that ERCOT violated the Protocols and the SFA by charging

$9,000/MWh for electricity during the winter storm in February 2021 ("Winter Storm Uri" or "the

Storm").[11]

12.      During Winter Storm Uri, the demand for electricity overwhelmed available

supply, pushing Texas's power grid to a new winter peak demand record, topping 69,000

megawatts.[12] On February 15, 2021, ERCOT entered Emergency Energy Alert Level 3 ("EEA3")

and directed that transmission operators substantially curtail load.[13] Nevertheless, the system

ERCOT uses to set prices kept the clearing price for energy below the high system-wide offer cap

("HCAP"), which the PUCT had by rule set at $9,000/MWh.[14]

13.      On February 15 and 16, 2021, the PUCT issued orders (the "PUCT Orders") finding

this discrepancy "inconsistent with the fundamental design of the ERCOT market,"[15] which

depends on a scarcity-pricing mechanism.[16] Because "scarcity [was] at its maximum," "the market

---

[11] *See* Compl. ¶¶ 37–38, 61–62.

[12] *See id.* ¶ 34.

[13] *Id.* at ¶ 35.

[14] *See* Order Directing ERCOT to Take Action and Granting Exception to Commission Rules ("PUCT 2/15/21 Order") at 1, a*vailable at* http://interchange.puc.texas.gov/Documents/51617_3_1111656.PDF. A copy of that order is attached as Exhibit 1; Second Order Directing ERCOT To Take Action And Granting Exception To Commission Rules ("PUCT 2/16/21 Order") at 1, *available at* https://interchange.puc.texas.gov/Documents/51617_4_1111709.PDF. A copy of that order is attached as Exhibit 2. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (a court can consider documents a defendant attaches to a motion to dismiss if they are "referred to in the plaintiff's complaint and are central to her claim" (citation omitted)).

[15] PUCT 2/15/21 Order at 1; PUCT 2/16/21 Order at 1.

[16] 16 TEX. ADMIN. CODE § 25.505(a).

price for the energy . . . should also [have been] at its highest."[17] The PUCT thus *ordered* ERCOT to adjust "ERCOT prices to ensure they accurately reflect the scarcity conditions in the market" by "ensur[ing] that firm load that is being shed in EEA3 is accounted for in ERCOT's scarcity pricing signals."[18] As PURA requires,[19] ERCOT complied with the PUCT Orders and pegged the price of electricity at $9,000/MWh until ERCOT exited EEA3 on the morning of February 19, 2021.[20]

14.     The Protocols require ERCOT to administer the system-wide offer cap and scarcity pricing mechanism in accordance with PUCT rules[21]—including the rules that allow the PUCT to "otherwise direct" ERCOT to set the price of energy and allow the PUCT to take action inconsistent with the scarcity pricing mechanism protocols to protect the public interest.[22]

15.     ERCOT's obligation to obey the PUCT Orders is also addressed in Section 11(L) of the SFA between Just Energy and ERCOT:

> *This Agreement is subject to applicable federal, state, and local* laws, ordinances, *rules, regulations, order of any Governmental Authority* and tariffs. Nothing in this Agreement may be construed as a waiver of any right to question or contest any federal, state and local law, ordinance, rule, regulation, order of any Governmental Authority or tariff. *In the event of a conflict between this Agreement and an applicable federal, state, and local* law, ordinance, *rule, regulation, order of an Governmental Authority* or tariff, *the applicable federal, state, and local* law, ordinance, *rule, regulation, order of any Governmental Authority* or tariff *shall prevail*, provided that Participant shall give notice to ERCOT of any such conflict

---

[17] PUCT 2/15/21 Order at 1; PUCT 2/16/21 Order at 1.

[18] PUCT 2/15/21 Order at 2; PUCT 2/16/21 Order at 2; Compl. ¶ 37.

[19] TEX. UTIL. CODE §§ 39.151(d), (d-4)(5); 16 TEX. ADMIN. CODE § 25.501(a).

[20] Compl. ¶¶ 37, 79.

[21] ERCOT Protocols § 4.4.11(1) ("The SWCAP shall be determined in accordance with the Public Utility Commission of Texas (PUCT) Substantive Rules.") and § 4.4.11.1(1) ("ERCOT shall operate the scarcity pricing mechanism in accordance with the PUCT Substantive Rules.").

[22] 16 TEX. ADMIN. CODE §§ 25.501(a) and 25.505(h).

affecting Participant. In the event of a conflict between ERCOT Protocols and this Agreement, the provisions expressly set forth in this Agreement shall control.[23]

16.     The PUCT is a "Governmental Authority" as defined by the Protocols,[24] because it exercises "complete authority" over ERCOT.[25]

**C.     Just Energy files for bankruptcy in Canada.**

17.     ERCOT invoiced Just Energy approximately $335 million for the energy it purchased between February 13 and February 20, 2021.[26] "Just Energy disputes no less than $274 million of these invoiced amounts."[27]

18.     Before commencing the Canadian bankruptcy proceeding and its Chapter 15 case, Just Energy began to "pursu[e] its administrative remedies" by disputing ERCOT's storm-related invoices with the PUCT and with ERCOT.[28]

19.     On March 9, 2021, Just Energy commenced Canadian bankruptcy proceedings. The Canadian court approved a $125 million financing facility "and *authorized the payment* of the disputed invoices" (the "Canadian Order").[29] The same day, Just Energy filed a petition in this

---

[23] SFA § 11(L) (emphasis added). A copy of ERCOT's and Just Energy's SFA is attached as Exhibit 3. Though the SFA is not attached to the complaint, Just Energy relies upon it. *Collins*, 224 F.3d at 498–99.

[24] ERCOT Protocols § 2 (defining Governmental Authority as "[a]ny federal, state, local, or municipal body having jurisdiction over a Market Participant or ERCOT"). Relevant portions of the Protocols in effect in February 2021 are available at https://www.ercot.com/files/docs/2021/08/18/February_1__2021_Nodal_Protocols.pdf.

[25] TEX. UTIL. CODE § 39.151(d).

[26] Compl. ¶ 56.

[27] *Id.*

[28] *Id.* ¶ 55; Dkt. 19 at 7 n.10; Order Granting Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code [Bankr. Dkt. 23] at 14–20.

[29] Compl. ¶ 57 (emphasis added).

