**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>JUST ENERGY GROUP INC., *et al.*,<br><br>Debtors in a Foreign Proceeding.[1] | Chapter 15<br><br>Case No. 21-30823 (MI) |
| JUST ENERGY TEXAS LP, FULCRUM RETAIL ENERGY LLC, HUDSON ENERGY SERVICES LLC, and JUST ENERGY GROUP, INC.,<br><br>      Plaintiffs,<br><br>  v.<br><br>ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC. and the PUBLIC UTILITY COMMISSION OF TEXAS, INC.,<br><br>      Defendants. | Adv. Proc. No. 21-4399 |

**ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC.'S REPLY IN SUPPORT**
**OF ITS MOTION TO DISMISS AND FOR ABSTENTION**

[Relates to Dkt. No. 30]

---

[1] The identifying four digits of Just Energy Group Inc.'s local Canada tax identification number are 0469. A complete list of debtor entities in these chapter 15 cases may be obtained at www.omniagentsolutions.com/justenergy.

Electric Reliability Council of Texas, Inc. ("ERCOT") files this *Reply in Support of its Motion to Dismiss and for Abstention.*

## I. SUMMARY OF ARGUMENT

1. ERCOT demonstrated that each of Just Energy's five counts should be dismissed for failure to state a plausible claim. In response, Just Energy either fails to address ERCOT's arguments, raises arguments that fail as a matter of law, or attempts to fix the defects in its Complaint by alleging entirely new facts and theories of relief. Just Energy's claims are subject to dismissal under Rule 12(b)(6), and the response does not alter this conclusion.

2. To the extent the Complaint is not dismissed under Rule 12(b)(6), this Court must abstain under *Burford v. Sun Oil Co.* because Just Energy's claims constitute direct attacks on the validity and applicability of PUCT Orders. Just Energy's argument that *Burford* does not apply in bankruptcy cases is legally unsound. And Just Energy's analysis of the *Burford* factors disregards the facts of this case.

3. Additionally, ERCOT is entitled to Eleventh Amendment immunity because it satisfies all the factors enumerated by the Fifth Circuit. Just Energy sidesteps this dispositive test. And Just Energy fails to show that ERCOT's immunity has been waived. Just Energy's attempts to analogize to *Katz* fall flat; it does not deny that § 106 is unconstitutional, and its plain language and Fifth Circuit precedent render it inapplicable. Moreover, Just Energy abandons its position that the Texas Administrative Procedure Act waives ERCOT's immunity.

4. Finally, if the Court dismisses the PUCT from this suit, then it must dismiss the whole case under Rule 12(b)(7). The PUCT is an indispensable party, and the Court cannot adjudicate this matter without it.

## II.  ARGUMENT AND AUTHORITIES

**A.**     **All Counts should be dismissed because they fail to state plausible claims.**

    **1.**     **Count 1 should be dismissed because Just Energy has not rebutted that the Transfers were authorized, and its new argument raised in its Response is not properly before the Court.**

    5.     Count 1 seeks avoidance of certain transfers under § 549 on the ground that they were not authorized by this Court, and Just Energy contends that the transfers could not have been authorized because they violated the SFA and were pursuant to illegal PUCT Orders.[2] The reality is that the transfers were unambiguously authorized, and none of Just Energy's allegations about the wisdom of that decision are relevant. ERCOT moves to dismiss this Count because the Complaint establishes that the transfers subject to the § 549 cause of action were, in fact, authorized.[3]

    6.     Just Energy continues to assert that this Court did not "authorize" the transfers totaling approximately $193 million. Instead, the Court merely "recognized the authority to make payment to ERCOT as granted by the Canadian Order."[4] Yet, the Court's Provisional Recognition Order was unambiguous:

---

[2] Compl. ¶ 89. While Just Energy dedicates almost four pages of its complaint to arguing that the PUCT Orders violated the Texas Administrative Procedure Act ("APA") and are thus illegal (*id.* ¶¶ 63–72), Just Energy now asserts it "has brought bankruptcy claims—not APA or PURA claims." Resp. ¶ 5. Meanwhile, Just Energy still argues that the PUCT Orders were the result of "unreasoned decision making," *id.* ¶ 14; that the PUCT "did not follow the statutorily-prescribed rule-making procedures" in issuing them; and that "Defendants violated Texas APA by setting prices without proper notice or making an evidentiary showing that the market's scarcity pricing signals were not working," *id.* ¶ 24. But Just Energy may not challenge the PUCT Orders as violating the APA *except under the APA. Tex. Dep't of Pub. Safety v. Salazar*, 304 S.W.3d 896, 906 n.7 (Tex. App.—Austin 2009, pet. dism'd). Just Energy has not done so and disclaims any intent to do so. Resp. ¶ 5.

[3] Mot. ¶¶ 26–29.

[4] Resp. ¶ 44 (citation omitted, alteration incorporated).

> Pending entry of the Recognition Order and notwithstanding anything to the contrary contained in this Order, the Foreign Representative and the Debtors, as applicable, are *authorized* to comply with the terms, conditions, and provisions of the CCAA Order . . . .[5]

The Court then further stated in the Provisional Recognition Order that Just Energy was "*authorized* . . . to enter into, perform and borrow under the DIP Facility"[6] (which was obtained to pay ERCOT[7]) and "recognize[d] the authority to make payments to ERCOT as granted by the Canadian Order," "neither add[ing] nor subtract[ing] from any such authorization."[8] Just Energy admits that "the Canadian Court . . . authorized the payment of the disputed invoices to ERCOT."[9] Thus, when the Court entered the Provisional Recognition Order containing the foregoing authorizations, the Court was both aware that Just Energy intended to pay ERCOT with proceeds from the DIP Facility and that the Canadian Court had already authorized the payments to ERCOT. The Court recognized that the Canadian Court's authorization, and this Court's authorization of the payments had equal force and effect—no greater or less. Thus, the transfers were authorized, and Just Energy's claim fails.

7.     The filings and events that preceded these orders provide further support that the Provisional Recognition Order unambiguously authorized the transfers to ERCOT.[10]

---

[5] Order Granting Provisional Relief at 4, *In re Just Energy Grp., Inc.*, No. 21-30823 (MI) (Bankr. S.D. Tex.) [Bankr. Dkt. 23] (emphasis added) ("Provisional Recognition Order").

[6] *Id.*

[7] Hrg. Tr. at 17 [Bankr. Dkt. 35].

[8] Provisional Recognition Order at 25; Resp. ¶ 44.

[9] Compl. ¶ 57.

