## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>JUST ENERGY GROUP INC., *et al.*,<br><br>Debtors in a Foreign Proceeding.[1] | Chapter 15<br><br>Case No. 21-30823 (MI) |
| JUST ENERGY TEXAS LP, FULCRUM RETAIL ENERGY LLC, HUDSON SERVICES LLC, and JUST ENERGY GROUP, INC.,<br><br>                         Plaintiffs,<br><br>     v.<br><br>ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC. and the PUBLIC UTILITY COMMISSION OF TEXAS, INC.,<br><br>                         Defendants. | Adv. Proc. No. 21-4399 |

## DEFENDANT THE PUBLIC UTILITY COMMISSION OF TEXAS'S REPLY TO OMNIBUS OBJECTION TO MOTIONS TO DISMISS
### *(Applies to Docket Nos. 1, 28, and 70)*

**TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:**

Defendant Public Utility Commission of Texas (the "PUCT"), subject to its claim of sovereign immunity, hereby files its reply (the "Reply") to the *Omnibus Objection of Just Energy Texas LP, Fulcrum Retail Energy LLP, Hudson Energy Services LLC, and Just Energy Group Inc. to . . . (2) Defendant Public Utility Commission of Texas's Motion to Dismiss Complaint, or Alternatively, for Abstention and Memorandum in Support Thereof* (the "Objection") [Doc. No. 70] (the "Objection"). In support of its Motion to Dismiss,[2] the PUCT respectfully states as follows:

---

[1] The identifying four digits of Just Energy Group Inc.'s local Canada tax identification number are 0469. A complete list of debtor entities in these chapter 15 cases may be obtained at www.omniagentsolutions.com/justenergy.

[2] Capitalized terms used herein shall have the meaning assigned to such terms in the PUCT's Motion to Dismiss [Doc. No. 28] (the "Motion to Dismiss").

## INTRODUCTION

1.       The Objection relies on a faulty premise—that the Complaint asserts only substantive bankruptcy claims. In actuality, the Complaint asserts only one substantive bankruptcy claim—avoidance of allegedly "unauthorized" post-petition transfers—and then asserts three additional causes of action that, while requesting relief based on provisions in the Bankruptcy Code, rely entirely on *unpled* state law claims.

2.       Each of counts *pled* against the PUCT must be dismissed under Federal Rule 12(b)(6). There are no allegations in the Complaint supporting any inference that the PUCT holds or asserts claims against the Plaintiffs, that the PUCT received any of the Transfers, or that the PUCT has custody or control over any of the Transfers. This alone requires dismissal of the Plaintiffs' claims for avoidance, claim disallowance, turnover, and setoff.[3]

3.       Dismissal of the PUCT, however, is complicated by the Plaintiffs' *unpled* state law claims seeking to invalidate the PUCT's Orders under state law and challenge ERCOT's response to those Orders. These state law claims are not "incidental" to the claims pled in the Complaint as the Plaintiffs allege; instead, these unpled claims are the basis for most of the relief requested in the Complaint. This creative pleading is nothing more than the Plaintiffs' attempt to have their cake and eat it too. On one hand, when addressing subject matter jurisdiction, the Plaintiffs argue that the Complaint does not challenge the PUCT's administrative action or assert any state law claims.[4] On the other hand, when seeking relief, they argue that the Orders were illegal or invalid and that ERCOT's response to the Orders was improper under state law.[5]

---

[3] The Motion to Dismiss contains several additional grounds for dismissal of these causes of action.

[4] *See, e.g.*, Objection ¶¶ 2 ("Just Energy seeks only a determination that the particular payments were unlawful under the Bankruptcy Code."); 5 ("Just Energy has brought bankruptcy claims—not APA or PURA claims . . . ."), 33 ("[T]his case does not challenge administrative action."), 61 ("[B]ecause this dispute involves bankruptcy claims, cases where breach of contract is claimed are inapposite."), 61 n.86  ("Just Energy *is not* seeking declaratory relief . . . .").