Court under Chapter 15 seeking recognition of the foreign proceedings.[30] Also, on March 9, 2021, Just Energy filed a motion seeking, on an emergency basis, this Court's approval of certain provisional relief, including approval of DIP financing to allow Just Energy "to continue making all payments to ERCOT and other critical parties."[31] At the first-day hearing on March 9, 2021, Just Energy's counsel asked this Court to authorize the payment to ERCOT:

> The Court:  Well, the Canadian court approved the DIP.  What do I need to do?
>
> Mr. Schartz:  Correct.  We're asking Your Honor to recognize it on a provisional basis under 1519.
>
> The Court:  Yeah.  But do I need to authorize this payment to ERCOT?
>
> Mr. Schartz:  *We are asking you to authorize payment to ERCOT, yes*.  Because if you approve, if you recognize the Canadian order for the limited purpose that we're asking you to, that recognition includes the Canadian order's approval of making the payment to ERCOT.[32]

20.     While this Court expressed its reservations about approving such a large payment to ERCOT, it ultimately approved the payment when it authorized Just Energy "to comply with the terms, conditions, and provisions of the CCAA Order including, without limitation, the sections of the CCAA Order (a) authorizing [Just Energy] to obtain credit under the DIP Facility in the amount of up to USD $125 million and … authoriz[ing] [Just Energy] to enter into, perform and borrow under the DIP Facility" and formally recognized the Canadian Court's order.[33] Just Energy, having received this Court's authorization to do so, then paid ERCOT (the "Transfers").[34]

---

[30] Petition [Bankr. Dkt. 1].

[31] Emergency Mot. for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code [Bankr. Dkt. 16] at 8.

[32] First-Day Hearing Tr. [Bankr. Dkt. 35] at 20 (emphasis added).

[33] Order Granting Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code [Bankr. Dkt. 23] at 4.

[34] *See* Compl. ¶ 59.

### III.   LEGAL STANDARDS

**A.   Federal Rule of Civil Procedure 12(b)(6)**

21.     "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[35] A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged."[36] "Only a complaint that states a plausible claim for relief survives a motion to dismiss."[37] While detailed factual allegations are not required, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[38] "Naked assertions devoid of further factual enhancement" that are "merely consistent with a defendant's liability" are not sufficient to survive a motion to dismiss.[39] Moreover, a plaintiff's conclusory allegations are "not entitled to the assumption of truth," and therefore a court may look past such conclusory allegations in order to examine the pleaded facts and determine their adequacy.[40]

22.     In assessing a motion to dismiss, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to

---

[35] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)).

[36] *Id*.

[37] *Cirillo v. Valley Baptist Health Sys. (In re Cirillo)*, Nos. 09-10324, 13-01002, 2014 Bankr. LEXIS 1353, at *22 (Bankr. S.D. Tex. Apr. 3, 2014) (citing *Twombly*, 550 U.S. at 556).

[38] *Twombly*, 550 U.S. at 555.

[39] *Shipley Garcia Enters., LLC v. Harley-Davidson Motor Co. (In re Shipley Garcia Enters. LLC)*, Nos. 11-20016, 13-02012, 2014 Bankr. LEXIS 1296, at *15 (Bankr. S.D. Tex. Mar. 28, 2014) (quoting *Twombly*, 550 U.S. at 557).

[40] *Id*. (quoting *Iqbal*, 556 U.S. at 678-79).

dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[41]

23.      If a plaintiff mentions a document in its complaint and the document is central to its claim, it is considered part of the pleadings.[42] "Although the Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claim, pertinent case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims."[43] A complaint fails if the allegations or the documents attached demonstrate that the plaintiff cannot recover.[44]

**B.**     ***Burford* Abstention**

24.      Abstention is appropriate when a case presents "difficult questions of state law bearing on policy problems of substantial public import" that transcends the case or where the "federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."[45]

---

[41] *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 251 (5th Cir. 2009); *see Norris v. Hearst Tr.*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007) (stating "it is clearly proper in deciding a 12(b)(6) motion, to take judicial notice of matters of public record").

[42] *In re Katrina Canal Breaches Lit.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

[43] *Doyle v. Nationstar Mortg., LLC,* No. H-20-3633, 2021 U.S. Dist. LEXIS 112681, at *5 (S.D. Tex. June 16, 2021) (quoting *Kaye v. Lone Star Fund v. (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011)).

[44] *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998); *GE Cap. Corp. v. Posey*, 415 F.3d 391, 398 n.8 (5th Cir. 2005).

[45] *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976); *see also Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

25.     *Burford* applies in all federal courts[46]—including, necessarily, bankruptcy courts.[47]

Indeed, contrary to a district court's "virtually unflagging obligation" to exercise jurisdiction[48]—

to which *Burford* is a narrow exception—Congress requires abstention to "play a far more

significant role" in bankruptcy courts than it does in district courts.[49]

## IV.     ARGUMENTS AND AUTHORITIES

**A.     Counts 1, 2, 3, 4, and 5 should be dismissed because they fail to state plausible
claims.**

    **1.     Count 1 should be dismissed because Just Energy's pleadings demonstrate
the claim fails as a matter of law.**

26.     Just Energy alleges that the "post-petition Transfers" should be avoided under 11

U.S.C. § 549 because this Court did not authorize them. But as Just Energy itself pleads, and as

the record shows, this Court not only authorized the "post-petition Transfers," it also gave full

faith and credit to a Canadian Court order doing the same. Count 1 should therefore be dismissed.

27.     A foreign representative may, after recognition of a foreign main proceeding, avoid

a transfer of the debtor's property "that occurs after the commencement of the case" and "is not

authorized under this title or by the court."[50] Just Energy concedes that the Transfers were

authorized: this Court "recognize[d]" Just Energy's "authority to make payments to ERCOT as

granted by the Final CCAA Order," and this Court "neither add[ed] *nor subtract*[*ed*] from any

---

[46] *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996).

[47] *E.g.*, *Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311 (5th Cir. 1993) (affirming abstention
on *Burford* grounds); *In re N.Y.C. Off-Track Betting Corp.*, 434 B.R. 131, 154 (Bankr. S.D.N.Y.
2010) (abstaining on *Burford* grounds); *accord Koken v. Reliance Grp. Holdings, Inc. (In re
Reliance Grp. Holdings, Inc.)*, 273 B.R. 374, 401 (Bankr. E.D. Pa 2002); *In re Internationale
Resort & Beach Club*, 36 B.R. 189, 194 (Bankr. D.S.C. 1983).

[48] *Colo. River*, 424 U.S. at 817.

[49] *In re Republic Reader's Serv., Inc.*, 81 B.R. 422, 425 (Bankr. S.D. Tex. 1986).

[50] 11 U.S.C. §§ 549(a), 1520(a)(2).

such authorization."[51] Thus, both this Court and the Canadian Court, in an order this Court adopted, expressly authorized the post-petition Transfers. Count 1 fails.[52]

28.     It is of no moment that "[b]oth the provisional and final recognition orders say '[a]ny payments made to ERCOT are made subject to all of the Debtors' rights to contest those payments, and all rights to receive a refund or credit as allowed by applicable law.'"[53] This reservation refers to Just Energy's intention, stated on the record during a hearing before this Court, to challenge ERCOT's invoices in administrative proceedings before ERCOT and the PUCT. Moreover, this reservation does not retroactively render the Transfers unauthorized. Just Energy beseeched this Court to authorize the Transfers—as the Canadian court had—on an expedited basis precisely so it could pursue these administrative remedies without being removed from the market and having its customers transferred to a provider of last resort.[54]

29.     Because Just Energy's Complaint conclusively establishes that this Court and the Canadian Court authorized the post-petition Transfers, Count 1 fails as a matter of law.