[10] Carter Declaration at 9, *In re Just Energy Grp., Inc.*, No. 21-30823 (MI) (Bankr. S.D. Tex.) [Bankr. Dkt. 3] (noting that Just Energy obtained DIP financing in the Canadian proceedings "sufficient for Just Energy to continue making all payments to ERCOT"), 37 (DIP financing budget); Irving Declaration at 19, *In re Just Energy Grp., Inc.*, No. 21-30823 (MI) (Bankr. S.D. Tex.) [Bankr. Dkt. 5] (Canadian Monitor's report noting that cash flow forecast included "Payment to ERCOT").; Hr'g Tr. at 20 [Bankr. Dkt. 35] ("THE COURT: Yeah. But do I need to authorize

8.      Just Energy asserts that the reservation contained in the Provisional Recognition Order negates both courts' authorizations of the payment: "[A]ny payments made to ERCOT are made subject to all of the Debtors' rights to contest those payments, and all rights to receive a refund or credit as allowed by applicable law."[11] This reservation must be considered in light of the fact that Just Energy indicated that it would seek reimbursement of improper payments under the Protocols and that ERCOT's counsel confirmed that ERCOT would follow the Protocols regarding reimbursement if applicable.[12] As Just Energy knows and the Court may recall, this language was added to the Provisional Recognition Order to address the Court's concern that the payments to ERCOT would be "irrevocable."[13]  To alleviate the Court's concern, Just Energy's counsel advised the Court that the ERCOT Protocols provide the "process for disputing invoices, which Just Energy has done" and "if Just Energy is successful in [its] arguments . . . Section 9.5.6 of the ERCOT protocols specifies that ERCOT shall pay."[14]  When asked by the Court to respond to the statements by Just Energy's counsel, counsel for ERCOT "confirmed that the high-level summary that was provided by [Just Energy's] counsel is correct, and ERCOT will absolutely follow the protocols that are in place for the resettlement of any charges if it's so determined."[15] The reservation language cited by Just Energy was never intended to abrogate the language in the Provisional Recognition Order authorizing the payment to ERCOT and did not do so.

---

this payment to ERCOT? [Just Energy's Counsel]: We are asking you to authorize payment to ERCOT, yes.").

[11] Provisional Recognition Order at 11.

[12] Hr'g Tr. at 29–32 [Bankr. Dkt. 35].

[13] *Id.* at 25.

[14] *Id*. at 29.

[15] *Id*. at 32.

9.      Finally, Just Energy suggests that the transfers were not properly authorized because this Court did not review them under § 363 before authorizing them.[16] This is a new theory of relief not properly before the Court because it is absent from Just Energy's Complaint.[17] The Court should ignore it because "[n]ew factual allegations in briefs are not appropriately considered on a motion to dismiss—[the court's] focus is on the allegations and materials referred to in the complaint itself."[18] In any event, the purported error about which Just Energy complains was caused by Just Energy seeking (and receiving) authorization of the transfers through recognition of a foreign main proceeding order. If any party is bound by § 363(b) in this circumstance,[19] it is the foreign representative, as movant. This new allegation does not go to whether this Court authorized the Transfers, but whether it *should have* authorized the Transfers; the latter is not the proper inquiry under § 549. Moreover, Just Energy cannot state a claim under § 549 against ERCOT challenging the transfers that were authorized by the Canadian court and this Court.[20]

10.     Just Energy has not overcome ERCOT's motion to dismiss Count 1.

---

[16] Resp. ¶ 48.

[17] *See generally* Compl. ¶¶ 83–93 (enumerating bases that the Transfers were not authorized and failing to include lack of review under § 363).

[18] *Wilhite v. Harvey*, 861 F. App'x 588, 591 n.5 (5th Cir. 2021) (per curiam); *see also Trice v. Pearland Indep. Sch. Dist.*, 2020 U.S. Dist. LEXIS 58291, at *5 n.8 (S.D. Tex. Mar. 16, 2020) ("[I]t is wholly inappropriate to use a response to a motion to dismiss to essentially raise a new claim for the first time." (quoting *Diamond Beach Owners Ass'n v. Stuart Dean Co.*, 2018 U.S. Dist. LEXIS 219528, at *4 (S.D. Tex. Dec. 21, 2018)).

[19] 11 U.S.C. §§ 363(b), 1520(a)(3) (together limiting the foreign representative's use of the foreign debtor's property "other than in the ordinary course of business").

[20] Just Energy's assertion that "[i]t cannot be disputed credibly that Just Energy was acting within the ordinary course of business" when it paid ERCOT (*see* Resp. ¶ 48 n.78) is disputed by Michael Carter, Just Energy's Chief Financial Officer. *See* Carter Declaration at 8 [Bankr. Dkt. 3] ("On Friday, March 5, Just Energy made $64.9 million of payments to ERCOT in the *ordinary course*, and expects to make an additional $93.6 million of resettlement payments to ERCOT on Tuesday, March 9.") (emphasis added).

**2.    Count 2 should be dismissed because there is no "estate" and because ERCOT has not filed a proof of claim (formal or informal); Just Energy concedes both these points.**

11.    In Count 2, Just Energy seeks disallowance of an informal proof of claim purportedly filed by ERCOT.[21] ERCOT moves to dismiss this claim on two grounds: (1) it fails as a matter of law because there is no estate and no claims-allowance process in a chapter 15 case, and (2) Just Energy has not adequately pleaded that ERCOT's actions in the bankruptcy case result in (or could result in) the filing of an informal proof of claim.[22]

12.    Just Energy's preliminary argument is that sections not excluded from chapter 15 cases under § 1521(a)(7)[23] are available to it under § 1507.[24] But this is Just Energy's sole response to ERCOT's argument that § 502—claim disallowance—is unavailable in chapter 15 cases.[25] And Just Energy *admits* that there is no estate in the chapter 15 case.[26] As a practical matter, therefore, there is no claims allowance process or discharge of debts in this Court. Instead, as Just Energy put it in a previous filing, it fails to confront: "any and all claims of any kind [a creditor] may have against Just Energy or any of its affiliates must be . . . filed in the CCAA Proceeding (*not in these*

---

[21] Compl. ¶ 96.

[22] Mot. ¶¶ 30–33.

[23] The excluded sections are §§ 522, 544, 545, 547, 548, 550, and 724(a). 11 U.S.C. § 1521(a)(7).

[24] Resp. ¶¶ 35–42.

[25] *Id*. ¶ 52.