[5] *See, e.g.,* Objection ¶¶ 10 (alleging ERCOT "used outsized leverage to coerce full payment of invoices that are unsupportable under state law;" the Defendants "violated governing legal standards"), 15 (asserting that enactment of

4.      Because the claims pled in the Complaint cannot be resolved without deciding the underlying unpled state law claims, this Court must dismiss the entire proceeding.[6] The PUCT is a necessary and indispensable party to any proceeding on these state law claims, but adjudication of those underlying claims in this Court is barred by sovereign immunity and violates the PUCT's exclusive jurisdiction over disputes regarding utility rates, operations, and services, as well as disputes between ERCOT and Market Participants, subject to judicial review in state court.

5.      If this Court does not dismiss the Complaint, it should either abstain under the *Burford* doctrine or abate this proceeding based on the principles of exclusive or primary jurisdiction to allow the state administrative process to conclude as to the state law issues before considering whether the Plaintiff is entitled to the bankruptcy remedies requested in the Complaint.

## REPLY

**A.      The Complaint Must be Dismissed Under Federal Rule 12(b)(6) for Failure to State a Claim Against the PUCT.**

   i.      <u>The Plaintiffs fail to plead that the PUCT received the Transfers, had custody or control over the Transfers, or asserted a claim in the Chapter 15 Case.</u>

6.      The Plaintiffs' argument that the PUCT's regulatory oversight and control over ERCOT equates to the PUCT having "control" over the Transfers does not hold water. *See*

---

the Orders was "illegal" and the PUCT "had no authority" to take such action), 19 (alleging ERCOT "violated both ERCOT's preexisting rules and the PUCT Orders"), 24 ("[Defendants] did not follow the statutorily-prescribed rule-making procedures . . . . violated the Texas APA . . . . [and] also violated the PURA . . . ."), 25 ("ERCOT's invoices find no support under, and are inconsistent with the SFA, which incorporates by reference, and requires compliance with ERCOT Protocols.").

[6] The nature of the underlying relief requested in the Complaint makes it improper to dismiss the PUCT without dismissing the Complaint in its entirety. The Texas Legislature has dictated who must be parties to these claims and where they must be heard: (i) for proceedings contesting the ERCOT Invoices and application of the ERCOT Protocols, judicial review must occur in Travis County district court *after* a party has exhausted all administrative remedies, *see* TEX. GOV'T CODE § 2001.171-.178; TEX. UTIL. CODE §§ 11.007(a), 15.001; (ii) for proceedings seeking a declaratory judgment on the validity or applicability of a PUCT rule, judicial review must occur in a Travis County district court and the PUCT must be a party, *see* TEX. GOV'T CODE § 2001.038; and (iii) for a proceeding seeking review of the validity of a "competition" rule, a proceeding must be commenced in the Texas Third Court of Appeals, *see* TEX. UTIL. CODE § 39.001(e). For clarity, the PUCT's position is that the Orders are not "competition rules" under PURA § 39.001(e), but any claim to the contrary belongs in the Texas Third Court of Appeals.

Complaint ¶¶ 28, 57-58. The Plaintiffs cannot cite any authority supporting their assertion that a state's regulatory control over a separate entity means that the state is in "control" of any funds received by that entity. Even in the realm of corporate relationships, this argument would fail. For example, a shareholder is not in deemed in to be in control of transfers received by its wholly-owned subsidiary absent the application of some other legal theory like substantive consolidation, alter ego, or piercing the corporate veil. The Complaint is devoid of any allegations or recognized legal theory supporting the argument that the PUCT controls the Transfers.

7.     Additionally, the Plaintiffs fail to address the Complaint's utter lack of allegations that the PUCT took any action or made any demands that could constitute an informal proof of claim or that the PUCT owes the Plaintiff any debt that could be subject to setoff. Accordingly, the Complaint must be dismissed as to the PUCT.

ii.    <u>Count 1 must be dismissed because this Court authorized the Transfers, and the Plaintiffs should be estopped from arguing otherwise.</u>

8.     The Plaintiffs' argument that this Court did not "authorize" the Transfers to ERCOT fails as a matter of law. Here, the Court not only recognized that the Canadian Court granted the authority to pay the ERCOT Invoices, but also declined to subtract from that authority. "An unauthorized transfer, by definition, is not supposed to take place." *Ford v. Loftin (In re Ford)*, 296 B.R. 537, 552 (Bankr. N.D. Ga. 2003). Here, the Court acknowledged that the Transfers were going to be made and authorized the Plaintiffs to move forward.