---

[51] Compl. ¶ 89 (emphasis added) (quoting Order Granting Petition for Recognition [Bankr. Dkt. 82] ¶ 30).

[52] *Bennett*, 153 F.3d at 519 ("Litigants may plead themselves out of court by alleging facts that establish defendants' entitlement to prevail."); *Posey*, 415 F.3d at 398 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1327, at 766 (1990) ("A plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment.").

[53] Compl. ¶ 89.

[54] Responding to the Court's concern that the Transfers would be irrevocable, *Just Energy* explained that it had already initiated a process under ERCOT's Protocols to dispute ERCOT's invoices. First-Day Hrg. Tr. at 18, 29–32. Similarly, the reason the Canadian Court authorized the DIP financing and Transfers was to ensure that Just Energy could pay ERCOT and utilize these administrative avenues to challenge its bills. *See In re Just Energy*, No. CV-21-00658423-00CL, 2021 O.N.S.C. 1793, ¶¶ 19, 68, 82 (Can. Ont. Sup. Ct. J. 2021) (explaining the Canadian Court's reasoning for granting the March 9, 2021, Initial Order), *available at* http://cfcanada.fticonsulting.com/justenergy/docs/Just%20Energy%20reasons%2020210309.pdf.

**2.    Count 2 should be dismissed because § 502 is inapplicable in Chapter 15 cases and because Just Energy has not pleaded sufficient facts demonstrating that ERCOT has filed an informal proof of claim.**

30.    Just Energy seeks disallowance of a purported "informal proof of claim" brought by ERCOT.[55] But this claim should be dismissed because § 502 does not apply in this Chapter 15 case and because Just Energy has not pleaded that ERCOT filed an informal proof of claim.

31.    First, there is no mechanism for filing and allowing or disallowing claims in a Chapter 15 case. Chapter 5 of the Bankruptcy Code—entitled "Creditors, the Debtor, and the Estate"—is mostly inapplicable in Chapter 15 cases.[56] This includes § 501, allowing for the filing of claims, and § 502 allowing for the disallowance of filed claims.[57] The lack of a claims process reflects the fact that Chapter 15 cases are ancillary to foreign proceedings and do not create an estate against which claims may be filed or whose debts may be discharged.[58] As Just Energy put it, "any and all claims of any kind [a creditor] may have against Just Energy or any of its affiliates must be . . . filed in the CCAA Proceeding (*not in these chapter 15 proceedings*)".[59] Because there can be no proof of claim, let alone an informal proof of claim, for this Court to disallow, Count 2 should be dismissed.

---

[55] Compl. ¶ 96.

[56] 11 U.S.C. § 103(a).

[57] *See id.*

[58] *In re Condor Ins. Ltd.*, 601 F.3d 319, 327 (5th Cir. 2010) (explaining that "in a Chapter 15 ancillary proceeding," "the court is not required to create a separate bankruptcy estate"); *In re British Am. Ins. Co.*, 488 B.R. 205, 222–23 (Bankr. S.D. Fla. 2013) ("In light of the United States court's ancillary role under chapter 15, *there is no estate created here* in a chapter 15 case." (emphasis added)); 8 Collier on Bankruptcy ¶ 1502.01 (16th ed. 2021) ("Commencement of a chapter 15 case does not create an estate.").

[59] Notice of Filing of (I) Claims Procedure and Stay Extension Motion, (II) Claims Procedure and Stay Extension Order, and (III) Endorsement in the CCAA Proceedings [Bankr. Dkt. 135] at 2 (emphasis added).

32.     Second, Just Energy has not sufficiently pleaded this Count. "[T]o qualify as an informal proof of claim: (1) the claim must be in writing; (2) the writing must contain a demand by the creditor on the debtor's estate; (3) the writing must evidence an intent to hold the debtor liable for such debt; (4) the writing must be filed with the bankruptcy court; and (5) based upon the facts of the case, allowance of the claim must be equitable under the circumstances."[60]

33.     Just Energy fails to plead these elements. Rather, Just Energy alleges only that "ERCOT has . . . knowledge of the Debtors' bankruptcy filings," "has appeared as a creditor" in them, and has made written demands on Just Energy for amounts "allegedly" owed.[61] This does not suffice to state a claim that ERCOT filed an informal proof of claim. The Complaint is devoid of any allegations that ERCOT filed a written demand in the bankruptcy proceedings. Because claims disallowance does not occur in Chapter 15 cases, and because Just Energy fails to state a claim, Count 2 should be dismissed.

### 3.      Count 3 should be dismissed because Just Energy fails to state a claim for turnover relief.

34.     Just Energy seeks turnover of both the pre- and post-petition Transfers under 11 U.S.C. § 542, but it fails to state a valid turnover claim. Section 542 "applies only to tangible property and money due to debtor *without dispute* which are *fully matured and payable on demand*."[62] Consequently, it "is settled law that the debtor cannot use the turnover provisions to

---

[60] *In re Expo Constr. Grp., LLC*, 630 B.R. 289, 293 (Bankr. S.D. Tex. 2021) (quoting *In re Nikoloutsos*, 199 F.3d 233, 236 (5th Cir. 2000)).

[61] Compl. ¶ 96.

[62] *In re Fontainebleau Las Vegas Holdings, LLC*, 417 B.R. 651, 666 (S.D. Fla. 2009) (emphasis added) (citation omitted), *aff'd sub nom.*, *Ave CLO Fund Ltd. v. Bank of Am. N.A.*, 709 F.3d 1072 (11th Cir. 2013).

liquidate contract disputes or otherwise demand assets whose title is in dispute."[63] "Section 542 is inapplicable when there is a title dispute between parties," and a debtor cannot use § 542 to dispute another party's title to funds or other property.[64]

35.     Yet this is precisely what Just Energy seeks to do. As Just Energy's pleadings make clear, title to the funds held by ERCOT is disputed; Just Energy acknowledges it must first invalidate the PUCT Orders or show that ERCOT violated the PUCT Orders, PURA, and the SFA before ERCOT would have to turnover any funds. Accordingly, Just Energy fails to plead a proper § 542 claim, for which reason Count 3 should be dismissed.

**4.      Count 4 should be dismissed because §§ 553 and 558 are inapplicable and Just Energy fails to state a claim in any event.**

36.     Count 4 should be dismissed for three reasons. First, like turnover, setoff is a remedy rather than a cause of action, and to the extent Just Energy seeks to dispute title to the Transfers via Count 4, that count should be dismissed.

37.     Second, neither §§ 553 nor 558 is applicable to a Chapter 15 case.[65] Just Energy's claim under § 553 fails because, as Just Energy acknowledges, § 553 provides a remedy for *creditors*, not debtors.[66] Section 558, entitled "Defenses *of the estate*," permits the estate to raise "any defense" the debtor could raise.[67] Because Just Energy is the plaintiff here, and because

---

[63] *In re ATP Oil & Gas Corp.*, 2015 Bankr. LEXIS 781, at *8 (Bankr. S.D. Tex. Mar. 10, 2015) (quoting *U.S. v. Inslaw, Inc.*, 932 F.2d 1467, 1472 (D.C. Cir. 1991)).