[26] *Id*. ¶ 31 ("*The absence of a domestic bankruptcy estate under section 541* does not preclude the Court from exercising jurisdiction . . . ." (emphasis added)). *In re Condor Ins. Ltd.*, 601 F.3d 319, 327 (5th Cir. 2010) (explaining that "in a Chapter 15 ancillary proceeding," "the court is not required to create a separate bankruptcy estate"); *In re British Am. Ins. Co.*, 488 B.R. 205, 222–23 (Bankr. S.D. Fla. 2013) ("In light of the United States court's ancillary role under chapter 15, *there is no estate created here* in a chapter 15 case." (emphasis added)); 8 Collier on Bankruptcy ¶ 1502.01 (16th ed. 2021) ("Commencement of a chapter 15 case does not create an estate.").

*chapter 15 proceedings*).”[27] Because there can be no proof of claim (including an informal proof of claim) for this Court to disallow, Count 2 should be dismissed.

13.     Moreover, Just Energy does not deny that it failed to adequately plead an informal proof of claim.[28] Instead, Just Energy suggests that if Just Energy is successful in this suit, then ERCOT *will* submit a proof of claim, which this Court should disallow.[29] This is an entirely new theory of relief that Just Energy did not plead. Accordingly, it should be rejected.[30] Moreover, as Just Energy's own notice shows, that proof of claim would have to be filed in Canadian Court, not this Chapter 15 case. Just Energy cannot use § 502 claim to vest this Court with jurisdiction over a putative claim that ERCOT *could not* file in this Court in the first place. Finally, any claim to disallow a speculative, unfiled, future claim is plainly unripe.[31]

**3.      Just Energy's turnover claim should be dismissed because the invoices are disputed.**

14.     In Count 3, Just Energy seeks turnover of the Transfers under 11 U.S.C. § 542(a).[32] ERCOT argues that Just Energy's turnover claim fails because it is only appropriate for claims that are fully matured and payable on demand. To state a claim for turnover of property under

---

[27] Notice of Filing of (I) Claims Procedure and Stay Extension Motion, (II) Claims Procedure and Stay Extension Order, and (III) Endorsement in the CCAA Proceedings at 2 [Bankr. Dkt. 135] (emphasis added).

[28] Mot. ¶¶ 32–33.

[29] Resp. ¶ 53.

[30] *Wilhite*, 861 F. App'x at 591 n.5; *Trice*, 2020 U.S. Dist. LEXIS 58291, at *5 n.8.

[31] *Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (quotation marks and citations omitted); *Rosedale Missionary Baptist Church v. New Orleans City*, 641 F.3d 86, 91 (5th Cir. 2011) (unripe claims should be dismissed). Indeed, Just Energy's argument is worse than unripe. It essentially argues that this Court should adjudicate its § 502 claim to induce ERCOT to file a proof of claim, which would give the Court jurisdiction over the § 502 claim.

[32] Compl. ¶¶ 99–101.

§ 542, Just Energy "must allege that transfer of the property has already been avoided"—which it has not—"or that the property is otherwise the *undisputed* property of the bankruptcy estate"—which it is not.[33] Indeed, Just Energy acknowledges throughout its Complaint that ERCOT's invoices are in fact *disputed*.[34]

15.     Just Energy attempts to downplay the significance of authority that stands for the proposition that "the debtor cannot use turnover provisions to . . . demand assets whose title is in dispute."[35] Just Energy relies on *In re MortgageAmerica Corp.*,[36] which decided only one issue: whether § 362 applied to prevent a bank from pursuing its state-court action against the debtor.[37] There was no turnover claim involved.[38] Moreover, Just Energy only partially quotes the relevant sentence and does not otherwise provide the full context on whether a transfer is avoidable or void.[39] Although Just Energy does not articulate how *MortgageAmerica* is relevant to this case,

---

[33] *In re Student Fin. Corp.*, 335 B.R. 539, 554 (D. Del. 2005) (emphasis added).

[34] Compl. ¶ 57 ("The Canadian Court . . . authorized the payment of the *disputed* invoices to ERCOT.") (emphasis added); *id.* ¶ 56 ("Just Energy *disputes* no less than $274 million of these invoiced amounts.") (emphasis added); *id.* ¶ 89 n.44 ("Tr. Hr'g Mar. 9, 2021 . . . 21:15–18 [COURT] I also have a duty, if I'm going to approve at first-day hearings such a large payment in such a disputed situation as you have described . . . that I not make that irrevocable"); *id.* ¶ 55 ("Just Energy requested that the PUCT waive certain ERCOT Protocols to allow Just Energy to delay payment while exercising its rights under the ERCOT Protocols *to dispute* the invoiced payment amounts.") (emphasis added).

[35] *In re ATP Oil & Gas Corp.*, 2015 Bankr. LEXIS 781, at *8 (Bankr. S.D. Tex. Mar. 10, 2015) (quoting *United States v. Inslaw, Inc.*, 932 F.2d 1467, 1472 (D.C. Cir. 1991)); *see also Trefny v. Bear Stearns Sec. Corp.*, 243 B.R. 300, 320 (S.D. Tex. 1999); *In re Satelco, Inc.*, 58 B.R. 781, 786 (Bankr. N.D. Tex. 1986).

[36] Resp. ¶ 59.

[37] 714 F.2d 1266, 1267–68 (5th Cir. 1983).

[38] *See id.*

[39] The complete sentence states: "Under the Texas Act, a transfer in fraud of creditors is *voidable* in the general sense that good title may be passed to a transferee who does not have notice of the fraud, and void in the very limited sense that creditors may otherwise treat the transferred property as though the transfer had never taken place[.]" *Id.* at 1272 (emphasis added and citation omitted).

Just Energy argues that "an avoidable transfer is void."[40] However, an avoidable transfer is not void, but voidable.[41] Second, *MortgageAmerica* derives this "limited" scenario that Just Energy emphasizes from *Texas Sand Co. v. Shield*.[42] In *Texas Sand Co.*, the subject transfers were void because they were the result of fraud. To the extent Just Energy argues that the disputed invoices could be "void," this argument fails because Just Energy does not make any allegation of fraud in its Complaint.[43]

16.     Moreover, Just Energy argues that ERCOT's case law involving breach of contract is "inapposite."[44] But in Just Energy's Complaint and its Response, it asserts that ERCOT's actions were inconsistent with the SFA.[45] Just Energy cannot credibly claim that ERCOT acted inconsistently with the parties' contract and also argue that cases concerning breach of contract claims should be ignored.

17.     Just Energy also makes the argument that the "Transfers remain property of the *estate* subject to Just Energy's standalone claim for turnover."[46] Just Energy, however, acknowledges that "there is no federally-created 'estate' in chapter 15."[47] Moreover, Just Energy argues that it has brought a standalone claim for turnover, not an "ancillary claim." But like the

---

[40] Resp. ¶ 59 (quotations omitted).