9.     The Plaintiffs want this Court to hold that the Provisional Relief Order and the Recognition Order were superfluous and had no effect on whether they were permitted to make the Transfers. The Plaintiffs ask this Court to find that the foreign representative violated its duties to the estate by making an *unauthorized* $193 million dollar transfer. That argument defies logic. If a party-in-interest were to act against the foreign representative for making the Transfers, the

first line of defense would – rightfully – be this Court's orders.

10.     The Plaintiffs' reliance on *In re Ace Track Co., Ltd.*, 556 B.R. 887, 908 (Bankr. N.D. Ill. 2016) is misplaced. There, a creditor argued that the neither the foreign representative nor the debtor in a Chapter 15 case was authorized to settle and assign the debtor's litigation counterclaims without obtaining relief from the automatic stay. *Id*. at 895-96. The bankruptcy court held that the automatic stay could not lift *without further order of the bankruptcy court*, even if the challenged actions were taken in furtherance of the Korean restructuring. *Id*. at 908. Here, in contrast, there are two further orders of this Court – the Provisional Relief Order and the Recognition Order.

11.     The Plaintiffs' reliance on the decision in *Krys v. Farnum Place, LLC (In re Fairfield Sentry Ltd.)*, 768 F.3d 239 (2d Cir. 2014), is likewise flawed. In *Fairfield Sentry*, the Second Circuit found that when a foreign court has provided approval of a sale, a bankruptcy court must provide independent authorization of the sale under § 363. *Id*. at 243-45. That is exactly what happened here—the Court reached an independent decision to authorize the Transfers.[7]

12.     The Recognition Order reserves the Plaintiffs' rights to contest the Transfers and to seek a refund or credit allowed by applicable law, but it does not say that the Plaintiffs were not authorized to make the payments. In fact, the Plaintiffs admit that they asked the court to "authorize payment to ERCOT." *See* Objection ¶ 45. The Plaintiffs are attempting to rewrite the established history of the Chapter 15 Case and should be judicially estopped from doing so.

     iii.    <u>Count 3 must be dismissed because the transfers are disputed and cannot be the subject of a stand-alone turnover action.</u>

13.     The Plaintiffs cannot dispute the overwhelming authority that a turnover action is

---

[7] Additionally, *Fairfield Sentry* was an appeal from an order denying a request to stop the sale. Here, the Recognition Order is a final order that the Plaintiffs should not be permitted to collaterally attack.

"not intended as a remedy to determine disputed rights of parties." *Schlossberg v. Abell (In re Abell)*, 549 B.R. 631, 653 (Bankr. D. Md. 2016); *see* Motion to Dismiss ¶ 105. The Plaintiffs represent that they are not bringing an action challenging the Orders or a breach of contract action under the SFA. *See, supra,* footnote 4. Without an underlying cause of action determining the parties' rights to the Transfers, Count 3 must be dismissed. *See* Motion to Dismiss ¶ 106.

      iv.    <u>Count 4 must be dismissed because the Plaintiffs fail to plead a cause of action for setoff under applicable non-bankruptcy law.</u>

14.      Bankruptcy Code § 558 does not create an independent cause of action for setoff. *See* Motion to Dismiss ¶¶ 108-113. Because the Plaintiffs fail to plead an independent right to setoff under non-bankruptcy law, Count 4 must be dismissed.