[64] *Id.*

[65] 11 U.S.C. § 103(a).

[66] *Id.* § 553(a). Section 553 gives creditors a right of setoff; Plaintiffs acknowledge they are not creditors. Compl. ¶ 105.

[67] *Id.* § 558 (emphasis added).

ERCOT has not and cannot file a claim in this Chapter 15 case, there is no cause for Just Energy to raise a defense. For these reasons, Count 4 should be dismissed.

38.    Finally, Just Energy does not plead a valid setoff claim. The Bankruptcy Code authorizes setoff only if both the claim and the debt against which it is to be set off arose *before* "the commencement of the case."[68] But Just Energy exclusively seeks a setoff against "*future* invoices from ERCOT or the PUCT.*"[69] Just Energy's setoff claim therefore fails as a matter of law, and Count 4 should be dismissed.

### 5.    Count 5 should be dismissed because Just Energy has not pleaded sufficient facts under Rule 8 to give ERCOT notice of what it is to defend.

39.    Just Energy's final count is styled as: "Count 5 Against ERCOT (Canadian Companies Creditors Arrangement Act)."[70] This count does not provide ERCOT fair notice of what it is to defend under Rule 8. It should be dismissed.

40.    A complaint must give the defendant "fair notice of the grounds for entitlement to relief[.]"[71] This means the complaint must apprise the defendant "of what the plaintiff's claim is and the grounds upon which it rests."[72]

41.    Just Energy fails to allege that the pre-petition Transfers violated the CCAA or that it has a right to avoid the Transfers under the CCAA. Indeed, Just Energy cites no section of the CCAA from which its unidentified claim derives. Instead, Just Energy states that the Transfers

---

[68] *Id.* § 553(a); *In re Galaz*, 480 F. App'x 790, 793 (5th Cir. 2012) (per curiam) (holding that set off is available only if "both" the debt and the claim "arose pre-petition").

[69] Compl. ¶ 107 (emphasis added).

[70] Compl. at 33.

[71] *Twombly*, 550 U.S. at 561.

[72] *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 438 (5th Cir. 2004) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 507 (2002)).

"are recoverable under the CCAA *or any other applicable law*."[73] Accordingly, ERCOT is left to guess whether Just Energy's claim arises under the CCAA or some other law. ERCOT cannot discern how to defend this claim without more substantial allegations.[74] This claim should be dismissed for failure to state a claim.

**B.     This Court should abstain from deciding Just Energy's state-law claims under *Burford v. Sun Oil Co.***

**1.     Just Energy's pricing claims implicate Texas's comprehensive regulatory scheme governing electric utilities.**

42.     Just Energy labels its claims as arising under Chapter 5 of the Bankruptcy Code or under Canadian law. But in determining the nature of a bankruptcy proceeding, a "court must look to both the form and the substance of the proceeding."[75] This follows from the general rule that a court reviewing a pleading must "ignore 'labels' and instead look to the 'substance' of the complaint, 'setting aside any attempts at artful pleading' that might otherwise cloak" the claims' true nature.[76]

43.     Just Energy's adversary Complaint presses multiple claims that arise entirely under Texas law. Just Energy spends thirteen paragraphs arguing that the PUCT Orders setting prices during the Storm violated the Texas APA and PURA and are therefore invalid.[77] In the alternative, Just Energy argues that if the PUCT Orders were valid, then ERCOT violated the PUCT Orders by holding prices at the system-wide offer cap "after 1:05 a.m. on February 18, 2021," i.e., after

---

[73] Compl. ¶ 110 (emphasis added).

[74] *See Lovick*, 378 F.3d at 438.

[75] *In re Mugica*, 362 B.R. 782, 789 (Bankr. S.D. Tex. 2007) (Isgur, J.) (quoting *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987)).

[76] *Heston v. Austin Indep. Sch. Dist.*, 816 F. App'x 977, 981 (5th Cir. 2020); *see Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 733 (5th Cir. 2018).

[77] Compl. ¶¶ 63–75.

mandatory load shed ended.[78] Finally, based on these attacks on the PUCT Orders and ERCOT's compliance with the PUCT Orders, Just Energy argues that the prices charged during the Storm were improper because they violated ERCOT's Protocols and the SFA.[79] It is these embedded state-law claims that this Court should abstain from deciding under *Burford*.

> ## 2. This Court should abstain to avoid interfering with Texas's electric-regulatory regime.

44.     A federal court must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."[80]

45.     The Fifth Circuit has recognized five factors that a court should weigh when considering *Burford* abstention: (1) "whether the cause of action arises under federal or state law"; (2) "whether the case requires inquiry into unsettled issues of state law, or into local facts"; (3) "the importance of the state interest involved"; (4) "the state's need for a coherent policy in that area"; and (5) "the presence of a special state forum for judicial review."[81]

46.     These factors favor abstention.

---

[78] Compl. ¶¶ 76–79.

[79] Compl. ¶¶ 60–62.

[80] *Colo. River Water Conservation Dist.*, 424 U.S. at 814; *see also Burford*, 319 U.S. at 315.

[81] *Wilson,* 8 F.3d at 314.

> a.    **Just Energy's causes of action arise under state law.**

47.    Application of this factor depends not "on whether the plaintiff's cause of action is alleged under federal or state law," but "on whether the plaintiff's claim may be 'in any way entangled in a skein of state law that must be untangled before the federal case can proceed.'"[82] Thus, even if a plaintiff's claim is "framed" as arising under federal law, abstention may be appropriate if "the underlying issues presented are purely state law issues."[83]

48.    The substance of Just Energy's pleading is an attack on the PUCT Orders. It is also an attack on ERCOT's compliance with the PUCT Orders, its Protocols, and the SFA. Each of these attacks arises entirely under Texas law.[84] Indeed, Just Energy spends numerous paragraphs articulating a specific statutory challenge to the PUCT Orders under PURA and the Texas APA.[85] These questions arise not only under Texas law, but also under a "comprehensive" Texas regulatory scheme.[86]

> b.    **This adversary proceeding requires inquiry into unsettled issues of state law.**

49.    The state-law questions presented by Just Energy's adversary Complaint are unsettled and uniquely difficult, requiring an examination of the interplay between ERCOT

---

[82] *Sierra Club v. City of San Antonio,* 112 F.3d 789, 795 (5th Cir. 1997) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 727 (1996)).

[83] *Koerner v. Garden Dist. Ass'n*, 78 F. App'x 960, 963 (5th Cir. 2003).

[84] Moreover, some of Just Energy's counts are noncore, or at least effectively noncore. Count 3, to the extent it seeks to liquidate a contested claim, is noncore because § 542 does not apply to disputed property. *See Highland Cap. Mgmt. v. Highland Cap. Fund Advisors, L.P.*, 2021 Bankr. LEXIS 1821, at *26 (Bankr. N.D. Tex. July 8, 2021) (holding that because turnover claim sought to "collect on a disputed indebtedness," it "is not a core claim"). And Count 5 does not arise in or arise under the Bankruptcy Code—it arises under the CCAA.