[41] *In re Harris*, 2016 Bankr. LEXIS 3782, *7 (Bankr. S.D. Tex. Oct. 20, 2016) (citing *In re Adelphia Recovery Tr.*, 634 F.3d 678, 691 (2d Cir. 2011) ("A fraudulent transfer is not void, but voidable[.]")).

[42] *Tex. Sand Co. v. Shield*, 381 S.W.2d 48, 55 (Tex. 1964).

[43] *See generally* Compl.

[44] Resp. ¶ 61.

[45] Compl. ¶¶ 5, 12; Resp. ¶ 25.

[46] Resp. ¶ 60 (emphasis added).

[47] *Id.* ¶ 60 n.85.

case that Just Energy cites to,[48] that proposition is not applicable in this case because Just Energy's turnover claim *is* ancillary to its disallowance claim under § 502.[49] Regardless, this Court has already observed that if Just Energy is entitled to judgment, it has "no intention of telling [ERCOT] what to do to pay that judgment."[50] Accordingly, Count 3 is an inappropriate use of § 542.

18.      Lastly, Just Energy argues that dismissal is unwarranted at this early stage. This argument is meritless. On its face, Count 3 of Just Energy's Complaint does not state a plausible claim, and dismissal is therefore warranted.[51]

**4.      Count 4 should be dismissed because there is no estate.**

19.      Count 4 is a claim for setoff under 11 U.S.C. §§ 553 or 558. Just Energy argues that § 553 applies in a chapter 15 case but fails to address the fact that both 11 U.S.C. §§ 553 and 558 pertain to *estates.* There is no estate in this chapter 15 proceeding. Just Energy admits this. Without an estate in this proceeding, Just Energy cannot pursue its hypothetical relief for a setoff. Count 4 should be dismissed.

20.      In the event Just Energy is successful in disputing the ERCOT invoices (whether in this Court or in state court), Section 9 of the Protocols provides the process by which Just Energy will be paid.  By attempting to invoke a remedy not provided in the Protocols, Just Energy is seeking relief that will cause it to be in breach of the Protocols and the SFA.

---

[48] *See In re Abell,* 549 B.R. 631, 653 (Bankr. D. Md. 2016).

[49] *See In re Reuter,* 499 B.R. 655, 669 (Bankr. W.D. Mo. 2013) (dismissing because "the turnover claim is ancillary relief to the declaratory judgment claim").

[50] Hr'g Tr. Jan. 14, 2022 at 8.

[51] *In re CLK Energy Partners, LLC*, 2011 Bankr. LEXIS 5806, *10, *27 (Bankr. W.D La. Mar. 31, 2011) (dismissing a turnover action because "there was no debt that was property of the estate as of the commencement of this case that was matured[] [or] payable on demand");  *In re Patriot Coal Corp.*, 562 B.R. 632, 648 (Bankr. E. Va. 2016) (dismissing a turnover action because it "is, at best, premature").

**5.** **Count 5 should be dismissed because Just Energy cannot cure its pleading deficiencies in its response to the motion to dismiss.**

21.     Count 5 is a claim purportedly seeking avoidance of the Transfers under the CCAA.[52] Rather than address why its Complaint states a claim under the CCAA, Just Energy now states that it is entitled to relief under the BIA—a statute not cited in Just Energy's Complaint, but which Just Energy now says is incorporated into the CCAA.[53] By using its response to try to plead a BIA violation, Just Energy effectively admits that its Complaint—which did not even allege a violation of the BIA, let alone of the specific BIA provisions Just Energy now cites—was inadequate.[54] Just Energy cannot cure its pleading deficiencies in response to a motion to dismiss.[55] The Complaint must satisfy Federal Rule of Civil Procedure 8; it does not. Even crediting Just Energy's BIA argument, Count 5 does not squarely allege the purported elements of a BIA claim.[56] Count 5 should be dismissed.[57]

**B.** **The Court should abstain from deciding Just Energy's claims.**

22.     Although Just Energy does not bring (and, in fact, disclaims) any causes of action under the APA or PURA,[58] Just Energy repeatedly argues that the PUCT Orders are illegal under

---

[52] Compl. ¶¶ 108–14.

[53] Resp. ¶ 67.

[54] *See generally* Compl.

[55] *Wilhite*, 861 F. App'x at 591 n.5; *Trice*, 2020 U.S. Dist. LEXIS 58291, at *5 n.8.

[56] *Compare* Resp. ¶ 67 *with* Compl. ¶¶ 108–114. Just Energy's new BIA allegations suggest that Just Energy attempts to raise a fraud claim under the BIA. *See* Resp. ¶ 67. But Just Energy comes nowhere close in the Complaint—or in the Response—to meeting the particularity requirements of pleading fraud under Rule 9.

[57] Also unclear from the Complaint is what specific prepetition transfers Just Energy seeks to avoid, including which entity among the group of plaintiffs made those transfers. Just Energy's Complaint should be dismissed for this reason.

[58] Resp. ¶ 5.

the APA and under PURA.[59] *Burford v Sun Oil Co.* directs that the Court abstain from deciding these claims.

### 1.   *Burford* **abstention applies.**

23.   Secion 1334 does not supersede judicial abstention doctrines. Just Energy's suggestion that *Burford*—which binds *all* federal courts[60]—does not apply here is unsound.

24.   This conclusion is required by *Wilson v. Valley Electric Membership Corp.*, a Fifth Circuit's decision affirming *Burford* abstention, in a case arising under bankruptcy jurisdiction.[61] Just Energy attempts to mitigate this dispositive fact by stating that the bankruptcy in *Wilson* was "remote" to the abstention decision.[62] Not so. One of the defendant's chapter 11 reorganization was the sole basis for federal jurisdiction.[63] The district court abstained under *Burford*—not § 1334(c)(1)[64]—and the Fifth Circuit affirmed without mentioning § 1334(c)(1). *Wilson* thus stands for the unmistakable proposition that a court exercising jurisdiction under the Bankruptcy Code is nevertheless bound by the Supreme Court's decision in *Burford*.

### 2.   *Burford* **abstention is required.**

25.   ERCOT has demonstrated that each element of *Burford* is met, and Just Energy's response does not affect this conclusion. In fact, Just Energy concedes at least two elements of the *Burford* analysis.

---

[59] *E.g.*, Resp. ¶¶ 14, 24.

[60] *Quackenbush v. Allstate Ins. Co*., 517 U.S. 706, 730 (1996).