**B.    The Complaint Must be Dismissed for Lack of Subject Matter Jurisdiction Under Federal Rule 12(b)(1) Because the Plaintiffs Have Failed to Exhaust Their Administrative Remedies Under State Law.**

      i.    <u>The Plaintiffs are required to exhaust administrative remedies as to the underlying state law claims in the Complaint.</u>

15.      The Plaintiffs do not dispute the PUCT's exclusive jurisdiction over state law matters involving electric rates, operations, and services, including the relationship between the PUCT, ERCOT, and Market Participants who buy and sell electricity in the ERCOT region. *See* Motion to Dismiss ¶¶ 71-75; *see also Oncor Elec. Delivery Co. v. Chaparral Energy, LLC*, 546 S.W.3d 133, 141 (Tex. 2018); *Elec. Reliability Council of Tex., Inc. v. CPS Energy*, Case No. 04-21-00242-CV, 2021 WL 5879183, at *10 (Tex. App.—San Antonio Dec. 13, 2021, pet. filed). Instead, the Plaintiffs argue that because the Complaint does not "challenge administrative action," they are not required to exhaust administrative remedies. *See* Complaint ¶¶ 33-34. To accept this argument, the Court would have to ignore the true nature of the Complaint. *See, supra*, footnote 5. The Plaintiffs' creative pleading does not change the fact that state law issues will control the outcome of this Adversary Proceeding. The Plaintiffs fail to cite any authority that supports

denying the PUCT's exclusive jurisdiction over the state law claims underlying the Complaint.

16. The Plaintiffs' reliance on the Fifth Circuit's decision in *Benjamin v. U.S. Social Security Administration*, 932 F.3d 293 (5th Cir. 2019) is misplaced. In that case, the Fifth Circuit considered whether a debtor was required to exhaust administrative appeals in front of the Social Security Administration (SSA) to seek repayment of funds he alleged were improperly withheld from his social security payments. *Id*. at 294-95. The Fifth Circuit held that the case would be remanded to the bankruptcy court to determine whether the debtor's claims were the type of claims that were required under the Social Security Act to be heard exclusively by the Social Security Administration (*i.e.* claims regarding entitlement to benefits) or whether they were claims that were not subject to the exclusive jurisdiction provisions of the Social Security Act (*i.e.* claims that the Social Security Administration had improperly recouped overpayments). *Id*. at 301-02. In fact, the *Benjamin* case supports the PUCT's argument that the requirement to exhaust administrative remedies in cases implicating the exclusive jurisdiction of a state agency applies in bankruptcy.

17. Similarly, none of the other cases cited by the Plaintiffs support the proposition that administrative exhaustion is inapplicable to the underlying state law claims in this Adversary Proceeding.[8]

ii. The state law issues in the Complaint are not incidental to bankruptcy claims.

18. The Court should likewise reject the Plaintiffs attempt to compare this Adversary Proceeding to cases applying state law to substantive claims under the Bankruptcy Code. *See*

---

[8] *See Jones v. Lexington Health Servs. District, Inc. (In re Jones)*, 618 B.R. 757 (Bankr. D.S.C. 2020) (finding that the South Carolina Code required administrative exhaustion only for actions to protest a debt, not for violations of the automatic stay or discharge injunction); *Palm Energy Grp, LLC v. Greenwich Ins. Co. (In re Tri-Union Dev. Corp.)*, Adv. No. 11-3032, 2015 WL 5730745, at *12 (Bankr. S.D. Tex. Sept. 28, 2015) (explaining that there the United States was the *plaintiff* in the action, and the federal agency was not seeking review of its own action or being asked to decide if the agency was acting in an arbitrary and capricious manner); *Schoenmann v. Calif. (In re Bryco Funding, Inc.)*, Adv. No. 09-3087, 2009 WL 3271309, at *2 (Bankr. N.D. Cal. Oct. 9, 2009) (addressing statute of limitations issues and explaining that in cases where a cause of action arises under bankruptcy law (*e.g.,* a fraudulent transfer claim), a failure to exhaust administrative remedies does not divest a bankruptcy court of jurisdiction).