[85] Compl. ¶¶ 63–75.

[86] Tex. Util. Code § 31.001(a).

Protocols, PUCT rules and PUCT Orders, and the APA and PURA. No court has previously adjudicated these questions. But, as explained below, Just Energy's exact challenges to the PUCT Orders are now pending in state court proceedings—which are the legislatively prescribed fora for such disputes.[87] Neither has any Texas court adjudicated a challenge to ERCOT's pricing decisions, let alone decisions made during an unprecedented emergency that were based on a binding PUCT Order. As complicated as the questions of whether the PUCT or ERCOT erred is the question of remedy. ERCOT and the PUCT acted within a comprehensive regulatory scheme. Any court order that alters the relationship between ERCOT and one market participant, like Just Energy, will affect every other market participant in the State. How state law would handle such problems has never been addressed. Finally, this Court would have to "delv[e] into highly local issues of fact" regarding the operation and management of the grid during the Storm.[88] These issues are within the PUCT's special competence, and these factual questions thus implicate "precisely the sort of highly localized, specialized, judgmental, and perhaps partisan analysis" that requires abstention.[89]

### c.    Utility regulation is an important state interest.

50.    "[U]tility regulation is one of the most important of the functions traditionally associated with the police power of the States," while "federal courts have little interest in hearing" such matters.[90] Importantly, the Bankruptcy Code does not "represent a supervening federal

---

[87] *See Exelon Generation Co. v. PUC*, No. D-1-GN-21-001772 (Tex. Dist. Ct., Travis Cnty. filed Apr. 19, 2021); *Luminant Energy Co. v. PUC*, No. 03-21-00098-CV (Tex. App.—Austin filed March 2, 2021).

[88] *Wilson,* 8 F.3d at 315.

[89] *Id.*

[90] *Wilson,* 8 F.3d at 315 (citation omitted).

interest,"[91]—especially when, as here, the bankruptcy court's jurisdiction is premised only on Chapter 15. Thus, the electric-regulatory questions presented by Just Energy's Complaint are uniquely within the State's purview.

51.     The Texas Legislature has emphasized the importance of its interest in this field. The PUCT and ERCOT actions that Just Energy attacks were taken pursuant to a "comprehensive and adequate regulatory system" that was "enacted to protect the public interest inherent in the rates and services of electric utilities" of which ERCOT is an "essential" part.[92] On numerous occasions, the Supreme Court of Texas has described PURA as a "pervasive regulatory scheme."[93] ERCOT is an "essential" part of this regulatory scheme that uses rulemaking authority delegated to it by the PUCT to regulate Texas's power grid and wholesale electricity market, as well as the participants in that market.[94]

### d.     Texas needs a coherent policy regarding its electricity grid and market.

52.     "*Burford* abstention is intended to avoid recurring and confusing federal intervention in an ongoing state scheme."[95] Other market participants' challenges to the PUCT Orders are already being heard in state trial and appellate courts.[96] The state courts "need[] neither [this Court's] harmonious nor disharmonious notes" on the questions before them.[97] But if this

---

[91] *Id.*

[92] TEX. UTIL. CODE § 31.001(a); *see also id.* § 39.001.

[93] *E.g., In re Entergy Corp.*, 142 S.W.3d 316, 322 (Tex. 2004).

[94] TEX. UTIL. CODE §§ 39.151(a), (d).

[95] *Wilson,* 8 F.3d at 315.

[96] *See Exelon Generation Co. v. PUC*, No. D-1-GN-21-001772 (Tex. Dist. Ct., Travis Cnty. filed Apr. 19, 2021); *Luminant Energy Co. v. PUC*, No. 03-21-00098-CV (Tex. App.—Austin filed March 2, 2021).

[97] *Wilson,* 8 F.3d at 316.

Court were to rule differently than those state courts, ERCOT and the PUCT would be in the impossible position of attempting to comply with contradictory rulings by state and federal courts. It would also incentivize other market participants to file bankruptcy as a means of evading a potentially adverse ruling in the pending state-court proceedings.

53.     The *Burford* Court also emphasized the unique characteristics of oil and gas fields, which are not only usually intrastate but "must be regulated as a unit" because the actions of each operator in the field affect all of the other operators.[98] Similarly, in *Sierra Club*, the Fifth Circuit explained Texas's need for a coherent policy regarding water rights in the Edwards Aquifer by pointing to the "need for unified management and decision-making."[99]

54.     This same reasoning applies here. Texas—unique among the continental states— operates a wholly intrastate electricity grid and market, which are overseen by ERCOT and the PUCT. This "unified management" is necessary to balance the need to correct any error that affected Just Energy with a remedy that protects the overall stability of the market and grid.

   e.     **Texas established a special state fora for judicial review.**

55.     In *Burford*, the Supreme Court found it significant that, "[t]o prevent the confusion of multiple review of the same general issues," the Texas Legislature had "provided for concentration of all direct review of the [Railroad] Commission's orders in the state district courts of Travis County."[100] Similarly, in *Wilson*, the Fifth Circuit pointed to a state constitutional provision "centraliz[ing] appeals in the state district court in the state capital."[101] The same is true here.

---

[98] 319 U.S. at 319–20.

[99] 112 F.3d at 794–95.

[100] 319 U.S. at 326.

[101] 8 F.3d at 316.

56.     Depending on whether the PUCT Orders are properly considered Orders or "competition rules," any challenge to the PUCT Orders must be filed in either the state district court in Travis County or the Third Court of Appeals based in Austin.[102] There are pending challenges to the PUCT Orders in both fora.[103] This Court should, accordingly, abstain from hearing Just Energy's attack on the PUCT Orders to avoid interfering with the courts the State selected to hear these important issues.

57.     Just Energy's allegations that ERCOT violated the PUCT Orders, ERCOT's Protocols, or the SFA must likewise be heard in a special forum: the PUCT, with appeals from the PUCT's ruling centralized in Travis County district court.[104] A Texas court of appeals recently dismissed a state-court lawsuit alleging that the prices set by ERCOT during the Storm violated ERCOT's Protocols, the SFA, and the PUCT Orders because such claims are within the PUCT's exclusive original jurisdiction.[105] Just Energy's pricing claims against ERCOT, likewise, fall within the PUCT's exclusive jurisdiction. After Just Energy pursued such administrative claims, it would be entitled to judicial review in Travis County district court.[106]

---

[102] *See* TEX. GOV'T CODE § 2001.176(b)(1); TEX. UTIL. CODE §§ 11.007(a), 15.001 (together, permitting judicial review of PUCT Orders in Travis County district court); *see also* TEX. UTIL. CODE § 39.001(e) (providing that a "competition rule" must be challenged directly in the Third Court of Appeals).

[103] *See Exelon Generation Co. v. PUC*, No. D-1-GN-21-001772 (Tex. Dist. Ct., Travis Cnty. filed Apr. 19, 2021); *Luminant Energy Co. v. PUC*, No. 03-21-00098-CV (Tex. App.—Austin filed Mar. 2, 2021).