[61] 8 F.3d 311, 313 (5th Cir. 1993).

[62] Resp. ¶ 74.

[63] *Wilson*, 8 F.3d at 313.

[64] The district court mentioned § 1334(c)(1) in passing, as additional support for the lack of non-bankruptcy federal jurisdiction; the court did not purport to abstain under that statute, but relied exclusively on *Burford* itself. *Wilson v. Valley Elec. Membership Corp.*, No. 89-4846, 1992 WL 233769, at *4-6 & n.19 (E.D. La. Aug. 24, 1992).

26.     First, as ERCOT explains in the Motion, Just Energy's causes of action arise under state law: they attack the PUCT Orders and ERCOT's compliance with those Orders, the Protocols, and the SFA. Each of these attacks arises entirely under Texas's complex regulatory regime governing electric utilities. Just Energy argues that the regulatory regime implicated here is not "the kind of traditional regulatory regime that typically triggers Burford [sic] abstention, but more a deregulated market-based system."[65] This argument is tortured logic. While Texas has deregulated certain aspects of the electricity industry in Texas, the questions implicated by Just Energy's Complaint dig deeply into a pervasive regulatory scheme[66]—and even seek to diminish the PUCT's authority over that scheme. Moreover, the Supreme Court calls utility regulation generally "one of the most important of the functions traditionally associated with the police power of the States."[67] In any event, *Burford* asks whether the cause of action arises under state law or must be untangled from a skein of state law in order to be resolved.[68] And Just Energy *concedes* that its causes of action arise under state law: *e.g.*, "Similarly, ERCOT's invoices find no support under, and are inconsistent with the SFA[.]"[69]

27.     Second, ERCOT has established that the issues of state law are unsettled, requiring inquiry into the interplay between the ERCOT Protocols, PUCT rules and PUCT Orders, and the APA and PURA. No court has previously adjudicated these questions. Just Energy does not dispute this. In fact, Just Energy again concedes an element of the *Burford* analysis: "The Court is perfectly

---

[65] Resp. ¶ 72.

[66] *ERCOT v. CPS Energy*, No. 04-21-00242-CV, 2021 WL 5879183, at *9 (Tex. App.—San Antonio Dec. 13, 2021, pet. filed) (holding that similar challenge to ERCOT's conduct during Winter Storm Uri was within the PUCT's exclusive jurisdiction).

[67] *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 365 (1989).

[68] *Wilson*, 8 F.3d at 314.

[69] Resp. ¶ 25.

capable of *making an Erie guess*" as to what Texas's "supreme court *might* conclude" in this case.[70]

28.    Third, Texas needs a coherent policy regarding its electricity grid and market. Just Energy ignores the fact that other market participants' challenges to the PUCT Orders are already being heard in state trial and appellate courts.[71] The state courts "need[] neither [this Court's] harmonious nor disharmonious notes" on the questions before them.[72] But if this Court were to rule differently than those state courts, ERCOT and the PUCT would be in the impossible position of attempting to comply with contradictory rulings by state and federal courts. *Burford* requires abstention in just that situation.[73] And, notably, principles of res judicata and estoppel do not enter the Burford equation.  Enforceability of a federal order against parties (or non-parties) is not the calculus; harmonious state regulatory and police power rule-making require abstention in this matter.

29.    Finally, Texas *has* established special state fora for judicial review of disputes like this one. Any challenge to the PUCT Orders must be filed in either the state district court in Travis

---

[70] Resp. ¶ 4 (emphasis added); *see Guilbeau v. Hess Corp.*, 854 F.3d 310, 311 (5th Cir. 2017) ("When, as here, the state's highest court *has not decided an issue*, this court must make an '*Erie* guess' as to how the state supreme court would decide the issue." (emphasis added)).

[71] *See Exelon Generation Co. v. PUC*, No. D-1-GN-21-001772 (Tex. Dist. Ct., Travis Cnty. filed Apr. 19, 2021); *Luminant Energy Co. v. PUC*, No. 03-21-00098-CV (Tex. App.—Austin filed March 2, 2021); *see also* Luminant Br. [Dkt. 74] at 2 ("Luminant currently is challenging pricing during Winter Storm Uri, including challenging the price-increase rule issued by the PUCT during that period."). In fact, Just Energy makes the bold statement that "there is no state court proceeding to which the Court can defer." Resp. ¶ 73. This is false. In any event, *Burford* does not require pending state court litigation; it only requires that timely and adequate state court review be available. *See Sierra Club v. City of San Antonio*, 112 F.3d 789, 797 (5th Cir. 1997).

[72] *Wilson*, 8 F.3d at 316.

[73] *Id.*

County or the Third Court of Appeals based in Austin.[74] There are pending challenges to the PUCT

Orders in both fora.[75]

30.     The Court should abstain under *Burford*.

**3.     Primary Jurisdiction should apply.**

31.     Primary jurisdiction is a judicially created doctrine whereby a court of competent

jurisdiction may dismiss or stay an action pending a resolution of some portion of the action by an

administrative agency."[76] Pursuant to that doctrine, the court should stay its proceedings while

the challenges to the ERCOT invoices work their way through the administrative process and the

challenge to the validity of the PUCT's orders is resolved in state court.[77] The stay should remain

in place until the administrative proceedings and prescribed judicial avenues of review have been

exhausted.[78]

---

[74] *See* TEX. GOV'T CODE § 2001.176(b)(1); TEX. UTIL. CODE §§ 11.007(a), 15.001 (together, permitting judicial review of PUCT Orders in Travis County district court); *see also* TEX. UTIL. CODE § 39.001(e) (providing that a "competition rule" must be challenged directly in the Third Court of Appeals).

[75] *See Exelon Generation Co. v. PUC*, No. D-1-GN-21-001772 (Tex. Dist. Ct., Travis Cnty. filed Apr. 19, 2021); *Luminant Energy Co. v. PUC*, No. 03-21-00098-CV (Tex. App.—Austin filed Mar. 2, 2021); *see also* Luminant Br. [Dkt. 74].

[76] *Wagner & Brown v. ANR Pipeline Co.*, 837 F.2d 199, 201 (5th Cir. 1988).

[77] While Just Energy is not a party to the concurrent litigation, there is nothing to suggest that such absence is a prerequisite for applying the primary jurisdiction doctrine. *See Luskin's Inc. v. Consumer Protection Div.,* 338 Md. 188, 197 (Md. 1995). (holding that an agency's participation in a court proceeding, whether initiated by another party or the agency itself, is not a bar to applying the primary jurisdiction doctrine).