Complaint ¶¶ 3, 30. The Plaintiffs are not asking the Court to take state statutes, regulations or case law and apply them, in an *Erie* guess or otherwise, to a dispute between parties. Instead, the Plaintiffs ask this Court to pass judgment on the propriety of executive state action, pursuant to regulatory powers granted by the Texas Legislature. Doing so would deprive the PUCT of its exclusive jurisdiction and of the right to review of its actions in the appropriate Texas state court.

   iii. <u>At a minimum, the doctrine of primary jurisdiction requires stay or abatement until the Plaintiff has exhausted its administrative remedies.</u>

  19. The Plaintiffs ignore the PUCT's alternative argument that even absent exclusive jurisdiction, this Court should recognize the PUCT's primary jurisdiction over the state law issues raised in the Complaint. *See* Motion to Dismiss ¶¶ 82-86. Accordingly, if this Court declines to dismiss the Complaint, it should abate or stay this Adversary Proceeding until the state law administrative process, including the judicial review provided for under PURA, has concluded.[9]

**C. The Complaint Must be Dismissed for Lack of Subject Matter Jurisdiction Under Federal Rule 12(b)(1) Because Sovereign Immunity Bars the Plaintiffs' Claims Against the PUCT.**

  20. The Plaintiffs attempt to disregard the PUCT's assertion of sovereign immunity based on the Supreme Court's holdings in *Hood* and *Katz* without addressing the circumstances that clearly distinguish this case. While the Supreme Court has found that the *in rem* jurisdiction of bankruptcy courts is necessarily broad, it has also acknowledged that such jurisdiction does not extend to areas where its exercise would be an "affront to the sovereignty of the State." *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 451 n.5 (2004). One such area is where bankruptcy jurisdiction would interfere with a "traditional realm of state authority." *Tex. v.*

---

[9] *See Penny v. Southwestern Bell Telephone Co.*, 906 F.2d 183, 188-89 (5th Cir. 1990) (recognizing the PUCT's primary jurisdiction and directing the district court to hold its case in abeyance); *see also Kibbie v. Killington/Pico Ski Resort, Ltd*, 5:16-CV-247, 2017 WL 237618, at *3-4 (D. Vt. Jan. 18, 2017) (doctrine of primary jurisdiction applied to stay federal proceedings to allow appeal of Vermont Department of Labor action to Vermont Superior Court because of risk of inconsistent rulings).

*Soileau*, 488 F.3d 302, 314-15 (5th Cir. 2007) (Jones, J., concurring) (explaining that *Hood* and *Katz* do not address cases where a bankruptcy court's exercise of its *in rem* jurisdiction could "ride roughshod over [a] traditional bastion of state sovereignty.").

21.     "[R]egulation of utilities is one of the most important of the functions traditionally associated with the police power of the States." *Ark. Elec. Coop. Corp. v. Ark. Pub. Serv. Comm'n*, 461 U.S. 375, 377 (1983). In enacting PURA, the Texas Legislature established a pervasive regulatory scheme for the PUCT to regulate and manage Texas's electric markets and ensure system reliability. This Court should not allow the Plaintiffs to circumvent the scheme established by the Texas Legislature to reprice the Texas energy market in federal court. *See In re Entergy Corp.*, 142 S.W.3d 316, 322 (Tex. 2004) (recognizing that the enactment of such a regulatory scheme by the Texas Legislature demonstrated an intention "for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed.").

22.     Despite the Plaintiffs' attempt to disguise it, there is no question the Plaintiffs are asking this Court to substitute its judgment for the judgment of the PUCT, the Texas courts properly vested with authority to review the PUCT's actions, and the Texas Legislature. While the Plaintiffs mention that the Texas Legislature acted to alleviate some of the economic costs of Winter Storm Uri, s*ee* Complaint ¶ 21, they fail to mention that the Texas Legislature declined to grant the relief the Plaintiffs seek in this Court.[10] It is precisely because the state law questions at issue in the Complaint go to the heart of regulating and legislating the Texas electricity market that the PUCT is entitled to sovereign immunity, and the Complaint must be dismissed.

---

[10] Following Winter Storm Uri, certain parties implored the Texas Legislature to reprice the market by altering the amounts charged under the Orders. During the Texas legislative session, Senate Bill 2142 was approved by the Texas Senate, which would have forced ERCOT to reprice and claw back a portion of the charges incurred during Winter Storm Uri. However, that legislation failed to pass through the House of Representatives. *See* Taylor Goldstein, *Texas House Rejects Bill to Reprice Electricity Sold During Winter Storm*, HOUSTON CHRONICLE, March 16, 2021.