[104] *See Wilson*, 8 F.3d at 316 (holding that this element was satisfied where the claim at issue was subject to the original jurisdiction of Louisiana's electric-regulatory agency, followed by "centralize[d] appeals in the state district court in the state capital").

[105] *ERCOT v. CPS Energy*, --- S.W.3d ---, No. 04-21-00242-CV, 2021 Tex. App. LEXIS 9842, at *14 (Tex. App.—San Antonio Dec. 13, 2021, n.p.h.).

[106] TEX. UTIL. CODE § 15.001.

58.     Because of the need for consistency in this area, as well as the necessity that orders related to ERCOT's conduct be issued by an entity empowered to grant market-wide relief that accounts for the need for the grid's and market's stability, the Legislature determined that claims like Just Energy's must be filed in the courts of Travis County or the PUCT (with appeal to the same courts). This factor also strongly favors abstention.

59.     This Court should, therefore, abstain in favor of the pending proceedings presenting identical challenges to ERCOT's and the PUCT's actions during the Storm.

**C.     The Complaint should be dismissed because ERCOT is immune from suit.[107]**

**1.     ERCOT is entitled to Eleventh Amendment immunity.**

60.     Just Energy asserts that ERCOT cannot be immune "because it is a private, membership-based corporation," "not a governmental regulator."[108] Just Energy does not cite to or apply the Fifth Circuit's guiding test for Eleventh Amendment immunity, under which ERCOT's organizational status is not dispositive. And Just Energy fails to mention that a Texas appellate court has held that ERCOT shares the State's sovereign immunity.[109]

61.     ERCOT is entitled to Eleventh Amendment immunity if it is an "arm of the state." To determine whether ERCOT is, this Court looks at six factors: (1) "[w]hether the state statutes and case law view the agency as an arm of the state"; (2) "[t]he source of the entity's funding"; (3) "[t]he entity's degree of local autonomy"; (4) "[w]hether the entity is concerned primarily with local as opposed to statewide[] problems"; (5) "[w]hether the entity has the authority to sue and

---

[107] *Chapa v. DOJ*, 339 F.3d 388, 389 (5th Cir. 2003) ("Sovereign immunity implicates subject matter jurisdiction.").

[108] Compl. ¶ 80.

[109] *In re ERCOT*, 552 S.W.3d 297, 319 (Tex. App.—Dallas 2018, orig. proceeding), *mand. denied*, 619 S.W.3d 628 (Tex. 2021).

be sued in its own name"; and (6) "[w]hether the entity has the right to hold and use property."[110]
"These factors are examined as a whole, and no single factor is dispositive."[111] However, the
second factor—regarding the entity's source of funding—is generally given particular
importance.[112]

<strong>a.  State statutes and case law.</strong>

62.     The only state decision to directly address this issue held that ERCOT shares the
state's sovereign immunity.[113] Just Energy thus focuses, instead, on two decisions holding that
ERCOT is not a "governmental unit" as a particular statute defines that term.[114] But ERCOT's
"governmental unit" status "is not probative of" its Eleventh Amendment immunity.[115] However,
a recent state decision held ERCOT *is* a governmental unit because it is "an institution, agency, or
organ of government' that "derives its status and authority from state law."[116]

63.     ERCOT's statutory scheme also reflects its arm-of-the-state status. ERCOT
exclusively performs statutory functions, exercises delegated sovereign rulemaking authority, has
been designated a "state agency" for certain purposes, is subject to open-meetings laws and the
Sunset Act, and is governed by a state-selected board whose members are subject to conflict-of-
interest and anti-lobbying statutes. [117] Moreover, two state officials—the PUCT's commissioner

---

[110] *Daniel v. Univ. of Tex. Sw. Med. Ctr.*, 960 F.3d 253, 256–57 (5th Cir. 2020).

[111] *Southwestern Bell Tel. Co. v. City of El Paso*, 243 F.3d 936, 938 (5th Cir. 2001).

[112] *Id.*; *accord Daniel*, 960 F.3d at 257.

[113] *In re ERCOT*, 552 S.W.3d at 319.

[114] Compl. ¶ 80.

[115] *Williams v. Dallas Area Rapid Transit*, 242 F.3d 315, 319 (5th Cir. 2001).

[116] *CPS Energy*, 2021 Tex. App. LEXIS 9842, at *6, *14.

[117] *Id.* at *5;  Tex. Util. Code §§ 39.151(d), (g-1)(4), (g-5), (n); Tex. Util. Code §§ 39.1511, 39.1512, 39.1513.

and the Public Utility Counsel—are *ex officio* members of ERCOT's governing board, and ERCOT representatives serve *ex officio* on numerous other state instrumentalities, alongside representatives of other state agencies.[118]

### b.   The source of ERCOT's funding.

64.     The State funds ERCOT using a statutorily created "system administration fee"—a regulatory fee collected from the entities subject to ERCOT's regulation.[119] Thus, the money ERCOT would use to pay a damages award is state money.[120]

65.     The State also appropriates the fee. The Legislature delegated to the PUCT "complete authority to oversee" ERCOT's "finances [and] budget."[121] ERCOT must therefore submit its "entire proposed annual budget" to the PUCT, which "may approve, disapprove, or modify *any item* included."[122] This line-item budgetary authority, combined with the PUCT's authority over ERCOT's funding mechanism, means that ERCOT cannot raise or earmark money to pay a money judgment—or anything else—without the State's consent.[123]

---

[118] Tex. Util. Code §§ 39.151(g-1)(1)–(2); *see also* Tex. Gov't Code §§ 418.301–.310 (Texas Energy Reliability Council); Tex. Util. Code §§ 38.201–.203 (Texas Electric Supply Chain Security and Mapping Committee), 39.917 (Texas Electric Grid Security Council); Tex. Water Code § 16.055 (Texas Drought Preparedness Council).

[119] Tex. Util. Code § 39.151(e).

[120] *See In re ERCOT*, 552 S.W.3d at 315 ("[T]he system administration fee is authorized by statute, set by the PUC, collected pursuant to the State's power, and intended to further a function for the benefit of the public."). Regulatory fees are collected using the State's police power and—like the system administration fee—cannot raise more money "than reasonably necessary to cover the costs" of the regulatory regime it funds. *City of Fort Worth v. Gulf Refin. Co.*, 83 S.W.2d 610, 618 (Tex. 1935); *accord H. Rouw Co. v. Texas Citrus Comm'n*, 247 S.W.2d 231, 234 (Tex. 1952); *see* Tex. Util. Code § 39.151(e).

[121] Tex. Util. Code § 39.151(d).

[122] *Id.* § 39.151(d-1) (emphasis added).