[78] *See Penny v. Southwestern Bell Telephone Co.*, 906 F.2d 183 (5th Cir. 1990) (recognizing the primary jurisdiction of the PUC over a claim and directing the district court to hold its case in abeyance until the PUC had made its determination); *see also Kibbie v. Killington/pico Ski Resort, Ltd*, 5:16-CV-247, 2017 WL 237618, at *3-*4 (D. Vt. Jan. 18, 2017) (primary jurisdiction applied and the district court case was stayed until the appeal of Vermont Department of Labor proceedings to the Vermont Superior Court had concluded because a simultaneous proceeding in the district court risked inconsistent rulings).

C.     **ERCOT is immune from suit.**

1.     **ERCOT is entitled to Eleventh Amendment immunity.**

32.     Whether an entity is entitled to Eleventh Amendment immunity depends on a six-factor test articulated by the Fifth Circuit. Whether an entity qualifies as a "governmental unit" under the Texas Tort Claims Act's particular definition is "not probative of" its Eleventh Amendment immunity.[79] Yet Just Energy focuses most of its attention arguing that ERCOT is not a "governmental unit" under that definition, while barely addressing the Fifth Circuit's test. In any event, the most recent and best-reasoned appellate decision holds that ERCOT *is* a governmental unit and specifically rejects the analysis of the decision on which Just Energy relies.[80] And Just Energy never acknowledges an opinion holding that ERCOT shares Texas's sovereign immunity—a holding of greater relevance to (albeit not dispositive of) the Eleventh Amendment question.[81]

33.     Just Energy does not address—and thus does not dispute that ERCOT meets—most of the Fifth Circuit's criteria[82] for Eleventh Amendment immunity. Just Energy thus concedes that:

- ERCOT exercises sovereign rulemaking power and regulates participants in the State's electric grid and market;

---

[79] *Williams v. Dall. Area Rapid Transit*, 242 F.3d 315, 319 (5th Cir. 2001).

[80] *See ERCOT v. CPS Energy*, --- S.W.3d ---, 2021 Tex. App. LEXIS 9842, at *14–15 (Tex. App.—San Antonio, no pet. h.) (declining to follow *HWY 3 MHP, LLC v. ERCOT*, 462 S.W.3d 204 (Tex. App.—Austin 2015, no pet.)).

[81] *In re ERCOT*, 552 S.W.3d 297, 315 (Tex. App.—Dallas 2018), *mand. denied sub nom.*, *In re Panda Power Generation Infrastructure Fund, LLC*, 619 S.W.3d 628 (Tex. 2020). As Just Energy correctly points out, these questions have not been—but are likely soon to be—decided by the Supreme Court of Texas. Thus, any indeterminacy regarding ERCOT's governmental status only further militates in favor of allowing Texas fora to decide the substantive issues presented by Just Energy's claims.

[82] *See Sw. Bell Tel. Co. v. City of El Paso*, 243 F.3d 936, 938 (5th Cir. 2001).

- ERCOT has been designated a "state agency" for certain purposes;[83]

- ERCOT is governed by a state-selected board subject to conflict-of-interest and anti-lobbying statutes;

- State officials are *ex officio* members of ERCOT's governing board;

- ERCOT officials serve *ex officio* on numerous state instrumentalities; and

- the State has ultimate authority over ERCOT's property and assets.

34.     The only factor Just Energy seriously contests is whether ERCOT is funded by the State, and even here its arguments fall flat. Just Energy does not dispute that the system administration fee is a regulatory fee "collected pursuant to the State's power" and "intended to further a function for the benefit of the public."[84] This is unlike "private electric utilities,"[85] which are funded not by regulatory fees but by rates determined as a matter of private contract[86]—rates that finance fundamentally non-governmental functions.[87] Just Energy is also mistaken in drawing equivalence between the PUCT's authority over ERCOT's finances and a private utility's.[88] ERCOT cannot raise revenue or spend a penny without the PUCT's express permission, and the

---

[83] Just Energy asserts that the Legislature's designation of ERCOT as an "independent organization" is "evidence that [the Legislature] did not intend ERCOT to be an arm of the state." Resp. ¶ 92. But this phrase defines ERCOT's relationship to *market participants*, not the State. *See* TEX. UTIL. CODE § 39.151(b) (defining this phrase to require "indenden[ce from] any producer or seller of electricity"). Vis-à-vis the State, ERCOT is "essential," exercises its plenary power, and is subject to the State's plenary control—hardly independent. *Id.* §§ 39.151(d), (f).

[84] *ERCOT*, 552 S.W.3d at 315.

[85] Resp. ¶ 93.

[86] 73B C.J.S. *Public Utilities* § 23 (2021) (A utility's "right to prescribe rates for" its services "belongs to the utility itself."); *Sw. Bell Tel. Co. v. Hous. Indep. Sch. Dist.*, 397 S.W.2d 419, 422 (Tex. 1965); *see also City of Corpus Christi v. PUCT*, 51 S.W.3d 231, 254 (Tex. 2001) (holding that utility rates are merely the price "paid by consumers for the power the consume").

[87] Even when performed by a governmental entity, the provision of utility service is deemed non-governmental. TEX. CIV. PRAC. & REM. CODE § 101.0215(b)(1).

[88] Resp. ¶ 93.

Legislature routinely appropriates "ERCOT's" fee revenue and commandeers its assets, which belong ultimately to the State itself.[89] Moreover, the State controls ERCOT directly by choosing its governing board. These facts are not true of any other putatively private company.

35.     In short, State power finances ERCOT and State power controls all of ERCOT's expenditures. This reality weighs heavily in favor of Eleventh Amendment immunity.

**2.     Just Energy fails to show that ERCOT's immunity has been waived.**

**a.     Just Energy fails to show that *Katz*'s waiver of immunity applies in a Chapter 15 proceeding.**

36.     Just Energy sums up its immunity argument[90] with this quote from the Fifth Circuit's decision in *In re Soileau*:

> Whatever uncertainty there may be as to the outer limits of the holdings of *Katz* and *Hood*, at the very least they together establish beyond cavil that *an* in rem *bankruptcy proceeding brought merely to obtain the discharge* [*of*] *a debt or debts* by determining the rights of various creditors *in a debtor's estate* . . . in no way infringes the sovereignty of the state *as a creditor*.[91]

37.     But far from establishing that ERCOT's immunity has been waived, this quote establishes why it has not been. Just Energy has not brought in this Court "an *in rem* bankruptcy proceeding . . . *to obtain the discharge of a debt*."[92] This is because a Chapter 15 proceeding does not involve the creation of an estate, the allowance or disallowance of claims, or—most important—the discharge of debts. It is, instead, an ancillary proceeding that provides assistance

---

[89] TEX. UTIL. CODE §§ 39.151(d), (d-1), (e); *id.* §§ 38.202(d), 39.1515(c), 39.1516(c).