**D.      Alternatively, this Court Should Abstain from Hearing the Underlying State Law Issues Under the *Burford* Doctrine.[11]**

23.      The *Burford* doctrine applies to cases where a federal court is asked to provide some form of discretionary relief and postponing consideration of that request would allow a state court to adjudicated disputed questions of state law. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730-31 (1996). The Plaintiffs arguments to the contrary lack merit for the reasons discussed below and for each of the additional reasons set forth in the Motion to Dismiss.

24.      First, in arguing that this proceeding does not intervene or interfere with state proceedings, the Plaintiffs ignore their own statements in the *Joint Discovery/Case Management Plan Under Rule 26(f) of the Federal Rules of Civil Procedure* that they are currently pursuing administrative remedies under Texas state law and reserve the right to continue to do so, including appealing any decision of the PUCT in Texas state court. *See* Docket No. 19 at p.7 n.10. This Court's exercise of jurisdiction over the Complaint raises the real possibility of conflicting federal and state court decisions and remedies on the state law issues that form the basis of the Complaint.

25.      Second, the Plaintiffs ignore the broader implications of this proceeding, including the possibility that other Market Participants will view bankruptcy as an end-run around the regulatory requirements established in PURA and the APA, resulting in the possibility of inequitable treatment of other Market Participants.[12]

26.      Third, as discussed in detail above, the Plaintiffs' argument that any determination of state law issues will be "incident to an examination" of federal bankruptcy claims, *see*

---

[11] The PUCT withdraws its request for permissive abstention under 28 U.S.C. § 1334(c)(1) in accordance with *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, 796 F.3d 520 (5th Cir. 2015) and seeks abstention solely under the *Burford* doctrine.

[12] While the Plaintiffs argue that non-mutual issue preclusion is unavailable in Texas state court, they fail to mention that offensive, non-mutual issue preclusion (or collateral estoppel) has been recognized under Fifth Circuit law. *Landry v. G.C. Constructors*, 802 F. Supp. 2d 827, 831-83 (S.D. Miss. 2011) (citing *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 391 (5th Cir. 1998)).

Complaint ¶ 73, is disingenuous. Even a cursory examination of the Complaint reveals that underlying state law claims are the basis for almost all the relief requested therein.

27.     For these and all the additional reasons set forth in the Motion to Dismiss, if the Court declines to dismiss the Complaint, it should abstain from hearing the state law issues raised in the Complaint under the *Burford* doctrine.

## RELIEF REQUESTED

28.     WHEREFORE, the PUCT requests that this Court (i) dismiss the Complaint in its entirety with prejudice or, alternatively, abstain from consideration of the Complaint, and (ii) grant the PUCT such other and further relief, whether in law or in equity, to which the PUCT may be justly entitled.

Dated:  January 31, 2022               Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN E. COWLES
Deputy Attorney General for Civil Litigation

SEAN O'NEILL
Assistant Attorney General
Deputy Chief, Bankruptcy & Collections Division

*/s/ Autumn D. Highsmith*
JASON B. BINFORD
Texas State Bar No. 24045499
S. Dist. Bar No. 574720
LAYLA D. MILLIGAN
Texas State Bar No. 24026015
S. Dist. Bar No. 38000
AUTUMN D. HIGHSMITH
Texas State Bar No. 24048806
S. Dist. Bar No. 597383
Office of the Attorney General of Texas
Bankruptcy & Collections Division
P. O. Box 12548 MC008
Austin, Texas 78711-2548
Telephone: (512) 463-2173
Facsimile: (512) 936-1409
jason.binford@oag.texas.gov
layla.milligan@oag.texas.gov
autumn.highsmith@oag.texas.gov

**ATTORNEYS FOR THE PUBLIC UTILITY
COMMISSION OF TEXAS**

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing has been served via the Court's Electronic Filing System on all parties requesting notice in this proceeding on January 31, 2022.

*/s/ Autumn D. Highsmith*
AUTUMN D. HIGHSMITH
Assistant Attorney General