[123] Moreover, the Legislature *does* appropriate ERCOT's funds in some cases. It decreed that ERCOT's regulatory fee be used to fund the Independent Market Monitor and the Cybersecurity Monitor. Tex. Util. Code §§ 39.1515(c), 39.1516(c). And the Legislature requires ERCOT to use

###### c.    ERCOT's degree of local control.

66.    This factor favors immunity because the State directly controls ERCOT via selection of ERCOT's governing board.[124] ERCOT is also "directly responsible and accountable to" the PUCT, which in turn has "complete authority" over ERCOT's "finances, budget, and operations," as well as plenary authority over ERCOT's rulemaking power and internal governance, including its bylaws.[125] And the PUCT also has broad disciplinary powers over ERCOT, including the power to decertify ERCOT from its regulatory role.[126]

###### d.    ERCOT is concerned with statewide problems.

67.    ERCOT regulates the electric grid that covers the vast majority of Texas, including about 90% of the State's electric load.[127] ERCOT also oversees the wholesale energy market that serves this region.[128]

###### e.    Whether ERCOT may hold and use property.

68.    This factor favors immunity because the State has ultimate control over ERCOT's property.[129] The Legislature and PUCT exercise free use of ERCOT's revenue and resources to

---

its resources to support other state agencies, like the Texas Electric Supply Chain Security and Mapping Committee and the Texas Electric Grid Security Council. TEX. UTIL. CODE §§ 38.202(d), 39.917(g).

[124] *See Daniel*, 960 F.3d at 258–59.

[125] TEX. UTIL. CODE §§ 39.151(d), (g-1), (g-6); *see Daniel*, 960 F.3d at 258–59 (holding that even if university hospital was governed by physicians rather than state-selected board of regents, the level of "state oversight and financial regulation" nevertheless "support[ed the hospital] receiving arm-of-the-state recognition").

[126] TEX. UTIL. CODE § 39.151(d).

[127] *Id.* § 39.151(a)(2); ERCOT, *Fact Sheet* at 2 (Nov. 2021), https://www.ercot.com/files/docs/2021/11/23/ERCOT%20Fact%20Sheet.pdf; *see also* Compl. ¶¶ 28–29.

[128] *Id.* § 39.151(a)(4).

[129] *Daniel*, 960 F.3d at 260.

operate a variety of legislative priorities and state agencies. Moreover, if ERCOT is decertified, the PUCT *must* simultaneously choose a successor and *must* "transfer [ERCOT's] assets to the successor organization."[130] This direct authority over ERCOT's property shows that Texas regards ERCOT's assets as its own.

### f.    Whether ERCOT may sue and be sued.

69.    The Fifth Circuit has long considered this the least important factor because cases against putative arms of the state usually arise in "the context of determining whether a state has waived immunity."[131] This is true of ERCOT, which has argued that it is immune from—and thus not subject to—suit in several of the cases to which Just Energy might point.

70.    As the Fifth Circuit has intimated, this factor should be abandoned because it says little or nothing about whether an entity is an arm-of-the-state. But even if this factor applies, it should be given minimal weight.[132]

### 2.    ERCOT's immunity has not been waived.

71.    Just Energy asserts that even if ERCOT is immune, its immunity has been waived by the Constitution's Bankruptcy Clause, 11 U.S.C. § 106(a), and/or the Texas Administrative Procedures Act.[133] Just Energy is incorrect.

---

[130] TEX. UTIL. CODE § 39.151(d); 16 TEX. ADMIN. CODE § 25.364(g).

[131] *United States ex rel. King v. Univ. of Tex. Health Sci. Ctr.—Hous.*, 544 F. App'x 490, 498 n.3 (5th Cir. 2013) (per curiam); *Williams*, 242 F.3d at 319.

[132] *E.g.*, *Daniel*, 960 F.3d at 259–60 (holding entity to be arm of the state despite this factor weighing against it); *King*, 544 F. App'x at 498 (same).

[133] Compl. ¶¶ 81–82.

a.     **The Bankruptcy Clause does not waive ERCOT's immunity.**

72.     In *Central Virginia Community College v. Katz*, 546 U.S. 356 (2006), the Supreme Court held that the Constitution's Bankruptcy Clause, U.S. Const. art. I, § 8, cl. 4,[134] empowered Congress "to enact bankruptcy legislation" that included "the power to subordinate state sovereignty *albeit within a limited sphere*"—namely, when "necessary to effectuate *in rem* jurisdiction that is at the heart of traditional bankruptcy proceedings.[135] That waiver of immunity does not extend to Chapter 15 of the Bankruptcy Code.

73.     *First*, a Chapter 15 ancillary proceeding is not a "bankruptcy law" to which the Bankruptcy Clause applies. A Chapter 15 case has *none* of the "[c]ritical features of *every* bankruptcy proceeding."[136] The bankruptcy court does not exercise exclusive jurisdiction over "all of the debtor's property"; no estate created.[137] The bankruptcy court is not responsible for the "equitable distribution" of the debtor's property; the foreign main proceeding is.[138] And, most fundamentally, a Chapter 15 contains no provision discharging the debtor's liabilities; again, that relief is available, if at all, in the foreign main proceeding.[139]

74.     Chapter 15 is an international-comity statute meant to be "ancillary" and provide "assist[ance]" to a foreign insolvency proceeding in which these critical bankruptcy features might

---

[134] "The Congress shall have Power . . . To establish . . . uniform Laws on the subject of Bankruptcies throughout the United States."

[135] *Katz*, 546 U.S. at 377–78 (emphasis added).

[136] *Id.* at 363 (emphasis added).

[137] 11 U.S.C. § 103(a) (making Chapter 5 inapplicable in Chapter 15 cases).

[138] *See supra* § IV.A.2.

[139] *Contra* 11 U.S.C. §§ 727, 1141 (d)(1)(A), 1192, 1328. Because there is no discharge in a Chapter 15 case, the waiver of Eleventh Amendment immunity addressed in *Tennessee Student Assistance Corp. v. Hood* is inapplicable here. 541 U.S. 440, 450 (2004) (holding that a discharge of debts under the Bankruptcy Code is effective against the states, regardless of their Eleventh Amendment immunity).

be present.[140] Because a Chapter 15 case lacks any of the critical features of "*every* bankruptcy," it is not "a "Law[] on the subject of Bankruptcies" to which *Katz*'s waiver of immunity would apply.

75.     *Second*, even if Chapter 15 were a bankruptcy law, it would be outside the "limited sphere" in which *Katz* waives immunity.[141] *Katz* relied on a theory of implicit state consent. The Court observed that the authority "to avoid preferential transfers and to recover the transferred property" had "been a core aspect of the administration of bankrupt estates since at least the 18th century," and the states therefore "would have understood" the Bankruptcy Clause to abrogate their immunity for such claims.[142] This was reflected in the earliest bankruptcy statutes, which authorized relief directly against the States.[143]

76.     There is no similar historical or statutory background against which the States can be assumed to have surrendered their sovereign immunity from proceedings in aid of foreign insolvency cases. Unlike avoidance claims, there is no historical tradition of American courts assisting foreign insolvency proceedings.[144] And the Bankruptcy Act of 1800 contained no provision authorizing such assistance.[145]

---

[140] *In re Condor Ins. Ltd.*, 601 F.3d at 322; *see also In re British Am. Ins. Co.*, 488 B.R. at 222 ("In a Chapter 15 case, the United States court acts only in an ancillary role.").