[90] Just Energy bears the burden of showing that ERCOT's immunity is waived. *Bach v. Tex. State Univ.*, 614 F. App'x 789, 790 (5th Cir. 2015) (per curiam) (citing *St. Tammany Parish ex rel. Davis v. FEMA*, 556 F.3 307, 315 (5th Cir. 2009)).

[91] 488 F.3d 302, 307 (5th Cir. 2007) (emphasis added).

[92] *Id.* (second emphasis added).

to a foreign case that may or may not possess those "[c]ritical features of *every* bankruptcy proceeding."[93]

38.     It is because this Chapter 15 case lacks these "critical features" that ERCOT argued that Chapter 15 is not a "bankruptcy law" to which the Bankruptcy Clause's waiver of immunity applies. Just Energy makes no real effort to contest this fact: it acknowledges that no estate is created in a Chapter 15 proceeding,[94] and it does not dispute that this Court cannot discharge its debts. Indeed, Just Energy concedes that its Chapter 15 case is merely "ancillary to a *foreign court's* distribution of assets."[95] At most, Just Energy suggests that this Court may exercise *in rem* jurisdiction over *some* of its property[96]—but not "*all*" of its property, as *Katz* requires and as is true under Chapters 7 or 11.[97] For this reason, a Chapter 15 case "*is not* an independent *in rem* proceeding" in the manner of a plenary bankruptcy case.[98] Because Chapter 15 is not a bankruptcy law, ERCOT's immunity is intact.

39.     Relatedly, ERCOT's immunity is not waived because, in ratifying the Bankruptcy Clause, the states could not have knowingly waived their immunity from ancillary proceedings in aid of foreign insolvency cases. *Katz* held that the states had agreed to "subordinate" their sovereignty in "a limited sphere" of bankruptcy proceedings.[99] The states "would have understood" ratification to have abrogated their immunity from avoidance actions because such

---

[93] *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363 (emphasis added).

[94] Resp. ¶ 60 n.85.

[95] *Id.* ¶ 86 (emphasis added).

[96] *Id.* (citing 11 U.S.C. § 1521(b)).

[97] 546 U.S. at 363 (emphasis added); *see* 11 U.S.C. §§ 701, et seq., 1101, et seq..

[98] *In re Millenium Glob. Emerging Credit Master Fund Ltd.*, 471 B.R. 342, 347 (Bankr. S.D.N.Y. 2012) (first emphasis added); *see also In re JSC BTA Bank*, 434 B.R. 334, 345 (Bankr. S.D.N.Y. 2010) (referring to a bankruptcy court's *in rem* jurisdiction in a Chapter 15 case as "limited").

[99] 546 U.S. at 377.

claims had "been a core aspect of the administration of bankrupt estates since at least the 18th century."[100] Thus, while *Katz* may not be limited to "the precise bankruptcy procedures in place at the Founding,"[101] it *is* limited to that substantive class of proceedings that the states would have "understood" themselves to be subject to at the time of ratification, i.e., cases bearing the "[c]ritical features of every bankruptcy proceeding" and proceedings arising in or related to such a case.[102]

40.     Just Energy concedes that the Chapter 15 case in which its adversary claims are brought lacks these critical features. The entire case, including its adversary claims, are instead "ancillary to a foreign court's distribution of assets," i.e., a foreign insolvency proceeding.[103] But Just Energy does not even try to show that the states agreed to waive their immunity from *foreign* bankruptcy proceedings when they ratified the Bankruptcy Clause. Indeed, ancillary proceedings like this case were totally unknown at the time of founding and remained so for two centuries. They cannot have been encompassed within the states' consensual waiver of immunity.

41.     Ultimately, Just Energy's insistence that its claims are "functionally similar" to those at issue in *Katz* ignores entirely the fundamental nature of Chapter 15 cases, which do not bear *any* of the "critical features" of a bankruptcy case and provide a form of relief to foreign debtors that was totally unknown at the time of the founding. Because Chapter 15 is not a bankruptcy law—and because, even if it were, it would fall outside *Katz*—ERCOT's immunity is not waived by the Bankruptcy Clause.

---

[100] *Id.* at 372.

[101] Resp. ¶ 86.

[102] *Katz*, 546 U.S. at 372, 363.

[103] Resp. ¶ 86.

> **b.    Just Energy's § 106(a) argument asks this Court to ignore the statute's text.**

42.    Section 106(a) cannot waive ERCOT's immunity because it is unconstitutional[104]—a point Just Energy neither acknowledges nor disputes. Moreover, to the extent this subdivision is constitutional, § 106(b)'s plain text makes it inapplicable. The provision waives ERCOT's immunity *only if* ERCOT "has filed a proof of claim in the case."[105] Just Energy acknowledges that ERCOT has not filed a claim, but it argues that § 106 nevertheless waives ERCOT's immunity because ERCOT's conduct satisfies what Just Energy believes to be the purpose of the filed-claim clause.[106] But it is the statute's text that controls.[107] Because that text is clear, ERCOT's immunity is intact.

43.    Just Energy also relies for the first time on § 106(c), which provides: "Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit *that is property of the estate*."[108] By its plain text, this provision is inapplicable because there is no estate and, therefore, Just Energy's claims against ERCOT are not "property of the estate."

44.    In any event, Just Energy's assertion that § 106(c) does not depend on the governmental entity's filing of a claim is mistaken. Section 106(c) is a companion to § 106(b),

---

[104] *In re Fernandez*, 123 F.3d 241, 242 (5th Cir. 1997).

[105] 11 U.S.C. § 106(b) (emphasis added).

[106] Resp. ¶ 87.

[107] "[V]ague notions of a statute's basic purpose are inadequate to overcome the words of its text regarding the *specific* issue under consideration." *United States v. Koutsostamatis*, 956 F.3d 301, 311 (5th Cir. 2020) (quotations omitted); *see also Tex. Clinical Lab'ys, Inc. v. Sebelius*, 612 F.3d 771, 778 n.2 (5th Cir. 2010) ("In cases where Congress has provided a limited waiver of sovereign immunity not only must that waiver be strictly construed but it must, in fact, be construed in favor of the sovereign.").