[141] *Katz*, 546 U.S. at 377.

[142] *Id.* at 372.

[143] *Id.* at 371.

[144] *See Harrison v. Sterry*, 9 U.S. 289, 302 (1809) (refusing comity to foreign insolvency judgment because "the bankrupt law of a foreign country is incapable of operating a legal transfer of property in the United States"); *see also* Charles D. Booth, *Recognition of Foreign Bankruptcies: An Analysis & Critique of the Inconsistent Approaches of United States Courts*, 66 Am. Bankr. L.J. 135, 139 (1992).

[145] Charles D. Booth, *A History of the Transnational Aspects of United States Bankruptcy Law Prior to the Bankruptcy Reform Act of 1978*, 9 B.U. Int'l L.J. 1, 6 (1991).

77.     Rather, the foreign assistance provided by Chapter 15 is an innovation of the 1978 Bankruptcy Act, which for the first time empowered federal bankruptcy courts to grant relief "ancillary to a foreign proceeding."[146] The States, in ratifying the Bankruptcy Clause, cannot have knowingly surrendered their immunity from such proceedings.

78.     *Finally*, the ancillary proceedings in aid of a foreign insolvency case contemplated by Chapter 15 are not "necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts."[147] The jurisdiction referenced by *Katz* is the jurisdiction over "[c]ritical features of every bankruptcy proceeding,"[148] especially the power to discharge the estate's debts.[149] Those features are absent in Chapter 15, which is meant primarily to give domestic effects to orders issued in foreign proceedings.[150]

---

[146] 11 U.S.C. § 304, *repealed by* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, § 802(d)(3), 119 Stat. 146, 216.

[147] *Katz*, 546 U.S. at 378.

[148] *Id.* at 362–64, 369–70.

[149] *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 447 (2004) ("The discharge of a debt by a bankruptcy court is similarly an *in rem* proceeding."); *see also Gardner v. New Jersey*, 329 U.S. 565, 574 (1947) ("The whole process of proof, allowance, and distribution is, shortly speaking, an adjudication of interests claimed in a *res*.").

[150] Congress appears to agree that Chapter 15 is substantively different than the remainder of the Bankruptcy Code as it relates to a State's immunity. As ERCOT shows below, the statutory waiver of immunity in § 106 does not apply to Chapter 15.

### b.      11 U.S.C § 106 does not waive ERCOT's immunity.

79.      Just Energy also relies on the putative waiver of immunity found in 11 U.S.C.

§ 106(a).[151] Under binding Circuit precedent, § 106(a) is unconstitutional.[152] But even if section

106 were constitutional, it would not waive ERCOT's immunity here.

80.      Section 106(a) purports to abrogate the sovereign immunity of a governmental unit

with respect to certain enumerated sections of the Bankruptcy Code "to the extent set forth in" that

section.[153] That extent is exceedingly limited:

> A governmental unit *that has filed a proof of claim in the case* is deemed to have
> waived sovereign immunity with respect to a claim against such governmental unit
> that is property *of the estate* and that arose out of the same transaction or occurrence
> out of which the claim of such governmental unit arose.[154]

81.      This provision cannot waive ERCOT's immunity. Because § 501 does not apply,[155]

ERCOT has not and cannot "file[]a proof of claim in th[is] case." Moreover, Just Energy's claims

cannot be "property of the estate" because there is no estate in a Chapter 15 proceeding.[156]

### c.      The Texas Administrative Procedures Act does not waive ERCOT's immunity.

82.      Just Energy argues that "section 2001.038 of the APA is a grant of original

jurisdiction, and 'it waives sovereign immunity.'"[157] Section 2001.038 grants original jurisdiction,

---

[151] Compl. ¶ 81.

[152] *In re Fernandez*, 123 F.3d 241, 242 (5th Cir. 1997). Whether *Fernandez* was abrogated by the Supreme Court's decision in *Katz*—especially in a Chapter 15 case—is a question that should be decided by the Fifth Circuit, not this Court.

[153] 11 U.S.C. § 106(a).

[154] *Id.* § 106(b) (emphasis added).

[155] 11 U.S.C. § 103(a).

[156] *Supra* § IV.A.2.

[157] Compl. ¶ 82 (quoting *Tex. Logos. L.P. v. Tex. Dep't of Transp.*, 241 S.W.3d 105, 123 (Tex. App.—Austin 2007, no pet.).

and thus waives immunity, *only* for suits brought in state district court in Travis County.[158] It does

not waive immunity for federal-court suits.[159] Moreover, the APA does not apply to ERCOT, and

it therefore cannot waive ERCOT's immunity.[160]

## V.   CONCLUSION

ERCOT respectfully requests this Court enter the Order attached as Exhibit 4 granting the

relief sought:

(1) dismiss with prejudice all counts for failure to state a claim;

(2) abstain from deciding all counts insofar as they depend on the validity or applicability
of the PUCT Orders;

(3) dismiss all counts on the ground that ERCOT is immune from suit.

---

[158] TEX. GOV'T CODE § 2001.038(b) ("The action may be brought *only* in a Travis County district court." (emphasis added)).

[159] *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 306 (1990) ("A State does not waive its Eleventh Amendment immunity by consenting to suit only in its own courts," but instead "must specify the State's intention to subject itself to suit in *federal court*." (internal quotation marks omitted) (emphasis added)); *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 332 (5th Cir. 2002) (holding that state's immunity was not waived by statute that did "not expressly waive sovereign immunity in *federal* court").

[160] As ERCOT explains *infra* § IV.B.1.e., Texas law provides for judicial review of ERCOT decisions, but only after the exhaustion of administrative proceedings before ERCOT and the PUCT.

Dated: January 10, 2022

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: _/s/ Jamil N. Alibhai_
    Kevin M. Lippman
    Texas Bar No. 00784479
    klippman@munsch.com
    Deborah Perry
    Texas Bar No. 24002755
    dperry@munsch.com
    John Cornwell
    Texas Bar No. 24050450
    jcornwell@munsch.com
    Jamil N. Alibhai
    Texas Bar No. 00793248
    jalibhai@munsch.com
    Ross H. Parker
    Texas Bar No. 24007804
    rparker@munsch.com

    3800 Ross Tower
    500 N. Akard Street
    Dallas, Texas 75201-6659
    Telephone: (214) 855-7500
    Facsimile: (214) 855-7584

    **WINSTEAD PC**
    Elliot Clark
    Texas Bar No. 24012428
    eclark@winstead.com
    Ron H. Moss (*pro hac vice motion to be filed*)
    Texas Bar No. 14591025
    rhmoss@winstead.com
    401 Congress Avenue, Suite 2100
    Austin, Texas 78701
    Telephone: (512) 370-2800
    Facsimile: (512) 370-2850

    **COUNSEL FOR DEFENDANT**
    **ELECTRIC RELIABILITY COUNCIL OF**
    **TEXAS, INC.**

## <u>CERTIFICATE OF SERVICE</u>

      I certify that on January 10, 2022, I caused a copy of the foregoing document to be served via CM/ECF on all counsel of record.