[108] 11 U.S.C. § 106(c) (emphasis added).

which broadly waives a governmental entity's sovereign immunity as to counterclaims compulsory to the governmental entity's own claim.[109] Section 106(c) allows "permissive counterclaims *to governmental claims* capped by a setoff limitation[.]"[110] Further, § 106(c) is not "a freestanding waiver of substantive sovereign immunity" at all.[111] Instead, it "vest[s] the bankruptcy courts with jurisdiction" to hear claims for which the entity's "substantive sovereign immunity" has been otherwise waived.[112] Here, there is no such waiver.

45.     Finally, both the Fifth Circuit and Just Energy's own cases—*Orion Refining* and *Microage*[113]—limit any waiver of immunity to circumstances in which the governmental unit (or a "separate but related governmental unit") has filed a proof of claim.[114] Because ERCOT has not filed a claim against Just Energy, there would be nothing to offset in any event.[115]

---

[109] *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 254 (5th Cir. 2006) (en banc) (citing *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 34 (1992)).

[110] *Id.* (citing *Nordic Vill.*, 503 U.S. at 34) (emphasis added).

[111] *Id.* at 256.

[112] *Id.* at 255–56; *accord id.* at 257 (Higginbotham, J., concurring and explaining that the majority held that "section 106(c) is a waiver only of 'forum immunity'").

[113] *See* Resp. ¶ 88.

[114] *Supreme Beef*, 468 F.3d at 256; *id.* at 254 (holding that § 106(c) applies to "permissive counterclaims to governmental claims capped by a setoff limitation"); *accord In re Orion Ref. Corp.*, No. 03-11483, 2004 Bankr. LEXIS 2312, at *11–12 (Bankr. M.D. La. May 28, 2004) ("[T]he Eleventh Amendment permits courts to construe a state's proof of claim as a waiver of sovereign immunity even as to a permissive counterclaim against a governmental unit different from the one filing the proof of claim, as long as the counterclaim is limited to setoff."); *In re Microage Corp.*, 288 B.R. 842, 852–53 (Bankr. D. Ariz. 2003) ("Section 106(c) permits the estate to setoff against the allowed claim of the governmental unit any claim that the debtors have against the governmental unit. . . . [A] State waives immunity with respect to setoffs, pursuant to subsection (c), *when it files a proof of claim.*" (emphasis added)); *see also In re Charter Oaks Assocs.*, 361 F.3d 760, 769 (2d Cir. 2004) (holding that § 106(c)'s waiver of immunity applies only once the governmental unit files a proof of claim).

[115] *Orion Ref.*, 2004 Bankr. LEXIS 2312, at *12 ("[A]ffirmative recovery is not available under § 106(c) and setoff is permitted only to the extent of the governmental unit's claim."); *Microage Corp.*, 288 B.R. at 852 (same).

**3.     Just Energy abandons its reliance on the Texas Administrative Procedures Act's waiver of immunity.**

46.     In its adversary complaint, Just Energy asserted that ERCOT's immunity was waived by the APA. ERCOT explained why the APA's waiver does not apply in federal court, does not apply to Just Energy's claims, and, indeed, does not apply to ERCOT at all. Just Energy's response does not address the Texas APA's immunity waiver, which Just Energy must therefore be deemed to have abandoned.

**D.     If the PUCT is dismissed from this suit on any ground, the Court must dismiss the whole case because the PUCT is indispensable.**

47.     A person is necessary to be joined to a suit if either the absence of the person will impair that person's ability to protect its interest relating to the subject matter of the action or that person's absence will leave an existing party subject to a substantial risk of incurring "multiple, or otherwise inconsistent obligations."[116]

48.     A party is necessary if the judgment would "effectively preclude [the nonparty] from enforcing its rights" and its rights would be "injuriously affected."[117] Stated another way, a party is necessary if "the party faces prejudice through a disposition in its absence."[118] Here, Just Energy has attacked the legality of the PUCT Orders.[119] Because the PUCT issued these Orders,[120] this attack directly implicates the PUCT's authority to take the actions that it did during the Storm.

---

[116] FED. R. CIV. P. 19(a)(1)(B).

[117] *See HS Res.*, 327 F.3d at 439 (citing *Hilton v. Atlantic Refining Co.*, 327 F.2d 217, 219 (5th Cir. 1964)).

[118] *Texas v. Ysleta del Sur Pueblo*, 2018 U.S. Dist. LEXIS 223055, at *17 (W.D. Tex. Aug. 27, 2018).

[119] *E.g.*, Resp. ¶¶ 14, 24.

[120] *Id.* ¶ 14.

49.     Additionally, putting aside the direct attack on the legality of the orders, any ruling here regarding the price of energy reflected in the Transfers would affect the PUCT's ability and authority to carry out the regulatory scheme established by PURA. Absent the PUCT, ERCOT will be exposed to multiple or inconsistent obligations related to the rates the PUCT set and that ERCOT must collect resulting from Winter Storm Uri, as well as ERCOT's statutorily mandated task of carrying out the PUCT's requirements and exercising the authority which the PUCT delegates to ERCOT. A ruling by this Court to alter the prices set pursuant to the PUCT Orders would require ERCOT to act in contravention to the PUCT. But this Court's ruling cannot be controlling over the PUCT if the PUCT is dismissed.

### III.  CONCLUSION

50.     ERCOT respectfully requests the Court grant its Motion to Dismiss and for Abstention.

Dated: January 31, 2022                              Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: _/s/ Jamil N. Alibhai_
     Kevin M. Lippman
     Texas Bar No. 00784479
     klippman@munsch.com
     Deborah Perry
     Texas Bar No. 24002755
     dperry@munsch.com
     John Cornwell
     Texas Bar No. 24050450
     jcornwell@munsch.com
     Jamil N. Alibhai
     Texas Bar No. 00793248
     jalibhai@munsch.com
     Ross H. Parker
     Texas Bar No. 24007804
     rparker@munsch.com

     3800 Ross Tower
     500 N. Akard Street
     Dallas, Texas 75201-6659
     Telephone: (214) 855-7500
     Facsimile: (214) 855-7584

     **WINSTEAD PC**
     Elliot Clark
     Texas Bar No. 24012428
     eclark@winstead.com
     Ron H. Moss (*pro hac vice motion to be filed*)
     Texas Bar No. 14591025
     rhmoss@winstead.com
     401 Congress Avenue, Suite 2100
     Austin, Texas 78701
     Telephone: (512) 370-2800
     Facsimile: (512) 370-2850

     **COUNSEL FOR DEFENDANT**
     **ELECTRIC RELIABILITY COUNCIL OF**
     **TEXAS, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 31, 2022, I caused a copy of the foregoing document to be served via CM/ECF on all counsel of record.


<u>*/s/ Jamil N. Alibhai*</u>
Jamil N. Alibhai